IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiff,<br><br>v.<br><br>J. WALTER WOOD, JR. in his official Capacity as Executive Director of the Alabama Department of Youth Services,<br><br>Defendant. | COMPLAINT<br><br>Civil Action No. 2:07-CV-434-MEF |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### PRELIMINARY STATEMENT

1. The Alabama Disabilities Advocacy Program ("ADAP") is a nonprofit organization authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Alabama. This complaint is related to a similar complaint filed in this Court less than two years ago (Case 2:05-cv-01030-MHT), in which ADAP sought injunctive and declaratory relief against the Alabama Department of Youth Services ("DYS") for refusing to provide full access to ADAP's client, J.P., her records, DYS staff and other residents for the purposes of investigating allegations that J.P. was physically abused, mechanically restrained, and denied psychiatric medication by DYS staff. Subsequently, the parties were ordered to mediation, ADAP obtained access, and the case was voluntarily dismissed on May 2, 2006. See Exhibits A1-A3.

2. Since the dismissal of the 2005 complaint, DYS has engaged in a pattern and practice of refusing to provide ADAP with access to DYS residents, facilities, facility staff, and records, preventing ADAP from fully exercising the monitoring and investigatory mandates authorized to it under federal law.

1

3. ADAP brings this action against J. Walter Wood, Jr., in his official capacity as Executive Director of DYS, pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq., and its implementing regulations at 42 C.F.R. §§ 51.1 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 et seq., and its implementing regulations at 45 C.F.R. §§ 1385 et seq.; the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C., §§ 794e, et seq., and its implementing regulations at 34 C.F.R. §§ 381.1 et seq.; and 42 U.S.C. § 1983.

4. ADAP seeks a permanent injunction preventing J. Walter Wood, Jr. and all agents of Mr. Wood from denying ADAP, as authorized by its federal enabling statutes and regulations, full, complete, timely access to DYS residents, facilities and facility staff as well as full, complete, timely access to records. In particular, Defendant has denied ADAP its federal statutory right under the PAIMI, PADD and PAIR Acts to:

   a. reasonable unaccompanied access, for monitoring and investigatory purposes, to public and private areas of DYS facilities, in violation of 42 C.F.R. § 51.42(b); 42 C.F.R. § 51.42 (c); 45 C.F.R. § 1386.22(f); and 45 C.F.R. § 1386.22(g);

   b. interview residents, staff and other persons as part of an abuse and neglect investigation when ADAP had probable cause to believe an incident had occurred, in violation of 42 C.F.R. § 51.42(b);

   c. provide information and training on individual rights and services provided by the P&A system, in violation of 42 C.F.R. § 51.42 (c) and 45 C.F.R. § 1386.22(g);

   d. communicate privately with facility residents, in violation of 42 C.F.R. § 51.42 (d) and 45 C.F.R. § 1386.22(h);

e. access to facility incident reports and investigatory findings, in violation of 42 C.F.R. § 51.41(c)(2); and

   f. access to records of facility residents, in violation of 42 C.F.R. § 51.41 and 45 C.F.R. § 1386.22.

## JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b). Defendant resides in Montgomery County, Alabama. Ala. Code 1975 § 44-1-20 ("The principal offices of the department [of youth services] shall be located at the state capital.")

## PARTIES

7. Plaintiff ADAP is a nonprofit organization in the state of Alabama authorized by Congressional mandate to protect and advocate for the civil rights of persons with disabilities in Alabama. Plaintiff spends significant time and resources conducting federally authorized monitoring activities at DYS facilities like Chalkville, Vacca, and Mt. Meigs, and advocating for the rights of individuals residing in those facilities. ADAP is charged with the duty of investigating complaints of abuse and neglect of residents of facilities like Chalkville, Vacca, and Mt. Meigs under Congressional mandate pursuant to the PAIMI, PADD and PAIR Acts. ADAP files this complaint in its own name to redress injuries to itself and on behalf of its clients.

8. Defendant J. Walter Wood, Jr., is the Executive Director of DYS. DYS is the agency in the state of Alabama established to "promote and safeguard the social well-being and general welfare of the youth of the state through a comprehensive and coordinated program of public

services for the prevention of juvenile delinquency and the rehabilitation of delinquent youth." Ala. Code 1975 § 44-1-1.

## STATEMENT OF FACTS

### ADAP's Access authority

9. In 1975, the PADD Act established the Protections and Advocacy ("P&A") System to investigate incidents of abuse and neglect and to pursue legal, administrative and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness with the enactment of the PAIMI Act in 1986. The scope of the P&A system was further expanded in 1993 when the PAIR Act was enacted.

10. To receive federal funding under the PAIMI, PADD and PAIR Acts, states must have in effect a P&A system. ADAP is designated as Alabama's P&A system. The PADD, PAIMI and PAIR Acts, along with their implementing regulations, authorize ADAP to investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to ensure that the rights of persons with physical, mental and cognitive disabilities are protected – whether those persons live in facilities or in the community. 42 U.S.C. § 15043; 42 U.S.C. § 10805; 29 U.S.C. § 794e (a) and (f). See also, Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492 (11th Cir. 1996).

11. Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility which a P&A is authorized to access and monitor.

> Facilities include, but are not limited to the following: General and psychiatric hospitals, nursing homes, board and care homes, Community housing, juvenile detention facilities, homeless shelters, and jails and

4

prisons, including all general areas as well as special mental health or forensic units.

42 C.F.R. § 51.2.

12. Under the PADD Act, facilities include "any setting that provides care, treatment, services and habilitation. ... Facilities include, but are not limited to the following: Community living arrangements ..., day programs, juvenile detention centers, hospitals, nursing homes, homeless shelters, jails and prisons." 45 C.F.R. § 1386.19.

13. Under the PAIMI Act, "care" and "treatment" are defined as services:

> provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluations, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only, "as needed" or under a contractual arrangement.

42 C.F.R. § 51.2.

14. DYS facilities like Chalkville, Vacca, and Mt. Meigs constitute facilities as described under both the PAIMI and PADD Acts.

15. The PAIMI and PADD Acts empower ADAP to investigate incidents of abuse and neglect of individuals if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 10805; 42 C.F.R. § 51.41; 42 C.F.R. § 51.42; 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(a)(3).

16. To carry out ADAP's investigatory mandates, the PAIMI and PADD Acts authorize ADAP prompt access to all records of any individual who is a client of the system if the individual, or his legal guardian, conservator, or other legal representative, has authorized the system to have such access. 42 U.S.C. § 10805; 45 C.F.R. § 1386.22(a)(1); 42 U.S.C. § 15043; 42 C.F.R. § 51.41(b)(1).

5

17. The PAIMI and PADD Acts provide ADAP with prompt access to records of individuals who are in the custody of the state and with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe such individual has been subjected to abuse or neglect. 42 U.S.C. § 10805; 42 C.F.R. § 51.41(b)(2)(ii); 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(a)(2)(ii).

18. The PAIMI and PADD Acts provide ADAP with reasonable, unaccompanied access to facilities including all areas which are used by or are accessible to residents, and to programs and their residents at all times, for the purposes of conducting a full investigation of an incident of abuse or neglect. 42 U.S.C. § 10805; 42 C.F.R. § 51.42(b); 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(f).

19. The PAIMI and PADD Acts provide ADAP reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, and to view and photograph all areas of the facility which are used by residents or are accessible to residents. 42 U.S.C. § 10805; 42 C.F.R. § 51.42 (c); 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(g).

20. The PAIMI and PADD Acts provide ADAP unaccompanied access to residents of facilities, including the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person. 42 C.F.R. § 51.42 (d); 42 C.F.R. § 1386.22(h).

21. The PAIMI regulations require DYS to provide ADAP:

> (2) Reports prepared by an agency charged with investigating abuse, neglect, or injury occurring at facility rendering care or treatment, or, or by or for the facility itself, that describe any or all of the following: (i) Abuse, neglect, or injury occurring at the facility; (ii) The steps taken to investigate the incidents; (iii)

6

> Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or (iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings."

42 C.F.R. § 51.41 (c)(2).

22. The access provisions of the three statutes are interrelated and it is clear that Congress intended that they be applied in a consistent manner. The PAIR Act expressly incorporates by reference (at 42 U.S.C. § 794e (f)) the authority regarding access to facilities and records (as well as the other general authorities granted to P&As) set forth in the PADD Act. Moreover, the preamble to the PAIMI Act regulations states that it is the goal of the Department of Health and Human Services "to ensure that all facets of the P&A system administered by the Department [i.e., the PAIMI and PADD Acts] are subject to the same requirements." 62 Fed. Reg. 53549 (Oct. 15, 1997).

23. The PAIMI Act's implementing regulations states that ADAP has the right to access all residents of a facility where those with mental illness and emotional disorders reside "despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators." 42 C.F.R. § 51.42(e).

24. In addition to lengthy citations of PADD and PAIMI access authority found in ADAP's 2005 complaint and related correspondence, ADAP has provided DYS counsel with numerous pieces of written correspondence explaining ADAP's monitoring and access authority. See Exhibits B1-B6.

## Defendant repeatedly has denied ADAP's lawful access to DYS residents, facilities, records, and staff.

### *Chalkville*

25. On February 20, 2007, ADAP Staff Attorney Nancy Anderson provided DYS counsel, Dudley Perry, with written notice that ADAP wished to monitor the DYS Chalkville Campus on March 1st. Anderson reminded DYS Counsel on February 20 and again on February 28th that ADAP possesses federal authority to conduct unaccompanied monitoring activities of DYS facilities "for the purposes of: 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents." 42 U.S.C. § 10805; 42 C.F.R. § 51.42(c). See Exhibit C.

26. Due to statewide tornado advisories on March 1st, ADAP agreed with DYS to reschedule its Chalkville monitoring visit to March 6, 2007.

27. On March 6, 2007, ADAP Staff Attorney Andrea Mixson and Senior Case Advocate Christy Johnson arrived at the Chalkville campus. As part of ADAP's monitoring activities authorized by the PADD and PAIMI Acts, Mixson and Johnson engaged in private conversations with numerous residents regarding treatment concerns at Chalkville. Mixson and Johnson also distributed brochures containing ADAP's contact information and a description of ADAP's programs and services. See Exhibits D and E.

28. Among the many residents who communicated privately with Mixson and Johnson on that day, three residents, J.C., B.P. and S.B., stated they desired additional confidential

communications with Mixson and Johnson regarding inappropriate treatment at Chalkville. After speaking briefly and confidentially with these three residents, Mixson and Johnson informed the three girls they would return for additional confidential visits as soon as possible. See Exhibits D and E.

29. On March 21, 2007, Mixson provided DYS counsel written notice that ADAP planned a second monitoring visit to Chalkville on March 27th. See Exhibit H. Mixson reminded DYS counsel that ADAP possesses federal access authority to conduct unaccompanied monitoring activities of DYS facilities "for the purposes of: 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents." 42 U.S.C. § 10805; 42 C.F.R. § 51.42(c). In addition, Mixson stated to DYS counsel that she and Johnson requested time to speak confidentially with residents J.C. B.P. and S.B., and requested copies of DYS records for those three residents.

30. DYS counsel responded to Mixson on March 21st, stating: "We will communicate with Chalkville and arrange for your visit next week. I will ask them to coordinate a time for your monitoring visit and visit with the girls you named." See Exhibit F.

31. On March 22, 2007, DYS counsel contacted Mixson and Anderson, requesting that the March 27th monitoring visit be postponed. See Exhibit D. Mixson emailed DYS counsel later that day stating that ADAP would agree to postpone its Chalkville monitoring to March 28th. See Exhibit G. Mixson followed-up in writing with DYS counsel to the same effect on March 22rd and March 26th. See Exhibit H.

9

32. Mixson and Johnson arrived at Chalkville for their second monitoring visit on March 28, 2007. They met with Ms. Tate, a DYS employee, about the purpose of the monitoring visit. Mixson and Johnson informed Ms. Tate they had arranged with DYS counsel to communicate with residents residing in the Cherokee Unit and to conduct follow-up interviews with J.C., B.P. and S.B. Mixson and Johnson informed Ms. Tate that ADAP intended to provide ADAP contact and service information to residents in the Cherokee unit and to speak privately with Cherokee residents about their treatment at Chalkville. See Exhibits D and E.

33. Ms. Tate informed Mixson and Johnson that Chalkville Director Yolanda Byrdsong had instructed her to deny ADAP access to speak with any Chalkville residents other than J.C., B.P. and S.B., and those other residents who have a disability. See Exhibits D and E.

34. Mixson and Johnson explained to Ms. Tate that ADAP has federal access authority to communicate privately with <u>any</u> resident of Chalkville and that ADAP planned the March 28th monitoring visit to speak with Chalkville residents who did not have an opportunity to meet and speak privately with them during their previous monitoring on March 6th. See Exhibits D and E.

35. Johnson contacted ADAP Attorney Anderson informing her of Ms. Tate's refusal to allow ADAP to speak privately with all residents of Chalkville. See Exhibit E. Anderson immediately faxed DYS counsel and Ms. Tate a letter reminding them of ADAP's access authority and included a copy of pertinent PAIMI regulations relating to P&A access for their review. See Exhibit I.

36. Following Mixson and Johnson's confidential interviews with J.C., B.P. and S.B., Mixson and Johnson restated to Ms. Tate they intended to exercise ADAP's federal access authority

10

to communicate privately with other Chalkville residents. Ms. Tate informed Mixson and Johnson that DYS counsel instructed her to deny ADAP's access to speak privately with any DYS resident unless that resident had a disability. Ms. Tate informed Mixson and Johnson that they would only be permitted to make a general announcement about ADAP and to distribute brochures to residents on the Cherokee Unit. Mixson and Johnson again explained to Ms. Tate that the PAIMI Act access provisions provide ADAP the authority to communicate privately with any resident of Chalkville regardless of whether they are a current client of ADAP or have a disability. See Exhibits D and E.

37. Mixson and Johnson were accompanied by Ms. Tate to the Cherokee Unit, where Mixson and Johnson distributed brochures and made a general announcement about ADAP's services. During Mixson's announcement, Ms. Tate interrupted and stated to the assembled residents that they must have a disability before they could receive assistance from ADAP. Johnson then clarified that any resident could speak privately with ADAP representatives and that ADAP has the authority to determine whether a resident has a disability. See Exhibits D and E.

## *Vacca*

38. On March 27, 2007, Johnson sent DYS counsel written notice that Mixson and Johnson planned to monitor the Vacca campus on Tuesday, April 10th. See Exhibit J. Johnson reminded DYS counsel that ADAP possesses federal access authority to conduct unaccompanied monitoring activities of DYS facilities "for the purposes of: 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and

11

photographing all areas of the facility which are used by residents or are accessible to residents." 42 U.S.C. §10805; 42 C.F.R. § 51.42(c).

39. DYS counsel did not respond to Johnson's March 27th correspondence or to Attorney Anderson's March 30th correspondence to the same effect. See Exhibit J.

40. Upon arriving at Vacca on April 10th for the scheduled monitoring, Ms. Delbridge informed Johnson and Mixson that DYS counsel had instructed her to prohibit ADAP from communicating with any resident or distributing any ADAP brochures or business cards to any resident unless they were currently ADAP's clients. Ms. Delbridge also informed Johnson and Mixson that ADAP's facility access was to be limited to an accompanied tour of the Vacca grounds and buildings that was to be conducted by a security guard. See Exhibits D and E.

*Mt. Meigs*

41. On March 5 and April 6, 2007, Mixson notified DYS counsel in writing that ADAP planned to conduct monitoring activities at the Mt. Meigs facility on April 17, 2007. See Exhibit K1-K2. Consistent with previous correspondence from ADAP on this matter, Mixson reminded DYS counsel that ADAP possesses federal access authority to conduct unaccompanied monitoring activities of DYS facilities "for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents." 42 U.S.C. § 10805; 42 C.F.R. § 51.42(c).

42. Mixson and Johnson arrived at the Mt. Meigs facility on April 17th. Mixson and Johnson informed the security guard that they were ADAP employees and had arranged a monitoring with DYS counsel. The guard stated that DYS counsel had not notified him of ADAP's monitoring and that he could not permit them to conduct monitoring activities at Mt. Meigs. See Exhibits D and E.

43. Mixson and Johnson then spoke with Ms. Phyllis Carney, administrative assistant to DYS counsel, who stated that ADAP was only permitted an accompanied tour of the facility and could not speak with residents or distribute information about ADAP. Mixson explained that ADAP's federal access authority authorized Mixson and Johnson to communicate privately with residents, distribute ADAP information, and have unaccompanied access to the facility, and provided the assistant with a copy of Anderson's March 28th letter to DYS counsel, describing ADAP's federal access authority. See Exhibits D and E.

44. After she contacted DYS counsel, Ms. Carney informed Mixson that counsel denied ADAP access to speak with residents other than current ADAP clients and denied ADAP access to distribute ADAP information to any resident. The assistant also declared that Mixson and Johnson would be required to be accompanied at all times on Mt. Meigs grounds by a DYS employee. See Exhibits D and E.

### *Request for D.R.'s Record*

45. On March 5, 2007, Johnson provided DYS Counsel with notice that Vacca resident, D.R. was suffering mistreatment and verbal abuse by Vacca staff. See Exhibit L. ADAP had received a letter from D.R. reporting abuse by staff. See Exhibit M.

46. On April 4, 2007, Johnson learned from D.R.'s case manager, Patricia Henderson, that D.R. had been hospitalized at Children's Hospital in Birmingham for elevated blood levels and a

13

possible self-administered medication overdose. Later on April 4th, Johnson reviewed D.R.'s DYS case file at the Vacca campus and requested a copy of it from Vacca Administrator Delbridge. Ms. Delbridge informed Johnson that a copy of D.R.'s record would be available for Johnson on ADAP's April 10 2007 monitoring visit to Vacca. See Exhibit E.

47. On April 10, 2007, Johnson met with Ms. Delbridge and reminded her that ADAP requested copies of D.R.'s records on April 4, 2007 and that she had stated she would provide copies of those records to Johnson during the scheduled April 10th Vacca monitoring. Ms. Delbridge replied that she would not provide ADAP with copies of D.R.'s record until D.R. was released from the hospital and had signed an authorization for release of records. See Exhibits D and E. As of the date of this filing, DYS has neither provided ADAP copies of the child's records, as required under 42 C.F.R. § 51.41, nor provided ADAP with a written explanation as to why it has refused to provide them, as required under 42 C.F.R. § 51.43 -- six weeks after ADAP first requested them.

*Requests for Incident Reports and Investigative Findings*

48. On November 29, 2006, ADAP sent a written request for the DYS incident reports and investigative findings regarding three clients, W.B., H.M. and K.W, male residents of Vacca and Mt. Meigs whom ADAP had probable cause to believe suffered abuse or neglect while in DYS custody. See Exhibit N. On April 20, 2007, ADAP again made a written request that these reports be forwarded to ADAP. See Exhibit O. As of the date of this filing, DYS has neither provided ADAP copies of the incident reports and investigatory findings regarding these three clients, as required under 42 C.F.R. § 51.42, nor provided ADAP with a written explanation as to why it has refused to provide them, as required under 42 C.F.R. § 51.43.

49. On April 20, 2007, ADAP sent a written request for copies of incident reports and investigative findings prepared by DYS regarding J.C., B.P. and S.B., residents at Chalkville whom ADAP had probable cause to believe suffered abuse or neglect while in DYS custody. See Exhibit O. As of the date of this filing, DYS has neither provided ADAP copies of the incident reports and investigatory findings regarding these three clients, as required under 42 C.F.R. § 51.42, nor provided ADAP with a written explanation as to why it has refused to provide them, as required under 42 C.F.R. § 51.43.

50. On April 20, 2007, ADAP sent a written request for copies of all investigative reports prepared by any agency charged with investigating abuse or neglect, or injury occurring at Vacca, Chalkville and Mt. Meigs within the last 6 months. ADAP requested that these reports be forwarded to ADAP by May 4, 2007. See Exhibit O. As of the date of this filing, DYS has neither provided ADAP copies of the requested incident reports and investigatory findings, as required under, 42 C.F.R. § 51.42, nor provided ADAP an explanation as to why it has refused to provide them, as required under 42 C.F.R. § 51.43.

51. Plaintiff does not have an adequate remedy at law and will be irreparably harmed if the Defendant is permitted to continue prohibiting ADAP from:

   a) having reasonable unaccompanied access, for monitoring and investigatory purposes, to public and private areas of DYS facilities;

   b) interviewing facility service recipients, staff and other persons as part of abuse and neglect investigations when ADAP has probable cause to believe an incident has occurred;

   c) providing information and training about individual rights and services provided by the P&A system;

d) communicating privately with facility residents;

e) accessing facility incident reports, investigatory findings; and records; and

f) accessing residents' records.

## CAUSE OF ACTION

52. The policies, procedures, regulations, practices and customs of the Defendant, acting under color of law, violate and continue to violate the rights of the Plaintiff to full, complete, prompt access to DYS facilities, staff, residents and records, in violation of the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. §§ 10801 et seq., and its implementing regulations at 42 C.F.R. §§ 51.1 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15001 et seq., and its implementing regulations at 45 C.F.R. §§ 1385 et seq.; the Protection and Advocacy of Individual Rights Program, 29 U.S.C., §§ 794e, et seq. and its implementing regulations at 34 C.F.R. §§ 381.1 et seq.; and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

53. Wherefore, Plaintiff respectfully requests that this Court:

a) Grant injunctive relief enjoining the Defendant and his agents and employees from denying ADAP full, complete, timely access to DYS residents, facilities and facility staff to conduct monitoring activities and abuse and neglect investigations as well as full, complete, timely access to records, including those of ADAP client D.R.;

b) Issue a declaratory judgment that the Defendant's polices, regulations, and practices of denying ADAP full, complete and timely access to DYS residents, facilities, facility staff and records to monitor and to conduct abuse and neglect investigations violate the PAIMI, PADD and PAIR Acts;

c) Award Plaintiff reasonably necessary attorneys' fees and costs pursuant to 28 U.S.C. § 2202 and 42 U.S.C. § 1988; and

d) Award such other and further relief to which Plaintiff is justly entitled, at law or equity.

Respectfully Submitted,

_/s/ James A. Tucker_　　　　May 16, 2007
James A. Tucker
AL Bar No: ASB-6986-T39J
E-mail: jtucker@adap.ua.edu

Nancy Anderson
AL Bar No.: ASB-3738-R67N
Email: nanderso@adap.ua.edu

Alabama Disabilities Advocacy Program
University of Alabama
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
**ATTORNEYS FOR PLAINTIFF**