IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **ALABAMA DISABILITIES** ) <br> **ADVOCACY PROGRAM** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **J. WALTER WOOD, JR.**, in ) <br> his official capacity as ) <br> Executive Director of the ) <br> Alabama Department of ) <br> Youth Services, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br> 2:07-CV-434-MHT |

## **ANSWER**

### INTRODUCTION

This is a frivolous lawsuit. DYS denies each and every material allegation of the complaint and demands a judgment against ADAP, for fees and costs incurred defending it. This lawsuit could not have been filed in good faith based on an investigation of the facts. The Alabama Disabilities Advocacy Program (ADAP) falsely alleges that "DYS has engaged in a pattern and practice of refusing to provide ADAP with access to DYS residents, facilities, facility staff, and records, preventing ADAP from fully exercising the monitoring and investigatory mandates authorized to it under federal law." Complaint, p. 1, paragraph 2. As a preliminary matter, DYS submits that it has provided ADAP with access to the following DYS students and/or their files:

A.G.,

1

T.S.,

B.M.,

E.R.P.,

J.P.,

L.F.,

B.H.,

K.J.,

A.G.,

S.W.,

C.B.,

S.W.,

H.M.,

A.G.,

K.J.,

B.Y.,

D.M.,

D.R.,

K.W.,

K.S.,

L.P.,

S.B.,

B.P.,

      J.C., and

      W.B.,

In addition, DYS has allowed access on numerous occasions to the Chalkville, Vacca and Mt. Meigs campuses, and has not denied access. DYS has provided voluminous and copious documents including copying at DYS expense entire student files, DYS policies and procedures and other documentation requested by ADAP staff–even though DYS was under no obligation to do so. DYS administrative officials have offered to meet with ADAP staff to discuss any issues and have never refused to meet with ADAP staff. DYS has facilitated private conferences between ADAP staff and numerous students, and has set up private conference calls between ADAP staff, DYS staff and DYS students. DYS denies that ADAP has statutory access authority as broad as DYS has provided, for example DYS has on many occasions provided information in the context of "monitoring" that ADAP is not entitled to outside the context of a probable cause investigation.

      The relief sought in this case is substantially identical to relief sought in the first lawsuit filed against DYS in October 2005 (Case 2:050cv01030). That case was settled in December. ADAP has failed or refused to comply with the terms of the settlement agreement on which ADAP's access to DYS facilities and files is based. Attached hereto is a letter to Magistrate McPherson outlining the terms of the settlement agreement. (Exhibit A, Dec. 12, 2005 letter from TDP to McPherson with attachments). In that settlement DYS agreed to provide access and ADAP agreed to share information with the DYS Legal Division. The agreement included:

> ADAP will have access to DYS operated facilities after providing notice to [the DYS Legal Division]. For purposes of investigations, [the DYS Legal Division] will receive notice at least 72 hours in advance. Notice

>will include the names of the subject student, the grounds upon which ADAP believes the student is covered by the Acts, and the facts upon which probable cause is based. [the DYS Legal Division] will also be given 7 days advance notice for ADAP's access for monitoring. Such notice will include the names of the individuals who will have access, the facility involved, and the date and time you would like to be present. Access will be during regular business hours.

DYS favors legitimate advocacy to assist DYS in providing services to Alabama's delinquent youth. The object of the settlement agreement was therefore an arrangement based on a spirit of cooperation, through which DYS would gain valuable information regarding the services provided to juveniles in DYS custody and their needs. Based on the perceived shared goal of providing improved services, DYS agreed to provide access and ADAP agreed to provide DYS certain information. DYS continues to hope for such a beneficial relationship.

However, since entering the agreement, ADAP has engaged in a pattern of subversion of the terms of that agreement through a series of deceptive tactics–and this lawsuit is among them. Throughout, ADAP has utterly refused to comply with the terms of their agreement. Specifically, <u>ADAP has not notified the DYS legal division of the grounds upon which ADAP believes a student is covered by the Acts and the facts upon which probable cause is based</u>. ADAP has conducted investigations under the guise of "monitoring" without providing any information as required, and has used other deceptive means to avoid compliance with the terms of their settlement agreement.

While refusing to comply with their settlement agreement to provide DYS Legal Division with information, ADAP engaged in a pattern of deceptive tactics including the following: ADAP has misrepresented to various DYS staff that DYS legal counsel authorized unrestricted private access to DYS students–omitting the terms of the settlement agreement. On one occasion

a DYS staff correctly told ADAP staff that DYS Legal Division takes the position that ADAP does not have unrestricted access to all DYS students, to which ADAP staff responded: "Mr. Perry knows that is not true," as though no settlement agreement existed. ADAP staff has, on many occasions, written letters to various DYS staff misrepresenting the terms of ADAP access to DYS facilities–never once referencing the terms of the settlement agreement entered before this Court in settlement of identical litigation. ADAP appeared at a DYS contract facility demanding immediate access and misrepresented that DYS legal had authorized their access. Two students have refused to speak with the DYS Special Investigator about their own allegations of abuse or neglect, because ADAP staff specifically instructed them not to talk about their allegations to DYS staff. Not only is this tactic a violation of the terms and the spirit of the agreement between the parties to identify and solve problems that may exist, but it is dangerous and likely to result in injury to staff and/or students. Moreover, it is likely to interfere with the rehabilitation of the youths and/or prolong their stay in state custody.

     In an email on March 6, 2006, the undersigned first began to discuss with ADAP staff the problems implementing the information sharing relationship. The undersigned noted that DYS shares information and ADAP does not. In response, on March 6, Nancy Anderson, merely listed several questions she had about DYS. Subsequently on June 12, 2006, Christy Johnson wrote the undersigned demanding copies of KW's records, citing the provisions of the PAIMI without reference to the terms of the settlement agreement between the parties. She also wrote complaining that she had recently attempted to access SK's and KW's records. She had failed or refused to provide the information pursuant to the settlement agreement regarding either student. The request was received by the DYS Legal Division after 7:30 p.m. on June 13. Consistent with

the practice of refusing to follow the terms of its agreement with DYS, no facts were given and no basis for coverage was ever given. Two days later, on June 15, the undersigned offered to mail the documents the following morning. Nevertheless, on June 22, 2006, Nancy Anderson wrote the undersigned complaining about ADAP's "ability to fully exercise its access authority," specifically mentioning SW and KW. ADAP failed or refused to provide the information they agreed to provide regarding SW and KW, but DYS forwarded to ADAP copies of both files on June 16, 2006. These are merely examples of how ADAP has exhibited utter contempt for the settlement agreement entered before this Court and the deceptive practices ADAP has utilized and the lengths DYS has gone to in an attempt to work with ADAP's unreasonable and irrational staff.

In response to the specific paragraphs of the complaint, DYS states as follows:

### PRELIMINARY STATEMENT

1. ADAP is a nonprofit organization authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Alabama–not juvenile delinquents. This complaint is similar to a complaint previously filed and settled. The settlement agreement is in force and effect. DYS has complied with its terms but ADAP has failed or refused. All other material allegations of paragraph 1 are denied.

2. All material allegations of paragraph 2 are denied.

3. J. Walter Wood is the Executive Director of DYS. All other material allegations of paragraph 3 are denied.

4. DYS denies that ADAP is entitled to any relief.

## JURISDICTION

5. Admitted.

6. Admitted.

## PARTIES

7. ADAP is a nonprofit authorized to protect and advocate for the civil rights of persons with disabilities in Alabama–not juvenile delinquents. All material allegations otherwise are denied.

8. Admitted.

## STATEMENT OF FACTS

### ADAP's Access authority

9. Denied as written to apply to DYS.

10. Denied as written to apply to DYS.

11. Denied as written to apply to DYS.

12. Denied as written to apply to DYS.

13. Denied as written to apply to DYS.

14. Denied as written to apply to DYS.

15. Denied as written to apply to DYS.

16. Denied as written to apply to DYS.

17. Denied as written to apply to DYS.

18. Denied as written to apply to DYS.

19. Denied as written to apply to DYS.

20. Denied as written to apply to DYS.

21. Denied as written to apply to DYS.

22. Denied as written to apply to DYS.

23. Denied as written to apply to DYS.

24. Denied as written to apply to DYS.

**Defendant repeatedly has denied ADAP's lawful access to**

**DYS residents, facilities, records and staff**

(DYS denies the facts alleged in the heading.)

25. Admitted.

26. Admitted.

27–37. The material allegations of paragraphs 27 through 37 are denied. On March 6, 2007, Ms. Mixson and Ms. Johnson planned a "monitoring visit" to Chalkville. During that visit, Ms. Mixson and/or Ms. Johnson apparently solicited complaints from three students S.B., B.P. and J.C. In violation of the terms of the agreement between the parties, neither Ms. Mixson nor Ms. Johnson notified DYS legal of the factual basis on which S.B., B.P. or J.C. were covered by the Acts nor the factual basis on which probable cause was based.

In an obvious effort to skirt their good faith obligation to communicate with DYS, Ms. Mixson and Ms. Johnson planned another "monitoring" visit during which they actually intended to conduct an investigation into the allegations of S.B., B.P. and J.C., without providing DYS notice as required by the terms of the settlement agreement. (See Paragraph 28 of Complaint and Affidavits of Mixson and Johnson attached to the Complaint as Exhibits D and E).

On March 21, 2007, Ms. Mixson notified the DYS Legal Division by email that they

intended to conduct a "monitoring visit" at Chalkville on March 27. The email also stated "in addition to monitoring activities, Christy Johnson and I are requesting a *confidential visit* with residents J.C., S.B., and B.P. Please provide ADAP with copies of any and all documents relating to these residents kept by DYS prior to our visit." (Italics added.) Ms. Mixson and Ms. Johnson continued to conceal the information they were obligated to share with DYS regarding the basis on which they believed the students were covered by the acts and the factual basis to investigate their allegations.

On March 21, the undersigned responded to Ms. Mixson's request for a "monitoring visit" and "confidential visits with [JC, SB and BP]" by email. The undersigned stated "if you are conducting an investigation, please let me know the grounds on which ADAP believes the students are within ADAP's potential clientele, and the facts on which probable cause for an investigation is based." On that day, the undersigned also authorized ADAP's access to the facility for "monitoring" purposes and communicated that authorization to the Chalkville campus, and gave instructions **not** to provide access to confidential files until ADAP complies with their agreement.

On march 22, 2007, Ms. Mixson emailed the following response:

> S.B.:
> ADAP has cause to believe Chalkville psychiatrist prescribed S. with psychotropic medication while at Chalkville. ADAP has probable cause to believe S. has been improperly restrained and searched at Chalkville.
>
> B.P.:
> ADAP has cause to believe the B. Has bi-polar disorder. ADAP has probable cause to believe that B. received improper mental health treatment while at Chalkville.

> J.C.:
> ADAP has cause to believe that J.C. has a physical disability.
> ADAP has probable cause to believe that J. received improper medical treatment.

The undersigned responded to Ms. Mixson's email stating: "Thank you for this information. It is helpful. However, <u>it does not include any facts on which to base probable cause</u>, and if I recall correctly the substance of our agreement is for me to know the factual basis of any abuse or neglect investigation." (Emphasis added.) ADAP staff never responded.

In an effort to work through this problem with ADAP, the undersigned instructed the DYS Special Investigator to travel to Chalkville and attempt to determine the factual information ADAP was unwilling to provide although they were obligated to do so. The undersigned also contacted Nancy Anderson at ADAP and requested that she instruct Ms. Mixson and Ms. Johnson to postpone their visit to allow the Special Investigator an opportunity to discover the information ADAP was obligated but refused to provide. Ms. Anderson reluctantly agreed to wait. As an example of ADAP's deceptive tactics, ADAP now represents in the Complaint in this case that postponement was an "accommodation" to DYS.

It was in the context of this "investigation" for which ADAP refused to provide DYS any information, that on March 28, 2007, ADAP attempted to generally contact all Chalkville residents. While at Chalkville, ADAP staff made representations to various DYS staff about their "access authority", never once

making reference to their settlement agreement with DYS or the fact that ADAP was attempting to conduct an investigation in violation of that agreement. Nevertheless, ADAP was allowed to conduct their monitoring activities, distributing their documentation and generally announcing their availability to provide advocacy services for disabled students.

### Vacca

38 – 40.  The material allegations of paragraphs 38 through 40 cannot be admitted nor denied as stated.  Apparently Ms. Anderson emailed the undersigned on March 27 and March 30 but the undersigned did not see the emails.  In any event, on April 10, ADAP was allowed to conduct general monitoring activity at Vacca.  All other material allegations of paragraphs 38 through 40 are denied.

### Meigs

41 – 44.  The material allegations of paragraphs 38 through 40 cannot be admitted nor denied as stated.  ADAP was allowed access to the Mt. Meigs Campus and access to any individuals on the Mt. Meigs campus who are covered by the Acts.  Mt. Meigs is a secure campus at which the most ungovernable youths are staffed.  Security of operations is of utmost importance.  All other material allegations of paragraphs 38 through 40 are denied.

### Request for D.R.'s Record

45 – 47.  The material allegations of paragraphs 45 through 47 cannot be admitted nor denied as stated.  The following are the relevant facts relating to DR:

On March 5, 2007, Ms. Johnson emailed a letter requesting an "interview"

with DR to "determine if [D.] qualifies for our services..." As usual, no statement of the basis on which DR is covered by the Acts nor any factual basis for probable cause was stated. Neither was such information ever provided subsequently. Moreover, the request included **no request to view DR's file.** Indeed such request would have been inconsistent with their requirement to make a determination whether an individual is covered by the Acts before initiating an investigation.

Nevertheless, in a spirit of cooperation and an effort to work with ADAP, on March 16, 2007, the DYS Legal Division notified campus personnel that <u>ADAP was authorized to speak with DR and review his files</u>. (See Exhibit B).

Ms. Johnson met with DR on March 19, 2007. It is unclear whether ADAP asked Vacca personnel to allow them to see DR's file.

On April 4, DR was hospitalized. On April 25, 2007, DYS Legal Division filed a motion on behalf of DR for a mental examination pursuant to § 12-15-70, Code of Alabama 1975, as amended. That motion was denied by DR's committing judge on May 3, 2007. DR's committing judge thus takes that position that he is most appropriately placed as a juvenile delinquent and not as a mental health patient.

On May 21, 2007, Nancy Anderson emailed the undersigned and complained that DYS had not sent ADAP DR's record[1]. On June 6, 2007, ADAP

---

[1] Not only had ADAP never requested the file from the DYS Legal Division, DYS is under no legal obligation to do ADAP's work and copy and mail such records. DYS has accommodated ADAP's unreasonable and arbitrary requests for records on many occasions and

filed this lawsuit.

On June 21, 2007, Ms. Anderson again complained to the undersigned that "in our complaint, we noted that we had not been provided copies of records for our client [DR]... Can you forward the youth's records (court records, treatment and progress notes, evaluations, educational records etc.) to us at this time. The undersigned responded on June 22 as follows: "As usual, I will accommodate your request. Phyllis is gathering them. However, it appears that neither you, nor anyone from ADAP, has asked for them previously."

As stated above, the request from ADAP regarding DR was to visit him to determine whether he is within the scope of ADAP's representation. No factual basis for representation or probable cause was given as required. Contrary to ADAP's frivolous and misleading accusations, the DR case is not a situation where ADAP has been denied access–even though they were NOT entitled under the terms of the agreement between the parties. Rather it appears to be an intentional manipulation on the part of ADAP staff to fabricate an <u>appearance</u> of denial of access, while altogether failing and/or refusing to follow the terms of the settlement agreement under which ADAP was granted access in the first place.

**Requests for Incident Reports and Investigative Findings**

48. The allegations of paragraphs 48 through 50 cannot be admitted nor denied as written. ADAP has failed or refused throughout the relationship

---

has copied thousands of pages of files at DYS expense in a spirit of cooperation, but is under no legal obligation to do so.

between the parties to provide the basic information they agreed to provide in settlement of previous litigation substantially identical to this case. ADAP is not entitled to ANY documents due to ADAP's failure or refusal to comply with it's agreement. Nevertheless, as stated above, DYS has provided essentially unlimited access. The only information the DYS Legal Division is unwilling to provide ADAP is the Legal Division's own work product and privileged documents. DYS attempts to conduct its business with transparency and all incident reports and other reports and findings are available for ADAP to inspect as soon as ADAP begins to comply with the terms of its settlement agreement with DYS.

51. DYS denies that ADAP has been harmed, irreparably or otherwise, and denies that ADAP is entitled to any relief whatsoever.

52. The allegations of Paragraph 52 are denied.

53. The allegations of Paragraph 53 are denied.

WHEREFORE, DYS requests an injunction against ADAP enforcing the terms of the settlement agreement between the parties. In addition, DYS requests fees and expenses in connection with defending this frivolous litigation.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar number: 3985-R67T
Deputy Attorney General
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of September, 2007, I electronically filed the foregoing **ANSWER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James A. Tucker
Nancy E. Anderson
Alabama Disabilities
Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ T. Dudley Perry, Jr.

T. Dudley Perry, Jr.
Deputy Attorney General
Attorney for the Defendant

STATE OF ALABAMA



DEPARTMENT DYS SERVICES

| BOB RILEY | POST OFFICE BOX 66 | J. WALTER WOOD, JR. |
| GOVERNOR | MT. MEIGS, ALABAMA 36057 | EXECUTIVE DIRECTOR |

December 12, 2005

Judge Vanzetta P. McPherson
U.S. District Court
P.O. Box 711
Montgomery, AL 36101-0711

RE:  ADAP v. Wood, CV 2:05cv1030-T

Dear Judge McPherson:

    At the conclusion of mediation in the above referenced case you instructed Mr. Tucker and me to submit to you, in writing, the terms of our interim agreement. I have conferred with Mr. Tucker and have his permission to submit the attached letter, with the following changes:

    With regard to the second point stated in my attached letter, we do not have a resolution of the notice ADAP will give my client concerning investigations. We will try to resolve this question by April 30.

    With regard to the fourth issue, we disagree who controls the decision about which DYS students are covered by the Acts. We will try to resolve this question by April 30.

    We will meet on or about January 31 and March 31, not January 31 and February 28, as reflected in my December 9 letter.

    Finally, we both request that the case be continued and placed on administrative calendar until April 30, 2006, *unless either party gives notice before that date that they wish to place the case on the Court's calendar.*

    Thank you for your attention to this matter.

Very truly yours,

T. Dudley Perry, Jr.
Assistant Attorney General

cc: Hon. James A. Tucker


EXHIBIT A




*State of Alabama*
## Department of Youth Services
*Post Office Box 66*
*Mt. Meigs, Alabama 36057*

BOB RILEY
GOVERNOR

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

December 9, 2005

James A. Tucker
Alabama Disabilities Advocacy Program
500 Martha Parham West
Box 860395
Tuscaloosa, AL 35487-0395

RE:   ADAP v. Wood, CV 2:05cv1030-T

Dear Mr. Tucker:

On Tuesday, December 6, 2005, we attended a mediation session in the above referenced case. As a result of the mediation we agreed to enter a trial period until April 30, 2006, during which time ADAP will have certain access to DYS facilities, records and students. In this letter I will communicate my understanding of the agreement.

First, DYS will pay, by January 31, 2006, ADAP's attorney fees and costs in the amount of $8,000. Accrual of additional fees and costs will be suspended until April 30. A condition precedent to DYS's obligation to make payment will be ADAP's submission of documentation that ADAP has incurred approximately $12,500 in fees and costs to date.

Second, ADAP will have access to DYS operated facilities after providing notice to my office. For purposes of investigations, I will receive notice at least 72 hours in advance. Notice will include the names of the subject student, the grounds upon which ADAP believes the student is covered by the Acts, and the facts upon which probable cause is based. I will also be given 7 days advance notice for ADAP's access for monitoring. Such notice will include the names of the individuals who will have access, the facility involved, and the date and time you would like to be present. Access will be during regular business hours.

Third, ADAP will determine probable cause for investigations.

Fourth, whether a particular individual student is covered by the Acts is not exclusively within the control of either party. ADAP and DYS will work together to resolve any dispute that may arise. (It is my opinion that we need to agree on a third party to settle any disputes.)

Fifth, we will submit on Monday, December 12, 2005, to the Magistrate Judge our understanding of this interim agreement along with a joint motion to continue the trial of this case. We will request that the case be generally continued and placed on the administrative

docket at least until April 30, 2006.

    Finally, on January 31 and February 28, we will meet to discuss the terms and progress of the arrangement outlined above and make whatever changes we can agree upon.

    I understand you are drafting a joint motion to continue. I will be in a hearing in Jefferson County on Monday morning. You can reach me on my cell phone at (334) 546-2839. Thank you for your cooperation in this matter. I look forward to working with you in the future.

                         Very truly yours,

                         T. Dudley Perry, Jr.
                         Deputy Attorney General

TDPJr/pic

STATE OF ALABAMA


DEPARTMENT OF YOUTH SERVICES

BOB RILEY
GOVERNOR

POST OFFICE BOX 66
MT. MEIGS, ALABAMA 36057

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

March 16, 2007

TO:   Patricia Henderson
      Vacca Campus

FROM: Phyllis Carney, Legal Assistant
      to T. Dudley Perry, Jr.
      Deputy Attorney General

RE:   Visit for Dustin Rankin from Ms. Christy Johnson of ADAP

Dustin sent a letter to ADAP requesting a visit. He reported allegations of verbal abuse and mistreatment by staff. Ms Johnson emailed Mr. Perry on March 5th and stated that she had contacted Ms. Delbridge to schedule a potential client visit. Special Investigator Staton has spoken to Ms. Delbridge concerning the matter.

ADAP has authorization to speak with Dustin and review his files. If she receives any copies of the files, please make an additional copy and forward it to the Legal Office. Ms. Johnson is not authorized to visit or talk with any other students during this visit. Please provide a location for Ms. Johnson and Dustin to speak.

pc

cc: T. Dudley Perry, Jr.

EXHIBIT
B