IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiff,<br><br>v.<br><br>J. WALTER WOOD, JR. in his official Capacity as Executive Director of the Alabama Department of Youth Services,<br><br>Defendant. | CIVIL ACTION NO.<br>2:07-CV-434-MHT |

### PLAINTIFF'S MOTION TO AMEND THE JOINT REPORT OF THE PARTIES

COMES NOW the Plaintiff and moves this Court to allow the Plaintiff to amend the Joint Report of the Parties (Doc. No. 17) ("Joint Report"), filed on October 19, 2007, because, subsequent to the submission of the Report, the Defendant resumed its unlawful practice of prohibiting Plaintiff from engaging in private communication with residents of Department of Youth Services (DYS) facilities as part of Plaintiff's federally authorized monitoring activities. In support of its Motion, Plaintiff states as follows:

1. The Defendant's practice of denying the Plaintiff access to engage in private communication with all DYS residents regarding their right to appropriate treatment; their right to be free from abuse and neglect; and information on the availability of protection and advocacy services, is one of the primary issues raised in Plaintiff's Complaint (Doc. No. 1).

2. The Defendant provided Plaintiff with access to residents during numerous monitoring visits to DYS facilities from approximately the filing of Plaintiff's Complaint on May 18, 2007, through approximately the filing of the Joint Report on October 19,

2007. During that five-month period, the Defendant provided ADAP with access such that ADAP staff members were able to speak privately with individual DYS residents as needed during Plaintiff's scheduled monitoring visits.

3. After the Joint Report was filed, the Defendant communicated to Plaintiff that it would no longer allow Plaintiff's staff members to communicate privately with DYS residents during Plaintiff's monitoring activities. Defendant's change in policy was communicated upon the arrival of ADAP employees at the Defendant's Vacca and Chalkville facilities on October 23, 2007, for monitoring visits that had been scheduled in advance. *See* Exhibit A, ADAP e-mails to Defendant counsel Dudley Perry dated October 14, 2007, and October 18, 2007.

4. Upon arriving at Chalkville on October 23, 2007, ADAP attorney, Andrea Mixson, was instructed by Chalkville case manager Naren Phillips, that ADAP staff members would not be allowed to communicate privately with any Chalkville resident during the ADAP monitoring visit scheduled for that day. When Ms. Mixson asked Ms. Phillips why ADAP would not be allowed to speak privately with individual residents who might request such an opportunity, Ms. Phillips stated that Chalkville staff received instructions from Mr. Perry that private discussions between ADAP staff and DYS residents were not allowed during ADAP monitoring activities. Ms. Phillips stated DYS staff does not know which DYS residents qualify for ADAP's services and that DYS residents would be allowed to write ADAP to express their concerns. *See* Exhibit B, Affidavit of Andrea Mixson.

5. On the same day, October 23, 2007, ADAP staff member, Christy Johnson, arrived at Vacca for a monitoring visit arranged through Mr. Perry's office on October

2

14, 2007. Vacca employee, Linda Norwood, informed Ms. Johnson that DYS staff had met recently with Mr. Perry, in Montgomery. Mr. Perry instructed DYS staff at the Montgomery meeting to prohibit ADAP staff from communicating privately with any DYS residents during ADAP's monitoring visits. Ms. Norwood stated that, upon Mr. Perry's instruction, ADAP staff members were allowed only to make a presentation to residents, pass out information and collect the names of residents with whom they wished to meet at a later date. *See* Exhibit C, Affidavit of Christy Johnson.

6.  Plaintiff's right and authority to communicate privately with **all DYS residents, unaccompanied by DYS staff** during ADAP monitoring visits, is clearly set forth in the PAIMI and PADD regulations and is referenced in Plaintiff's Complaint:

> The PAIMI and PADD Acts provide ADAP reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, and to view and photograph all areas of the facility which are used by residents or are accessible to residents. 42 U.S.C. § 10805; 42 C.F.R. § 51.42 (c); 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(g)…

> The PAIMI and PADD Acts provide ADAP unaccompanied access to residents of facilities, including the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person. 42 C.F.R. § 51.42 (d); 42 C.F.R. § 1386.22(h)…

> The PAIMI Act's implementing regulations state that ADAP has the right to access all residents of a facility where those with mental illness and emotional disorders reside "despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators." 42 C.F.R. § 51.42(e)…

7.  The United States Department of Health and Human Services provides interpretive guidance regarding the PAIMI and PADD regulations that allow and require

agencies such as the Defendant to allow and facilitate private communications between P&A staff and residents of treatment facilities:

> It is felt that only by frequent personal contact, without the presence of institutional staff, can the P&A system effectively carry out its mission of protecting the rights and safety of residents. The Department agrees that private and unaccompanied access to clients and other residents should be provided and that, if denied, justification should be required under 51.43. The regulations incorporate a provision which specifies that the system generally shall be permitted unaccompanied access to meet and communicate privately with individuals, informally or formally, without the presences of facility staff.[1]

8. The Fifth Circuit addressed similar facts in *Mississippi v. Cotten*, 929 F.2d 1054 (5th Cir. 1991). The Boswell Retardation Center changed its attorney visiting policy following the Mississippi P&A's investigation into patient abuse and a patient death occurring at the facility. *Id.* at 1056. An attorney for the State of Mississippi instructed the P&A that its staff "will not be permitted to visit with residents with whom there is no attorney-client relationship unless an appointment has been made by the Legal Unit of the Department of Mental Health." *Id.* The Fifth Circuit noted that, while the Boswell Center granted interviews at reasonable times with patients who had entered into an attorney client relationship with the P&A, the Boswell Center nonetheless prohibited interviews with non-client patients unless the P&A provided the Mississippi State Department of Mental Health 24 hours notice prior to an interview. *Id.* Before a patient could be interviewed, the Center also required the Mississippi P&A to "explain the reason for the interview and provide proof of probable cause to believe a legal problem existed." *Id.* As part of the remedies crafted by the lower court in *Cotten* and affirmed by the Fifth Circuit, the Mississippi P&A was relieved "of the requirement of having a written

---

[1] 62 Fed. Register 53548-01, 53562

4

retainer before interviewing a resident" and the Boswell Center was required "to provide a private meeting room for MP&A's use in advising patients of their rights." *Id.* at 1057.

9.  In analogous fashion, the Defendant here has arbitrarily terminated ADAP's right to communicate privately and with individual DYS residents as needed.

10. In *Robbins v. Budke,* 739 F. Supp. 1479 (D.N.M. 1990), the trial court overturned the state's policy which limited the New Mexico P&A's access to private conversations with residents. After investigations by the New Mexico P&A into inappropriate treatment of patients occurring at the Las Vegas Medical Center (LVMC), the state issued a formal policy on P&A access to LVMC patients. *Id.* at 1482-3. Similar to DYS's current policy and practice denying ADAP's access to speak privately with DYS residents, LVMC policy prohibited the P&A from answering "any private questions by patients after information meetings." *Id.* at 1483. In addition, the LVMC policy prohibited the New Mexico P&A from visiting a patient unless the P&A provided probable cause to suspect abuse and neglect and required that residents make a request for P&A services either through writing or by telephone. LVMC's policy only allowed the New Mexico P&A to visit patients at LVMC who had a diagnosed mental illness or developmental disability. *Id.* at 1482-3.

11. In a policy analogous to DYS policy, the LVMC policy also stated, "...if a patient is aware of the P&A's services and wishes to contact P&A, he or she must request a meeting by phone or letter." *Id.* at 1483. Finding in favor of the P&A, the court described why residents of facilities providing treatment should not carry the burden of initiating private communications with the P&A and why such a policy denies the P&A the meaningful access Congress designed:

5

> "The mentally ill are vulnerable to abuse and neglect because many mentally ill individuals have difficulty recognizing the concept that they have rights and will not necessarily identify even the most egregious abuse as a violation of their rights. Even if cognizant of their rights, many of these individuals have difficulty assessing whether their rights have been violated and may have difficulty identifying P&A as a resource to remedy rights violations…Many mentally ill people have difficulty developing trusting relationships. Some patients, by virtue of their illness and because of personal characteristics unrelated to mental illness, may not be willing to ask questions about their rights publicly or until they have had an opportunity to develop a degree of trust towards the advocate. Even if P&A's phone number is readily available, the combined effects of medication, mental illness, and the passive characteristic of institutionalized people would inhibit many residents from initiating a phone call to a stranger to talk about problems they are having in the institution…. Many institutionalized residents are reluctant or afraid to take actions that might incur the displeasure of staff who control nearly every aspect of their daily life."[2]

Likewise, the presence of mental illness, developmental and other disabilities, and dynamics associated with adolescent development, are all factors that may contribute to the reluctance of DYS residents to initiate contact with an advocacy organization such as ADAP.

12.     Plaintiff's authority to speak with **all residents of DYS unaccompanied by DYS staff** during its monitoring activities is unambiguous under controlling law. Defendant's denial of Plaintiff's access to meet with and interview individual DYS residents as needed constitutes a blatant disregard for federal rules and regulations governing ADAP's ability to discharge its duties as a Protection and Advocacy Agency.

13.     When the parties filed their Joint Report, Plaintiffs had been allowed to interview individual DYS residents as needed. Since the filing of the Joint Report, the Defendant has ceased to allow ADAP's access to conduct interviews of DYS residents as needed and as authorized by controlling law.

---

[2] Id. at 1486.

6

14. Because the Defendant's practice has changed since the filing of the Joint Report, the Plaintiff respectfully requests that this Court address the Defendant's failure to provide ADAP with access to:

    a. investigative records as identified in the Joint Report, and

    b. all DYS facilities for the purpose of conducting private unaccompanied interviews of DYS residents.

Respectfully Submitted,

/s/ James A. Tucker

JAMES A. TUCKER
NANCY ANDERSON

ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, AL  35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**

8

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notice of such filing to the following attorneys of record for the Defendants:

Mr. Dudley Perry Jr.
Mr. William Sanford
c/o Alabama Department of Youth Services
P.O. Box 66
Montgomery, AL 36057

                                                /s/ James A. Tucker
                                                James A. Tucker

## Mixson, Andrea

**From:** Mixson, Andrea
**Sent:** Sunday, October 14, 2007 9:40 PM
**To:** dudley.perry@dys.alabama.gov
**Cc:** Carney, Phyllis; Anderson, Nancy; Tucker, James
**Subject:** Vacca and Chalkville Visits

EXHIBIT A

Dudley:

James Tucker wanted me to inform you that ADAP will be conducting monitoring visits at Vacca and Chalkville on Tuesday, October 23, 2007 starting at 2:30 p.m. We will have three people from ADAP at each site on Tuesday.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

Alabama Disabilities Advocacy Program (ADAP)

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)

This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

**Mixson, Andrea**

| | |
|---|---|
| From: | Perry, Dudley [Dudley.Perry@dys.alabama.gov] |
| To: | Mixson, Andrea |
| Sent: | Monday, October 15, 2007 7:59 AM |
| Subject: | Read: Vacca and Chalkville Visits |

Your message

    To:      Dudley.Perry@dys.alabama.gov
    Subject:

was read on 10/15/2007 7:59 AM.

1

## Mixson, Andrea

**From:** Carney, Phyllis [Phyllis.Carney@dys.alabama.gov]
**Sent:** Monday, October 15, 2007 7:37 AM
**Subject:** Read: Vacca and Chalkville Visits

Your message

   **To:**      Phyllis.Carney@dys.alabama.gov
   **Subject:**

was read on 10/15/2007 7:37 AM.

1

**Mixson, Andrea**

**From:** Mixson, Andrea
**Sent:** Thursday, October 18, 2007 6:00 PM
**To:** dudley.perry@dys.alabama.gov
**Cc:** Carney, Phyllis; Anderson, Nancy; Tucker, James
**Subject:** FW: Vacca and Chalkville Visits

Dudley:

Just writing to confirm ADAP's Chalkville and Vacca monitoring visits scheduled for Tuesday, October 23, 2007 at 2:30p.m.. Please see my October 14, 2007 email to you below.

Thank you for your assistance.

Sincerely,
Andrea

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
```
This email is intended only for the person to whom it is addressed.  Any review or
other use of this information by persons or entities other than the intended
recipient or any retransmission without the consent of the sender is prohibited.
The views or opinions expressed by the sender of this email are not necessarily
those of the institution.
```

---

**From:** Mixson, Andrea
**Sent:** Sun 10/14/2007 9:39 PM
**To:** dudley.perry@dys.alabama.gov
**Cc:** Carney, Phyllis; Anderson, Nancy; Tucker, James
**Subject:** Vacca and Chalkville Visits

Dudley:

James Tucker wanted me to inform you that ADAP will be conducting monitoring visits at Vacca and Chalkville on Tuesday, October 23, 2007 starting at 2:30 p.m. We will have three people from ADAP at each site on Tuesday.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness,

10/31/2007

individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

Alabama Disabilities Advocacy Program (ADAP)

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)

This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

**Mixson, Andrea**

| | |
|---|---|
| **From:** | Perry, Dudley [Dudley.Perry@dys.alabama.gov] |
| **To:** | Mixson, Andrea |
| **Sent:** | Thursday, October 18, 2007 6:14 PM |
| **Subject:** | Read: FW: Vacca and Chalkville Visits |

Your message

   To:      Dudley.Perry@dys.alabama.gov
   Subject:

was read on 10/18/2007 6:14 PM.

1

# Mixson, Andrea

| | |
|---|---|
| **From:** | Carney, Phyllis [Phyllis.Carney@dys.alabama.gov] |
| **Sent:** | Friday, October 19, 2007 12:18 PM |
| **Subject:** | Read: Vacca and Chalkville Visits |

Your message

    To:      Phyllis.Carney@dys.alabama.gov
    Subject:

was read on 10/19/2007 12:18 PM.

1



EXHIBIT
B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ALABAMA DISABILITIES ADVOCACY )
PROGRAM )
)
    Plaintiff, )
)
v. ) Civil Action No. 2:07cv434-MHT
)
J. WALTER WOOD, JR. in his official )
Capacity as Executive Director of the )
Alabama Department of Youth Services, )
)
    Defendant. )

### AFFIDAVIT OF ANDREA MIXSON

State of Alabama   ]
County of Tuscaloosa ]

Andrea Mixson, being duly sworn, deposes and states as follows:

1. My name is Andrea Mixson. I am over the age of nineteen. This Affidavit is given on the basis of my personal knowledge.

2. I am employed as a staff attorney with the Alabama Disabilities Advocacy Program ("ADAP").

3. On October 23, 2007 I arrived at the Alabama Department of Youth Services ("DYS") Chalkville facility around 2:30 p.m. for a monitoring visit arranged through DYS Deputy Attorney General Mr. Dudley Perry's office. In emails sent to Mr. Perry on October 14 and October 18, 2007, I explained to Mr. Perry that ADAP's enabling statutes provided ADAP unaccompanied access to residents during monitoring visits.

1

4. Soon after my arrival at Chalkville on October 23, 2007, I was informed by Chalkville case manager Naren Phillips, that DYS prohibited ADAP from communicating privately with Chalkville residents during my visit.

5. Ms. Phillips stated to me that, during monitoring visits, ADAP was only allowed to pass out information concerning ADAP's services and make a general announcement to Chalkville residents and that ADAP was not permitted to engage in one on one private meetings with Chalkville residents. Ms. Phillips stated that Mr. Dudley Perry had given Chalkville staff these instructions. Ms. Phillips stated that individual meetings between ADAP and Chalkville residents would need to be arranged to occur at a later date. When I asked Ms. Phillips the reason why DYS was now denying ADAP access to communicate privately with Chalkville residents when it had been allowing ADAP access, Ms. Phillips stated that DYS did not know which residents qualified for our services. Ms. Phillips said that residents were allowed to write ADAP with their concerns, but that residents could not speak privately with ADAP staff during ADAP monitoring visits.

6. Following Ms. Phillips instructions, I made general announcements to groups of Chalkville residents, but did not conduct private conversations with any Chalkville resident.

7. **FURTHER AFFIANT SAYETH NOT.**

2

_Andrea Mixson_
Andrea Mixson

Sworn to and subscribed before me on this the **31** day of October, 2007.

_Janet K. Owens_
Notary Public

My Commission expires: **02/27/2010**

3



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ALABAMA DISABILITIES ADVOCACY )
PROGRAM )
)
      Plaintiff, )
)
v. ) Civil Action No. 2:07cv434-MHT
)
J. WALTER WOOD, JR. in his official )
Capacity as Executive Director of the )
Alabama Department of Youth Services, )
)
      Defendant. )

**AFFIDAVIT OF CHRISTY JOHNSON**

State of Alabama   ]
County of Tuscaloosa ]

1. My name is Christy Johnson. I am over the age of nineteen. This Affidavit is given on the basis of my personal knowledge.

2. I am employed as a senior case advocate with the Alabama Disabilities Advocacy Program, (ADAP).

3. On October 23, 2007, I arrived at the Alabama Department of Youth Services (DYS) Vacca facility at approximately 2:20 p.m.

4. Linda Norwood, a Vacca employee, escorted me onto campus. Ms. Norwood asked where I wanted to begin and I told her that I wanted to talk with residents on the units.

5. Ms. Norwood escorted me to the Weekly Unit. Chairs were gathered together in the common area to allow me to make a presentation to residents and distribute information about ADAP.

6. Before I gave the presentation, Ms. Norwood stated that I would be allowed to make a presentation, pass out information and write down names of individuals who want to meet with me at a later time. She stated that because this is a monitoring visit, I would not be allowed to talk with residents in private.

7. I made a presentation to a group of residents on the Weekly Unit and asked for those interested in scheduling a private interview to remain seated; all other residents were dismissed to their rooms.

8. I wrote down the names of six residents who asked to meet with ADAP in private.

9. After residents were dismissed, I asked Ms. Norwood why ADAP was not allowed to talk with residents as allowed during previous visits.

10. Ms. Norwood stated that an ADAP meeting was held, during which staff were directed to only allow ADAP to make a presentation to residents, pass out information and write down names to meet with residents in private at a later date.

11. I asked Ms. Norwood what person in authority gave staff this directive. Ms. Norwood stated that an ADAP meeting was conducted by Dudley Perry in Montgomery.

**12. FURTHER AFFIANT SAYETH NOT.**

*Christy Johnson*
Christy Johnson

Sworn to and subscribed before me on this the 31 day of October, 2007.

*Janet K. Owens*
Notary Public

My Commission expires: 02/27/2010