**IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**


| | | |
|---|---|---|
| **ALABAMA DISABILITIES** | ) | |
| **ADVOCACY PROGRAM** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-434-MHT |
| **J. WALTER WOOD, JR.**, in | ) | |
| his official capacity as | ) | |
| Executive Director of the | ) | |
| Alabama Department of | ) | |
| Youth Services, | ) | |
| | ) | |
| Defendant. | ) | |


**DEFENDANT'S PROPOSED SUBMISSIONS TO THE RECORD**

COMES NOW the Defendant and submits the attached affidavit of Marcia Calender,

along with attachments, Bates-stamp documents numbers 146 through 158, for inclusion in the

record of the evidence.   The Defendant submits that the attached affidavit and attachments are

relevant to the sole issue outlined in the Joint Report of the Parties, Bates-stamp document

numbers 21 through 23.


Respectfully submitted,



/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar number: 3985-R67T
General Counsel
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66

Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2007, I electronically filed the foregoing **DEFENDANT'S PROPOSED SUBMISSIONS TO THE RECORD** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James A. Tucker
Nancy E. Anderson
Alabama Disabilities
Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
General Counsel
Attorney for the Defendant

IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **ALABAMA DISABILITIES** | ) | |
| **ADVOCACY PROGRAM** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-434-MHT |
| **J. WALTER WOOD, JR.**, in | ) | |
| his official capacity as | ) | |
| Executive Director of the | ) | |
| Alabama Department of | ) | |
| Youth Services, | ) | |
| | ) | |
| Defendant. | ) | |

STATE OF ALABAMA

COUNTY OF JEFFERSON


## AFFIDAVIT

BEFORE ME, the undersigned authority, a Notary Public in and for said County and

State, personally appeared Marcia Calender, who being known to me and being by me first duly

sworn, deposes and says as follows:

I am Marcia Calender, and I am over the age of twenty one (21). This affidavit is given

upon my personal knowledge.

Primary investigative responsibility for allegations of abuse or neglect at DYS facilities is

with local law enforcement pursuant to state statute. Section 26-14-6.1, Code of Alabama, 1975

as amended, states: ". . . Reports of suspected child abuse or neglect committed in a

state-operated child residential facility shall be investigated by law enforcement agencies."

1

000146

However these investigations are not the subject of this case.

In addition to the investigations conducted by law enforcement, DYS has in place a system of redundant internal processes for receiving and investigating allegations. Documents regarding these redundant internal processes are all available to ADAP in connection with legitimate probable cause investigations pursuant to the Settlement Agreement between the parties. The DYS system includes the following redundant processes:

Incident Reports: DYS policy requires that all incidents involving restraint, physical force, medical emergencies, injuries, etc., be immediately reported in writing by DYS staff. (Policy 9.21 attached hereto). The procedure for each facility requires facility administrators to review and sign all incident reports, whether or not a potentially serious matter. Those reports are placed in student files.

Critical Incident Reports: DYS policy defines an investigative process for every "critical incident", including sexual assaults, forced moves, serious disturbances, uses of four or five point restraint, student injuries, suicide attempts, and other serious events that threaten staff or students. The policy requires an investigation of all staff and juvenile actions during the incident, including a review of the incident's impact on staff and juveniles, review of corrective actions taken and needed, and plans for improvement to avoid similar incidents. (DYS Policy 8.12 attached hereto). The procedures involve meetings of all involved individuals to review the reports and statements at which a Critical Incident Review report is generated, and reviewed by the campus administrator. The procedure also involves a follow up meeting of all involved staff to identify problems and plans for improvement.

Grievance Procedure. DYS policy provides for a grievance procedure, including at least

000147

one level of appeal, for student complaints. (DYS Policy 13.3 attached hereto). Students should

be allowed to pursue their grievances separately and independently from any other investigative

processes within the system.

Child Advocacy Unit. DYS policy provides for a Child Advocacy Unit to ensure the

safety of students committed to the care and custody of DYS. (DYS Policy 1.28 attached

hereto). This unit is responsible to the Executive Director. The advocacy unit investigates all

allegations made by students through the Advocacy process under my supervision.

The four above referenced redundant processes are the methods by which DYS internally

investigates allegations. It is my understanding that the documents regarding these four

processes are available to ADAP in connection with legitimate investigations conducted pursuant

to the Settlement Agreement by which DYS provides ADAP access.

It is my understanding that the subject of this lawsuit is the reports generated by the DYS

Special Investigator under the direction and supervision of DYS General Counsel. The facts

regarding the Special Investigator's confidential reports follow:

DYS Special Investigator. In September 2005, the Position of DYS Special Investigator

was created. Currently there is one DYS Special Investigator, Alan Staton. Mr. Staton is used

primarily by General Counsel for the purpose of following up on serious allegations that are

likely to result in litigation. In addition the DYS Legal Division relies on the Special

Investigator to determine whether allegations are sufficiently credible to warrant a report to law

enforcement pursuant to the requirements of Section 26-14-6.1, Code of Alabama, 1975.

When General Counsel determines litigation is likely in connection with an incident,

General Counsel assigns Mr. Staton to report to General Counsel in a confidential work-product

000148

report. Among other actions, I understand Mr. Staton reviews any documents produced in any of the four redundant internal investigative processes discussed in the section above. When the undersigned determines it is necessary based on the confidential report from the Special Investigator, he communicates with agency administrators in a confidential attorney client conference and makes recommendations.

DATED THIS November 6, 2007.

*Marcia Calender*
Marcia Calender

SWORN TO AND SUBSCRIBED BEFORE ME, this November 6, 2007.

*Phyllis J. Carney*
NOTARY PUBLIC
MY COMMISSION EXPIRES: _8/10/08_

000149

EXHIBIT
Attachment
1
tabbies

**State of Alabama**
**Department of Youth Services**
**POLICY AND PROCEDURES**

| | |
|---|---|
| **Related Standards:** | 4-JCF-2A-19, 1-JBC-3A-17 |
| **Chapter:** | 9.0 Security and Control |
| **Subject:** | Incident Reporting |
| **Policy Number:** | 9.21 |

I.    POLICY

It is DYS policy that all incidents, including, but not limited to the following:

- use of restraint equipment
- use of physical force
- medical/psychiatric emergencies to include suicide gestures and/or attempts
- injuries to students and/or staff
- critical incidents
- major student rule violations
- students remaining in restraints at the end of a shift
- inappropriate sexual/nonsexual contact between students and/or staff
- student disturbances/unrests
- damage or destruction of personal/state property
- verbal and/or physical altercations between students and/or staff
- reported theft of property
- students/staff in possession of a weapon/shank
- forgery, tattooing, gambling, and/or extortion
- catastrophic events related to weather or other types of disasters
- fraternization and/or favoritism

are to be reported in writing, dated and signed by the staff person reporting the incident through the chain of command. All documentation regarding incidents shall be completed before the end of the shift on which the incident occurred. All staff directly involved in the type of incidents listed above are required to report such incidents.

C00150

**Effective Date:** June 21, 2007    **Issued By:** _(signature)_    Page   1   of   2

**State of Alabama**
**Department of Youth Services**
**POLICY AND PROCEDURES**

| | |
|---|---|
| **Related Standards:** | 4-JCF-2A-19, 1-JBC-3A-17 |
| **Chapter:** | 9.0 Security and Control |
| **Subject:** | Incident Reporting |
| **Policy Number:** | 9.21 |

II.    DEFINITIONS

"All staff directly involved" is defined as all staff who are in the immediate vicinity or are eye-witness to any of the above described incidents and staff who are physically involved in the incident.

III.    PROCEDURES

On the day of the incident, the staff person(s) reporting the incident shall complete an incident report before leaving their shift. The facility administrator will review that report, initial it, send it through the chain of command if indicated, and cause it to be placed in the student file.

IV.    APPLICABILITY

This policy applies to all Department of Youth Services personnel and facilities and to facilities operated for DYS by contract service providers.

CCC151

**Effective Date:** June 21, 2007    **Issued By:** _(signature)_ **Page** 2 **of** 2

**State of Alabama**
**Department Youth Services**
**POLICY AND PROCEDURES**

EXHIBIT
Attachment
2

**Related Standards:**    3-JTS-3b-16, 3-JCRF-3B-12, 1-JBC-3B-16

**Chapter:**    8.0 Safety and Emergency Procedures

**Subject:**    Critical Incidents

**Policy Number:**    8.12

I.    POLICY

It is DYS policy that debriefing is conducted following the occurrence of a critical incident in any DYS facility. The debriefing process will include coordination and feedback about the incident from designated staff of the facility as soon as possible after the incident. The debriefing will include a minimum of the following:

1.    A review of staff and juvenile actions during the incident
2.    A review of the incident's impact on staff and juvenile
3.    A review of corrective actions taken and still needed
4.    Plans for improvement to avoid another incident

All critical incidents will be reviewed by administration, security, and health services when indicated. A two-week follow-up debriefing shall occur to review the validity and appropriateness of all policies, plans, and information used during the critical incident and immediately after.

II.    DEFINITIONS

Critical incidents are defined as:

- Sexual assaults
- Forced moves
- Disturbances such as riots, hunger strikes, work stoppages, fire, hostage situation
- Four/five point restraint used
- Student medical referrals as a result of injuries sustained
- Suicide attempts

C00152

**State of Alabama**
**Department Youth Services**
**POLICY AND PROCEDURES**

Related Standards:       3-JTS-3b-16, 3-JCRF-3B-12, 1-JBC-3B-16

Chapter:                 8.0 Safety and Emergency Procedures

Subject:                 Critical Incidents

Policy Number:           8.12

- Escapes
- Substantiated grievances resolved in favor of student
- Deaths
- Other similarly serious events that threaten staff or students

III.    PROCEDURES

When a critical incident, as defined above, occurs in any DYS or contract facility, a debriefing shall commence as soon as possible, but at least within 24 hours after the incident occurs. The debriefing shall be conducted by the Campus Administrator or designee in a training school, boot camp, group home or contract provider facility. The following steps shall be followed:

1.    Gain control of immediate situation; i.e., contact security, medical, or 911 if indicated

2.    Initiate chain of command notification

3.    Insure that the critical incident report and statements are written

4.    Schedule debriefing and notify those individuals who need to participate

5.    Review of the critical incident report by Campus Administrator or designee, security, and heath services

000153

Effective Date: _____    Issued By: _____    Page __2__ of __3__

**State of Alabama**
**Department Youth Services**
# POLICY AND PROCEDURES

Related Standards:     3-JTS-3b-16, 3-JCRF-3B-12, 1-JBC-3B-16

Chapter:               8.0 Safety and Emergency Procedures

Subject:               Critical Incidents

Policy Number:         8.12

6.  The debriefing shall include a review of the following:

- Written incident reports
- Written statements of staff and students witnessing or involved in the critical incident
- Staff and student actions during the incident
- The incident's impact on staff and students
- Corrective actions taken and still needed
- Plans for improvement sin programming and supervision to prevent another incident from occurring
- Recommendations for housing and/or staffing re-assignments

7.  Submit a written report through the chain of command within 48 hours of the debriefing.

8.  A two-week documented follow-up debriefing shall occur to review the validity and appropriateness of all policies, plans, and information used during the critical incident and immediately after.

IV.  APPLICABILITY

This policy applies to all Department of Youth Services personnel and facilities and facilities operated by DYS by contract service providers.

000154

Effective Date: DEC 0 2 2005  Issued By: _____  Page ___3___ of ___3___



**State of Alabama**
**Department of Youth Services**
**POLICY AND PROCEDURES**

**Related Standards:**    3-JTS-3D-09, 3-JCRF-3D-07

**Chapter:**    13.0 Juvenile Rights

**Subject:**    Grievance Procedure

**Policy Number:**    13.3

I.    POLICY

It is DYS policy that each facility have a grievance procedure for students. The procedure will provide for at least one level of appeal and will be explained and made available to students.

II.    DEFINITIONS

Not applicable.

III.    PROCEDURES

Each facility will maintain written procedures to comply with this policy. The procedure will include provision for written responses to all grievances, including the reason for the decision, provisions for response within a reasonable time, provision for participation of staff and students in the grievance procedure, guarantees against reprisal, and means of resolving questions of jurisdiction.

IV.    APPLICABILITY

This policy applies to all Department of Youth Services personnel and facilities and facilities operated for DYS by contract service providers.

000155

Effective Date: JUN 2 3 1994    Issued By: _____ Page 1 of 1

EXHIBIT
Attachment
4

**State of Alabama**
**Department of Youth Services**
**POLICY AND PROCEDURES**

| | |
|---|---|
| **Related Standards:** | 3-JTS-3D-06, 3-JTS-3D-09, 3-JCRF-3D-04, 3-JCRF-3D-05, 3-JCRF-3D-07 |
| **Chapter:** | 1.0 Administration |
| **Subject:** | Child Advocacy Unit |
| **Policy Number:** | 1.28 |

I.    POLICY

The primary purpose of the DYS Child Advocacy Unit is to ensure the safety of students committed to the care and custody of DYS and to the provision of a healthy quality of life which promotes growth and positive change. It is for this purpose that the Child Advocacy Unit is hereby established.

II.    DEFINITIONS

Not Applicable.

III.    PROCEDURES

The DYS Child Advocacy Unit is directly responsible to the Executive Director. Advocacy Unit staff will be supervised by staff designated by the Executive Director and will receive direction and supervision from these staff only. The Executive Director is committed to ensuring that students need not be fearful of abuse from staff or other students during their stay and that they live in a clean, safe environment. Advocacy Unit staff, acting as the "eyes and ears" for the Director, help assure that this occurs. Acting on behalf of the Director, Advocacy Unit staff will be provided unimpeded access to all DYS facilities, operated by the state or under contract, staff and students. Any attempt to impede access will result in disciplinary action leading up to possible dismissal.

Each year the goals and objectives will be reviewed by the Executive Director to assure effectiveness and timeliness. Advocacy Unit goals are as follows:

000156

Effective Date:    06/27/2003    Issued By: _____    Page    1    of    2

## State of Alabama
## Department of Youth Services
## POLICY AND PROCEDURES

| | |
|---|---|
| **Related Standards:** | 3-JTS-3D-06, 3-JTS-3D-09, 3-JCRF-3D-04, 3-JCRF-3D-05, 3-JCRF-3D-07 |
| **Chapter:** | 1.0 Administration |
| **Subject:** | Child Advocacy Unit |
| **Policy Number:** | 1.28 |

1. All complaints made by students in DYS custody through the Advocacy complaint process will be investigated by the Advocacy Unit staff.

2. A DYS Student Advocacy Unit Report will be completed each year.

3. Advocacy Unit staff will report on quality of life issues observed within DYS facilities.

4. Students will have unimpeded access to complaint boxes, complaint forms and writing implements.

5. Student living areas will be visited regularly by Advocacy Unit Staff.

6. Advocacy Unit Staff will report allegations of child abuse or activities leading toward possible criminal charges to the proper authorities within DYS.

7. Students may appeal the decisions regarding their complaint to the Director of the Advocacy Unit.

IV.    APPLICABILITY

This policy applies to all Department of Youth Services personnel and facilities and to facilities operated for DYS by contract providers.

000157

Effective Date: __06/27/2003__  Issued By: _____    Page __2__ of __2__

Section 26-14-6.1

**Duties and responsibilities for investigation of reports.**

The duty and responsibility for the investigation of reports of suspected child abuse or neglect shall be as follows:

(1) Reports of suspected child abuse or neglect involving disciplinary or corporal punishment committed in a public or private school or kindergarten shall be investigated by law enforcement agencies.

(2) Reports of suspected child abuse or neglect committed in a state-operated child residential facility shall be investigated by law enforcement agencies.

(3) All other reports of suspected child abuse and neglect shall be investigated by the Department of Human Resources.

(Acts 1993, 1st Ex. Sess., No. 93-890, p. 162, §1.)

000158



EXHIBIT
Attachment
5