IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **ALABAMA DISABILITIES** | ) | |
| **ADVOCACY PROGRAM** | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-434-MHT |
| **J. WALTER WOOD, JR.**, in | ) | |
| his official capacity as | ) | |
| Executive Director of the | ) | |
| Alabama Department of | ) | |
| Youth Services, | ) | |
| | ) | |
|    Defendant. | ) | |

**RESPONSE TO MOTION TO AMEND JOINT REPORT OF THE PARTIES**

It is unclear at present whether there exists a dispute regarding the subject of ADAP communication with DYS residents during "monitoring" visits. Based on communications between counsel, the Defendant believes it is likely that the issue will be resolved by agreement on more specific procedures to facilitate ADAP access. The Defendant proposes that the parties continue discussions to resolve the matter. If the matter is not resolved by November 16, 2007, the Defendant will request that the Court enforce the terms of the Settlement Agreement between the parties and the parties can then brief the issue (and submit additional evidence for the record) beginning November 16, 2007.

However, in response to the substance of the Plaintiff's motion the undersigned counsel for J. Walter Wood, Jr., submits the following statement:

ADAP again omitted important facts and misstated others in its Motion to Amend Joint

Report of the Parties. ADAP alleged that "Defendant's change in policy was communicated upon the arrival of ADAP employees at the Defendant's Vacca and Chalkville facilities on October 23, 2007, for monitoring visits that had been scheduled in advance."

First, there has been no "change in policy." ADAP was not denied access and the monitoring visit was conducted on October 23 as more fully described in the attached affidavit of Naren Phillips[1]. Second, on October 16, the undersigned communicated to Mr. Tucker, via telephone, certain specific problems with ADAP's practices during "monitoring" visits. The substance of that telephone conversation was that "investigations" need to be separated from "monitoring" and the discussion included the following specifics:

On October 16, the undersigned met with DYS personnel assigned as contact points for ADAP monitoring visits. Certain practices by ADAP that apparently violate the access Settlement Agreement were brought to the attention of the undersigned. Immediately after that meeting, the undersigned called Mr. Tucker on the telephone and communicated to Mr. Tucker specific problems with ADAP's practices. Those problems are summarized in the following paragraphs. The undersigned informed Mr. Tucker that DYS staff would make certain changes to the monitoring procedures in an attempt to address the problems.

The problems communicated to Mr. Tucker were, first that ADAP was again, as previously described in the Answer to the Complaint in this case, apparently violating the terms of the Settlement Agreement by conducting investigations without communicating with DYS. Specifically, ADAP was setting up "monitoring" visits, but upon arriving at the campus, calling

---

[1] The attached affidavit is an unsigned copy. A copy of the signed original will be submitted when it is received by the undersigned.

specific children into "private attorney client" conferences. Meanwhile ADAP staff was refusing to inform DYS about the substance of the investigations being conducted with those students. The undersigned discussed with Mr. Tucker the fact that ADAP was apparently conducting "investigations" without communicating to DYS the substance of those investigations as required by the Settlement Agreement. The undersigned stated to Mr. Tucker that DYS does want to facilitate ADAP's access but also wants to extract the benefit of the bargain reached in settlement of this lawsuit through which ADAP has its access. That requires notice of the factual basis for any investigations.

Second, the undersigned discussed with Mr. Tucker the fact that ADAP was conducting the investigations under the guise of monitoring by combining "confidential" visits with monitoring. The undersigned discussed with Mr. Tucker his recognition that confidential visits are obviously allowed in connection with ADAP's access so the procedure for accommodating such visits needed to be worked out, however the current practice of combining such visits with general monitoring indicates that investigations are being conducted under the guise of monitoring in violation of the settlement agreement.

Third, the undersigned discussed with Mr. Tucker that there was at least one instance where DYS staff claimed ADAP staff attempted to force a specific student to answer questions during a monitoring visit when the student specifically stated she was not interested in talking with ADAP. That student was specifically identified by name by ADAP personnel and she was coerced to answer ADAP's questions during a prearranged "monitoring" visit.

During the October 16 telephone discussion between the undersigned and Mr. Tucker, the difficulties associated with ADAP conducting monitoring and investigating within DYS facilities

where some residents are within the scope of ADAP's potential clientele and some are not within the scope of ADAP's potential clientele were also generally discussed. It was agreed that a resolution to the problem would be sought to both allow ADAP's full access and provide DYS the benefit of identifying problems that may need to be addressed within DYS institutions. We also discussed the framework for communication between the two organizations for resolving the problems.

After the October 23 monitoring visits, Mr. Tucker called the undersigned and discussed the problems ADAP monitors had during the monitoring visit. Mr. Tucker stated "this may be a phone call you were anticipating." We agreed to each ascertain the facts and to communicate further to resolve the problems. However, two days before the date the joint stipulated facts were to be submitted in this case, ADAP filed its Motion to Amend Joint Report of the Parties. As described above not all the relevant facts were stated and no reference was made to the communications regarding ADAP's practices and violation of the Settlement Agreement which lead to the changes by DYS staff in monitoring procedures.

There is, and has always been, a conceptual problem with ADAP's access which results in practical difficulties. The problems are the result of ADAP's decision to suddenly redirect it's efforts away from its traditional mental health and disabilities advocate role toward juvenile justice. The true focus of the P&A system, of course, is mental health institutions–not juvenile justice institutions. Obviously the statutory framework under which ADAP functions does not envision juvenile justice advocacy but envisions mental health institution advocacy. DYS is attempting to work with ADAP to sort through the problems.

If  ADAP intends to litigate the issue of communicating with students during monitoring

4

visits such that it can conduct investigations under the guise of monitoring, DYS will seek Court enforcement of the Settlement Agreement. It should be clear before the date the Plaintiff's brief is due, November 16, 2007, whether an dispute regarding this issue exists. If this issue is not resolved, DYS will ask for an injunction against ADAP to order ADAP to cease violating the terms of the Settlement Agreement. Specifically, DYS will ask that ADAP should be enjoined from:

(A) Conducting "investigations" without complying with the terms of the Settlement Agreement;

(B) Entering DYS facilities under the guise of "monitoring" and conducting activities other than monitoring. Specifically, "monitoring" activities include:

    1. Providing information and training on, and referral to program addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.

    2. Monitoring compliance with respect to rights and safety of residents.

    3. Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

( C ) Forcing, or attempting to force, under the guise of "monitoring," juveniles who do not voluntarily communicate with ADAP representatives, to communicate with ADAP representatives or answer ADAP's questions.

(D) Ordering ADAP to cease its practices of conducting "confidential client visits" for the purpose of conducting investigations in violation of the Settlement Agreement. Specifically, ADAP has a good faith obligation to first determine whether a particular individual is within the scope of it's clientele before taking that juvenile as a "client." ADAP should be ordered to cease its practice of conducting "client visits" with each and every child in DYS custody without regard to its good faith obligation to first ascertain whether the child is a potential client.

(E) Ordering ADAP to comply in good faith with the terms of the Settlement Agreement.

Respectfully submitted,

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar number: 3985-R67T
General Counsel
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2007, I electronically filed the foregoing **RESPONSE TO MOTION TO AMEND JOINT REPORT OF THE PARTIES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James A. Tucker
Nancy E. Anderson
Alabama Disabilities
Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
General Counsel
Attorney for the Defendant

STATE OF ALABAMA

COUNTY OF JEFFERSON

### AFFIDAVIT

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared Naren Phillips, who being known to me and being by me first duly sworn, deposes and says as follows:

I am Naren Phillips, and I am over the age of twenty one (21). This affidavit is given upon my personal knowledge. I am an employee of the Alabama Department of Youth Services. On October 23, 2007, I escorted ADAP representatives to Cherokee, Junaluska, Iroquis, Chickasaw and Alabama cottages at Chalkville campus. In addition the ADAP representatives visited the school, the clinic, the dining hall, and looked through the windows of the recreation room. ADAP representatives also spoke with the school librarian at length about general reading levels, materials available in the library, how often new materials are added to the library, and other issues.

Students in the cottages were called out of their assigned areas and assembled in the day area of each cottage. Andrea Mixon introduced herself to the students, provided the students with a description of ADAP and the services ADAP provides. Each student received a card with ADAP contact information and a card with ADAP contact information was left at each cottage desk.

I understood the purpose of the visit was monitoring and had been arranged through DYS Legal. Accordingly, ADAP representatives were permitted to monitor by going anywhere on campus to observe students and/or staff, speaking with staff, addressing groups of students and answering questions from any students. A restriction was that ADAP representatives were not



allowed to privately meet with students. ADAP representatives were informed that they should contact DYS Legal to arrange visits with specific students but could not do so during monitoring. ADAP representatives extensively questioned DYS staff and DYS staff was cooperative and answered ADAP's questions without limitation to the best of their knowledge.

When conducting monitoring visit and addressing the students on October 23, some students asked questions of the ADAP representatives but the ADAP representatives stated that they should talk about it later and told the students to call or write ADAP about the matters.

DATED THIS November 7, 2007.

_____
Naren Phillips

SWORN TO AND SUBSCRIBED BEFORE ME, this November 7, 2007.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: 10-10-11