### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

ALABAMA DISABILITIES ADVOCACY  )
PROGRAM           )
               )
      Plaintiff,     )
               )
v.              )   CIVIL ACTION NO.
               )   2:07-CV-434-MHT
J. WALTER WOOD, JR. in his official  )
Capacity as Executive Director of the  )
Alabama Department of Youth Services,  )
               )
      Defendant.    )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

1.  In Plaintiff's motion for summary judgment and in this memorandum, ADAP demonstrates that the Defendant violated the Protection and Advocacy for Individuals with Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. ("PADD Act"), and the Protection and Advocacy for Individuals with Mental Illness Act Protection of 1986, 42 U.S.C. 10801 et seq. ("PAIMI Act") by denying Plaintiff access to DYS's internal incident reports and investigative findings regarding abuse and neglect against youth with disabilities in DYS custody. This case implicates questions that stand squarely on the principles of law declared in *Alabama Disabilities Advocacy Program v. J.S. Tarwater,* 97 F.3d 492 (11th Cir. 1996).

2.  Over twelve years ago, the Alabama Disabilities Advocacy Program (ADAP) received a complaint from an anonymous caller requesting that ADAP investigate the

suspicious deaths of two individuals with mental retardation residing in the J.S. Tarwater

Development Center, operated then by the Alabama Department of Mental Health and

Mental Retardation ("DMH/MR"). To conduct its federally authorized investigation

under the PADD Act, ADAP requested that DMH/MR officials release to it all records

maintained by DMH/MR regarding the deceased residents. When DMH/MR refused,

this Court ordered the agency to release all records regarding the deceased residents to

ADAP. The Eleventh Circuit affirmed this Court's ruling stating, "it is clear that the Act

provides express authority for P&As to gain broad access to records, facilities, and

residents to ensure that the Act's mandates can be effectively pursued." [1]

3.     This Court declared in *Tarwater*, that PADD gives ADAP authority to

"investigate abuses as well as the right to receive records under certain circumstances." [2]

When ADAP is denied records it is authorized to receive, "it suffers a direct injury to its

statutory interest in investigating abuses, to the extent that such an investigation entails

examining records, and to its statutory interest in the records themselves."[3] ADAP's

interest in obtaining Defendant's investigative documents is "concrete, particularized,

actual, and imminent." [4] Here, as in *Tarwater*, a direct relationship exists between

Plaintiff's "…inability to investigate and access records and Defendant's conduct in

denying access to the records."[5] Thus, as in *Tarwater*, ADAP seeks an order by this

Court directing the Defendant to turn over requested records to redress ADAP's injury.[6]

---

[1] *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F.3d 492, 497 (11th Cir. 1996).
[2] *Alabama Disabilities Advocacy Program v. J.S. Tarwater*, 894 F. Supp. 424, 427 (M.D. Ala. 1996).
[3] Id. at 427.
[4] Id.
[5] Id.
[6] *Alabama Disabilities Advocacy Program v. J.S. Tarwater*, 894 F. Supp. 424, 427 (M.D. Ala. 1996).

4.    Plaintiff requests that this Court grant Plaintiff's Motion for Summary Judgment and order the Defendant to provide immediately: 1) all incident reports and investigative findings prepared by DYS and any outside reporting agency regarding all of Plaintiff's clients, including those referenced in Plaintiff's May 16, 2007 Complaint (Doc. No. 1) (H.M.,W.B., K.W., J.C., S.B), whom Plaintiff has asserted probable cause to believe suffered abuse or neglect, and 2) all incident reports and investigative findings of non-clients (identifying information redacted) made by DYS and any outside agency charged with investigating abuse and neglect occurring at DYS managed facilities since November 2006.

## STATEMENT OF UNDISPUTED FACTS

5.    The Defendant has refused to provide Plaintiff with incident reports and investigative findings regarding potential abuse and neglect of its clients in DYS facilities despite Plaintiff's repeated written requests for these records:

a.   On November 29, 2006, Plaintiff sent a written request to Defendant's counsel for the DYS incident reports and investigative findings regarding three clients, W.B., H.M. and K.W, male residents of Vacca and Mt. Meigs whom Plaintiff had probable cause to believe suffered abuse or neglect while in DYS custody.  (Doc. No. 25, 000142-000143).

b. On April 20, 2007, Plaintiff again made a written request addressed to Defendant's counsel that incident reports and investigative findings be forwarded to the Plaintiff. (Doc. No.25, 000144-000145).

3

c. On May 9, 2007, Plaintiff made a follow up written request addressed to Defendant's counsel for incident reports and investigative findings for WB. (Doc. No. 25, 000057-000058).

d. On May 16, 2007, Plaintiff again made a written request to the Defendant's counsel for incident reports and investigative finds through its Complaint filed in this matter. (Doc. No. 25, 000059-000075).

e. On June 25, 2007, Plaintiff made another written request to Defendant's counsel for incident reports and investigative findings into abuse of W.B. (Doc. No. 25, 000056).

f. As of the date of this filing, Defendant has refused to provide Plaintiff with copies of the incident reports and investigatory findings regarding W.B., H.M., and K.W., as required under 42 C.F.R. § 51.42. Defendant has not provided Plaintiff with a written explanation as to why it denied Plaintiff these documents as required under 42 C.F.R. 51.43, but for responsive pleadings in this action. (Doc. No. 25, 000022, 000036-000037), (Doc. No. 24-2, 000146-149).

g. On May 16, 2007, Plaintiff made a written request to the Defendant's counsel for incident reports and investigative findings through its Complaint filed in this matter. (Doc. No.25, 000074-000075).

h. On April 20, 2007, Plaintiff sent a written request to Defendant's counsel for copies of incident reports and investigative findings prepared by DYS regarding J.C., B.P. and S.B., residents at Chalkville whom Plaintiff had probable cause to believe suffered abuse or neglect while in DYS custody. (Doc. No. 25, 000144-000145).

4

i. On May 16, 2007, Plaintiff again made a written request to Defendant's counsel for incident reports and investigative findings in its May 16, 2007 Complaint. (Doc. No. 25, 000059-000075).

j. As of the date of this filing, the Defendant has not provided Plaintiff with copies of the incident reports and investigatory findings regarding J.C., B.P., and S.B., as required under 42 C.F.R. § 51.42. Defendant has not provided Plaintiff with a written explanation as to why it has refused to provide Plaintiff with these documents as required under 42 C.F.R. 51.43, but for responsive pleadings in this action. (Doc. No. 25, 000036-000037, 000022) (Doc. No. 24-2, *See* 000146-149).

6.     The Defendant has failed to provide Plaintiff with all investigative reports prepared by any agency charged with investigating abuse or neglect, or injury occurring at Vacca, Chalkville and Mt. Meigs which Plaintiff requested. (Doc. No. 25, 000022, 000036-000037).

a. On April 20, 2007, Plaintiff sent a written request to Defendant's counsel for copies of all investigative reports prepared by any agency charged with investigating abuse or neglect, or injury occurring at Vacca, Chalkville, and Mt. Meigs campuses within the last 6 months. Plaintiff requested that these reports be forwarded to Plaintiff by May 4, 2007. (Doc. No. 25, 000144-000145).

b. Plaintiff again made a written request to Defendant's counsel for these documents in its May 16, 2007 Complaint. (Doc. No. 25, 000059-000075).

c. As of the date of this filing, Defendant has not provided Plaintiff with a written explanation as to why it has failed to provide all DYS investigative reports for the requested six month time period as required under 42 C.F.R. § 51.43, but for

5

responsive pleadings in this action. (Doc. No. 25, 000022, 000036-000037),( Doc. No. 24-2, 000146-000149).

7.      Reports of abuse and neglect at these facilities are investigated by a single DYS Special Investigator, Alan Staton, who receives direct instructions on investigations from DYS legal counsel, Dudley Perry. (Doc. No. 24-2; 000148-000149).

## STANDARD OF REVIEW

8.      A party in a lawsuit may move a court to enter summary judgment before trial. Fed.R.Civ.P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir.1998).

## SUMMARY OF ARGUMENT

8. The Defendant's refusal to provide Plaintiff with incident reports and investigatory findings regarding alleged abuse and neglect in its facilities as requested has prohibited the Plaintiff from performing its congressionally mandated function to investigate reports of abuse and neglect of youth with disabilities in DYS custody and to monitor the rights and safety of youth.   Upon creating the Protection and Advocacy Systems, Congress chose to occupy the field "with respect to the investigatory powers and rules of disclosure" regarding individuals for whom the Plaintiff advocates.[7] Furthermore, state confidentiality laws, which Defendant claims bars Plaintiff's access to DYS internal investigation information, are expressly preempted by federal statute, in this case the

---

[7] *Iowa Protection and Advocacy, Inc. v. Rasmussen,* 206 F.R.D. 630, 639 (D. Iowa 2002).

PAIMI and PADD Acts.[8] The Health Insurance Portability and Accountability Act (HIPAA) regulations allow for, rather than prohibit, Plaintiff's access to incident reports and investigative findings containing protected health information in order to carry out its Congressional mandate.[9]    Plaintiff is required to maintain the confidentiality of information and records concerning its clients and to maintain the confidentiality of mental health information in the same manner as a provider of mental health services.[10] Records of Defendant's internal investigations labeled by Defendant as attorney work product are accessible to the Plaintiff so long as the Plaintiff makes a good faith showing that the information it seeks is necessary and cannot be obtained from another source.[11]

## ARGUMENT

I.    **Plaintiff's Federal Mandate to Conduct Abuse and Neglect Investigations and to Monitor DYS Facilities Includes the Right to Access All DYS Information Regarding Internal Investigations and Investigations Conducted By Outside Agencies.**

9.    To fulfill Plaintiff's federal mandate to meaningfully advocate for individuals with disabilities in state custody, the PAIMI and PADD Acts authorize Plaintiff to:

a.    Have prompt access to all records of any individual who is a client of the system if the individual, or his legal guardian, conservator, or other legal representative, has authorized the system to have such access.[12]

b.    Have prompt access to records of individuals who are in the custody of the state and with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe such individual has been subjected to abuse or neglect.[13]

---

[8] Id. at 639.
[9] *Protection & Advocacy System, Inc.,* v. *Freudenthal,* 412 F.Supp.2d 1211, 1220 (D. Wy. 2006).
[10] 42 U.S.C. Sec. 10806 (a), 42 C.F.R. Sec 51.45, NS 45 C.F.R. Sec 1386.22(e).
[11] *Iowa Protection and Advocacy, Inc. v. Rasmussen,* 206 F.R.D. 630, 635 (D. Iowa 2002).
[12] 42 U.S.C. § 10805; 45 C.F.R. § 1386.22(a) (1);  42 U.S.C. § 15043; 42 C.F.R. § 51.41(b) (1).
[13] 42 U.S.C. § 10805; 42 C.F.R. § 51.41(b) (2) (ii); 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(a) (2) (ii).

c.      Investigate incidents of abuse and neglect of individuals if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred. [14]

10.     In the course of its monitoring and investigations into abuse and neglect occurring in DYS licensed and managed facilities, ADAP is authorized under the PADD Act to obtain, among other records, the following information:

reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records. [15]

11.     The PAIMI regulations also provide ADAP access to Defendant's incident reports and investigative findings:

Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:
(i)      Abuse, neglect, or injury occurring at the facility;
(ii)     The steps taken to investigate the incidents;
(iii)    Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports or incidents; or
(iv)     Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings. [16]

12.     The PAIMI and PADD regulations state that records accessible to ADAP are to be produced no matter what form they may take, including "…information and individual

---

[14] 42 U.S.C. § 10805; 42 C.F.R. § 51.41; 42 C.F.R. § 51.42; 42 U.S.C. § 15043; 45 C.F.R. § 1386.22(a) (3).
[15] 42 U.S.C.  § 10806(b)(3)(A)
[16] 42 C.F.R. § 51.41(c) (2).

8

records whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape record."[17]

13.    Furthermore, ADAP's federal mandate to monitor Defendant's compliance with respect to the rights and safety of youth with disabilities and to investigate abuse and neglect preempts any state confidentiality laws that may otherwise prohibit Defendant from disclosing allegedly confidential information to the Plaintiff.  In *Iowa Protection & Advocacy Services, Inc., v Rasmussen,* 206 F.R.D. 630, 639 (S.D. Iowa, 2001), the Court concluded that State law is expressly preempted by the PAIMI Act.[18]  The *Rasmussen* Court, along with "at least two other district courts have upheld this express preemption,"[19] i.e., that "in the case of both the PAIMI Act and the PADD Act, it is clear that Congress has, indeed, 'occupied the field,' with respect to the investigatory powers and rules of disclosure regarding protection and advocacy systems for dependent adults."[20]  Accordingly, the Court reasoned that: "Protection and advocacy systems are established as independent checks on state care and regulation of care for dependent adults.  That independent check would become meaningless if a state was allowed to simply legislate away a protection and advocacy system's power to investigate by enacting restrictions." [21]

14.    Federal confidentiality laws do not block ADAP's access to incident reports and investigative findings.  In *Protection and Advocacy System, Inc. v. Fruedenthal,* 412 F. Supp.2d, 1211, 1218 (D.Wy. 2006), the Wyoming P&A brought suit against the

---

[17] 42 C.F.R. § 51.41(c)(2)(i-iv); 45 C.F.R. §1386.22(b)(2)(i-iv).
[18] *Rasmussen,* 206 F.R.D. 630, 639.
[19] *Rasmussen,* 206 F.R.D. 630, 639 (*referencing Oklahoma Disability Law Ctr., Inc. v. Dillon Family Youth Servs., Inc.,* 879 F.Supp. 1110 (N.D. Okla. 1995); *Advocacy Center v. Stalder,* 128 F.Supp.2d 358 (M.D.La. 1999)).
[20] Id. at 639.
[21] Id. at 639.

Governor of Wyoming for refusing to provide the P&A with individual records from a state operated psychiatric hospital. The State argued that it could not provide the P&A with certain requested records without violating state law which required the hospital to keep confidential records of residents. However, the Court held HIPPA, "…does not bar the State Hospital and Training School from disclosing 'protected health information' without the authorization of the individual to the P&A if such disclosure is required by a P&A act, and that P&A complies with the requirements set forth in the Act."[22] In support of its holding, the court referenced HIPPA which states that: "a covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of law." [23] The court stated explicitly: "The Privacy Rule permits a covered entity to disclose protected health information (PHI) without the authorization of the individual to a state-designated Protection and Advocacy (P&A) system to the extent that such disclosure is required by law and the disclosure complies with the requirements of that law."[24] The applicable law (PAIMI and PADD Acts in the instant matter) both state that P&As are authorized to access protected health information after: 1) seeking authorization from individuals about whom they have received a report of suffering abuse or neglect, or 2) showing probable cause to believe the existence of abuse and neglect before reviewing protected health information. [25]

15. Plaintiff's federal mandate also authorizes it to obtain redacted incident reports and investigative findings prepared by DYS officials. The district court in *Freudenthal* found

---

[22] *Freudenthal,* 412 F. Supp.2d 1211, 1217.
[23] *Id.* at 1217, *referencing* 45 C.F.R. § 164.512(a) (1).
[24] Id., *referencing* http://answers.hhs.gov
[25] 412 F. Supp.2d 1211, 1220.

that the Wyoming P&A's access to incident reports and investigative findings, without obtaining consent from the individual or an assertion of probable cause, would nevertheless assist the P&A in its monitoring functions.[26]  In the case of P&A monitoring activities, the Court found that the purpose of the PAIMI, PADD, HIPPA, and Medicaid Acts "…can be met by providing the incident reports to the P&A with names and identifying information redacted."[27]  Thus, Plaintiff is entitled to incident reports and investigative findings of DYS internal investigations with all identifying information of DYS residents, who are not Plaintiff's clients, redacted.  The *Freudenthal* court recommended a protocol for the Wyoming's P&A access to incident reports and investigative findings of individuals who are not P&A clients and where no probable cause has been established: "If P&A, after its review of the reports, determines that there is probable cause to believe that a patient has been subject to abuse and neglect or that the health or safety of the individual is in jeopardy, it can make an appropriate request for more information. The State Hospital can then provide an unredacted report pursuant to 42 C.F.R. §51.41(c) (2) (I)."[28]  The Court stated further that such a "protocol for disclosing incident reports does not violate the HIPAA Privacy Rule or the Medicaid regulations on confidentiality."[29]

16.    Once a P&A receives access to a client's private information, PADD regulations state that the P&A, "must keep confidential all information contained in a client's records, which includes, but is not limited to, information contained in an automated data

---

[26] Id. at 1220.
[27] Id.
[28] Id
[29] Id.

11

bank."[30] PAIMI regulations state that P&As, "...except as provided elsewhere in this section, keep confidential all records and information including information contained in any automated electronic database pertaining to: i) Clients to the same extent as is required under Federal or State laws for a provider of mental health services."[31] Thus, a violation of confidentiality by the Plaintiff would be considered a violation of its own federal enabling statutes.

**II. Plaintiff is Entitled to Defendant's Investigation Information, Even If Classified As Attorney Work Product, Upon Plaintiff's Good Faith Showing that the Information Sought is Necessary and Cannot Be Obtained from Another Source.**

17.     The work product privilege is not absolute. Under Rule 26(b) (3) of the Federal Rules of Civil Procedure, a party may obtain documents and other tangible items that were prepared by or for opposing counsel in anticipation of litigation *if* the party seeking discovery can show that he/she has a *substantial need* for the document and is unable, without undue hardship, to obtain the documents or their substantial equivalent, by any other means.[32]   In cases in which a federal agency with a statutory mandate to investigate allegations of abuse and neglect requests information, the standard for overcoming the work product privilege is far less stringent, requiring only a good faith argument that the information sought is necessary and cannot be obtained from another source.[33]

18.     *Rasmussen* is instructive on this point. In *Rasmussen*, a resident of a facility for the care and treatment of individuals with mental retardation suffocated and died while being restrained by employees of the facility.  The Iowa Department of Inspections and

---

[30] 45 C.F.R. § 1386.22(e) (1).
[31] 42 C.F.R. § 51.45(a) (1).
[32]  Ex parte Alabama Power Co., 280 Ala. 586, 592 (Ala. 1967) (finding that the trial court has wide discretion in determining what constitutes substantial need); *see also* Ex parte Ala. Dep't of Youth Servs., 927 So. 2d 805, 807 (Ala. 2005) (stating that "[i]t has long been the law of this State that trial courts are to be afforded wide discretion in discovery matters.").
[33] *Rasmussen,* 206 F.R.D. 630, 635 (D. Iowa 2002).

Appeals ("DIA") conducted an investigation into the matter but determined that the allegations of abuse were unfounded. The Iowa P&A agency subsequently requested a copy of the DIA's investigatory report, but was denied access. The court held that because the Iowa P&A was obligated to keep the information confidential,[34] because it was in the public's interest to determine the cause of the deceased's death,[35] and because the attorney work-product exemption was inapplicable, the Iowa P & A was entitled to review the records sought. In holding that the Iowa P & A "...was entitled to the [investigatory report] regardless of whether it [was], in fact, covered by the work product doctrine,"[36] the court argued that, "Congress certainly did not intend for a government investigation to create an umbrella of qualified work product privilege that prevents protection and advocacy systems from fulfilling their statutory duty of independent review."[37] In other words, given that Congress charged the Iowa P&A with the task of investigating allegations of abuse, it is not logical that Congress would have insulated alleged abusers from discovery requests by allowing them to invoke the work-product privilege:

> In the context of civil litigation, when a document is covered by the qualified privilege created by work product doctrine, the party seeking the document can overcome that privilege by showing a substantial need for the document and an inability to reasonably obtain the information within those documents through other means. *On the other hand, in a case such as this, where the production of the documents in question is mandated by statute, the standard for overcoming the qualified work product privilege is far less stringent.* . . . [A] party by statutory mandate seeking documents covered by the work product doctrine must simply "show 'good cause' by making a good faith declaration that the documents are believed necessary . . . and that it is believed that the information contained therein cannot be obtained from any other source."[38] (Emphasis added.)

---

[34] Id. at 636.
[35] Id.
[36] Id. at 643.
[37] Id. at 642.
[38] Id.

18.    As part of its rationale, *Rasmussen* cited a case in which the IRS sought documents prepared by an individual's accountant pursuant to investigative authority established by federal statute.[39] Referencing *United States v. Brown*, 349 F.Supp.420 (N.D. Ill. 1972)*, Rasmussen* addressed several reasons why the work product doctrine must be modified in cases of federally authorized investigations:

> First, there is the general policy that access to information is productive of justice in administrative proceedings and investigations as it is in both civil and criminal litigation.' Second, the importance of the particular investigation 'to the integrity and equity of the system. . .' Third, the court stated that the 'intent of Congress in [the] particular legislation [was] unequivocal.'[40]

19.    The *Rasmussen* court invoked *Brown* and declared that Congress created a "…clear statute which reflects the strong congressional desire to further…inquiries" into allegations of abuse and neglect occurring at facilities where individuals with disabilities reside.[41]    Though P&A statutes do not explicitly overrule the work product privilege, *Rasmussen* instructs that, "courts should scrutinize and give the most careful consideration to any application of the work product doctrine which would have the effect of impairing the effectiveness of such clearly mandated administrative investigations."[42]

20.    Plaintiff's federal investigative authority provides ADAP with access to reports that relate to "steps taken to investigate the incidents."[43] ADAP must have access to investigative reports to review the quality of the Defendant's investigation of abuse and

---

[39] Id.
[40] Id. at 642, *citing Brown* at 430-431.
[41] Id. at 642.
[42] Id. at 642.
[43] 42  C.F.R.. § 51.4(c) (2) (ii).

neglect and to determine whether ADAP's client's rights are being violated by DYS's internal investigative measures. As *Rasmussen* recognized, a Protection and Advocacy Agency's access to investigative reports safeguards a system of care's public duty to thoroughly investigate and protect residents from abuse and neglect:

> [T]he interest in disclosure in this case is not the private interest of a litigant but a public interest codified in federal statute. The integrity of the system of care for dependent adults demands that relevant information come to light and that courts not afford wide ranging protection of potentially incriminating information.[44]

21.    Where the public interest is so significant regarding adults, it is that much more significant where, as here, the safety and wellbeing of children and youth with disabilities are implicated.  The incident reports and investigative findings the Plaintiff seeks from the Defendant are necessary for Plaintiff to ensure that Defendant took and is taking appropriate measures to investigate incidents, to ensure that individuals suffering injury are receiving proper treatment, and that Defendant is taking corrective action. Absent Defendant's production of these documents, Plaintiff will be unable to obtain this information from alternate means.

22.    As the Eleventh Circuit made clear in *Tarwater,* the State that designated the Plaintiff as the Protection and Advocacy Agency for Alabama's individuals with disabilities cannot satisfy federal law by "…establishing a protection and advocacy system which has authority in theory, but then taking action which prevents the system from exercising that authority."[45] Under the PAIMI Act and the PADD Act, Congress charged protection and advocacy agencies with the task of investigating claims of abuse made by persons with mental illnesses and developmental disabilities. Congress

---

[44] *Rasmussen* at 642.
[45] *Tarwater,* 97 F.3d 492,497(M.D. Ala. 1996) *(citing Mississippi Protection & Advocacy System, Inc. v. Cotten,* 929 F.2d. 1054, 1058-59 (5th Cir. 1991).

simultaneously gave these organizations power to obtain *all* records regarding their clients, including investigatory reports. In response to Plaintiff's request for these documents, Defendant argues that the incident reports and investigative findings are protected under state confidentiality laws and the attorney work-product privilege. State confidentiality laws are preempted by the PAIMI and PADD Acts. Defendant's work product shield falls because Plaintiff need only make a good faith showing as to why its review of investigative information is necessary. Given the allegations of physical abuse and medical neglect ADAP has received about DYS facilities, this good faith showing has been met.

## **CONCLUSION**

23.    Because there are no disputed facts, Plaintiff requests that this Court grant its Motion for Summary Judgment. Accordingly, Plaintiff requests that the Court order Defendant to immediately provide it with: 1) all incident reports and investigative findings prepared by DYS and any outside reporting agency regarding all of Plaintiff's clients, including those referenced in Plaintiff's May 16, 2007 Complaint (H.M.,W.B., K.W., J.C., S.B), about whom Plaintiff has asserted probable cause to believe abuse or neglect occurred, and 2) all incident reports and investigative findings of non-clients (identifying information redacted) made by DYS and any outside agency charged with investigating abuse and neglect occurring at DYS managed facilities since November 2006.

Respectfully Submitted,

/s/ James A. Tucker
James A. Tucker
Alabama Disabilities Advocacy Program
University of Alabama
Box 870395
Tuscaloosa, AL  35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2007, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notice of such filing

to the following attorneys of record for the defendants:

Mr. Dudley Perry Jr.
General Counsel
Alabama Department of Youth Services
PO Box 66
Mount Meigs, AL 36057-0066

/s/ James A. Tucker
James A. Tucker