**IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **ALABAMA DISABILITIES** | ) | |
| **ADVOCACY PROGRAM** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-434-MHT |
| **J. WALTER WOOD, JR.**, in | ) | |
| his official capacity as | ) | |
| Executive Director of the | ) | |
| Alabama Department of | ) | |
| Youth Services, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

1.      In this memorandum, Defendant Wood demonstrates that Defendant Wood has

not violated the Protection and Advocacy for Individuals with Developmental Disabilities

Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq. ("PADD Act"), nor the

Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. 10801 et

seq. ("PAIMI Act").  The Alabama Department of Youth Services ("DYS") has provided the

Plaintiff with access to the records and/or students and/or DYS facilities wherein such students

are currently placed to investigate findings regarding abuse or neglect against youth with

disabilities in DYS custody.

1

2.      PADD and PAIMI, give the Plaintiff the authority to access facilities[1], speak to individuals with developmental disabilities and mental illness and access records pertaining to such individuals under certain circumstances. PADD and PAIMI do  not give the Plaintiff the authority to access individuals and/or records of individuals that are not clients of the Plaintiff.

3.      The Plaintiff has not suffered a "direct injury to its statutory interest in investigating abuses, to the extent that such an investigation entails examining records and to its statutory interest in the records themselves," as the Defendant has provided the Plaintiff with the records and/or access to the individuals that the Plaintiff has requested. Morever, Plaintiff has not suffered a direct injury in relation to students and/or documents that the Plaintiff does not have the statutory authority under PADD nor PAIMI to investigate.

4.      Defendant requests that this Court deny the Plaintiff's Motion for Summary Judgment and not require the Defendant to produce the incident reports and investigative findings prepared by DYS and any outside reporting agency regarding all of Plaintiff's clients because Plaintiff has not demonstrated that Plaintiff has obtained the consent of the parent or legal guardian's consent to such records nor has Plaintiff indicated the facts upon which Plaintiff believes that such individuals have suffered abuse or neglect in DYS custody.  DYS has provided the Plaintiff with access to the students and/or records of H.M, W.B., K.W., J.C., and S.B.  In addition, Defendant requests that this Court deny Plaintiff's request for all incident reports and investigative findings of non-clients made by DYS and any outside agency charged with investigating abuse and neglect occurring at DYS managed facilities since November 2006

---

[1] DYS is not a "facility" as that term is defined under the Acts, but DYS has nevertheless agreed to provide access pursuant to the terms of the settlement of a previous lawsuit between the parties. (Doc. 25, 000039-000041).

because the Plaintiff is not entitled to such records under state law nor PADD nor PAIMI.

## STATEMENT OF UNDISPUTED FACTS

5.      The Defendant has provided the Plaintiff with the incident reports and investigative findings regarding potential abuse and neglect of the Plaintiff's clients in DYS facilities.  The Defendant has allowed Plaintiff access to several students; the Defendant has allowed Plaintiff has access to three DYS campuses on numerous occasions. Most importantly, the Defendant has provided the Plaintiff with voluminous and copious documents relating to Plaintiff's clients.[2]

6.      The Plaintiff made written requests to the Defendant for the incident reports and investigative findings regarding H.M., W.B., K.W., J.C., B.P., and S.B.

7.      The Defendant has provided the Plaintiff with access to all reports regarding H.M., W.B., K.W., J.C., B.P., and S.B. and/or access to speak with  H.M., W.B., K.W., J.C., B.P., and S.B. at DYS facilities.  This access was provided not pursuant to the provisions of the Acts and regulations, but pursuant to settlement agreement between the parties which defines the scope of the Plaintiff's access.

8.      42 C.F.R. § 51.42, if applicable, does not require production to the Plaintiff of copies of the incident reports and investigatory findings. 42 C.F.R. § 51.42 only allows the

---

[2] Attached hereto is an affidavit of the undersigned regarding matters alleged in the Plaintiff's brief in support of summary judgment which are beyond the scope of the issues outlined in the Joint Report of the Parties and therefore not addressed in the Defendant's record submission.  (Doc. 24).  This affidavit is un-executed and will be substituted with an executed original.

Plaintiff to access facilities, residents of the facilities, and employees at the facilities.[3]  In addition, the Defendant is not required to provide the Plaintiff with a written explanation under 42 C.F.R. § 51.43 as to why it denied the Plaintiff with access to the incident reports and investigative findings of abuse or neglect involving non-clients of Plaintiff's at DYS managed facilities as well as reports prepared by any agency charged with investigating abuse or neglect, or injury occurring at Vacca, Chalkville and Mt. Meigs for a six-month time period because such documents that are not covered by the PADD nor the PAIMI Acts.[4]

9.     Currently there is one DYS Special Investigator, Alan Staton.  Mr. Staton is used primarily by General Counsel for the purpose of following up on serious allegations that are likely to result in litigation.  In addition the DYS Legal Division relies on the Special Investigator to determine whether allegations are sufficiently credible to warrant a report to law enforcement pursuant to the requirements of Section 26-14-6.1, Code of Alabama, 1975.  When the undersigned determines litigation is likely in connection with an incident, Mr. Staton is assigned

---

[3]42 C.F.R. § 51.42 provides in relevant part that:
  "A P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation."

[4]42 C.F.R. § 51.43 provides:
  "If a P&A system's access to facilities, programs, residents, or records *covered by the Act* or this part is delayed or denied, the P&A system shall be provided promptly with a written statement of reasons... for the denial." (Italics added.)

to report back to General Counsel in a confidential work-product report. (Doc. 24, 000148-000149).

## STANDARD OF REVIEW

10.    The Defendant does not challenge the standard for summary judgment as alleged by the Plaintiff in the Plaintiff's memorandum in support for summary judgment. However, the Defendant submits that the facts in this case establish that the Plaintiff's claim is due to be denied.

## SUMMARY OF ARGUMENT

11.    The Defendant has complied with Plaintiff's request for the records of H.M., W.B., K.W., J.C., B.P., and S.B. The Defendant's refusal to provide Plaintiff with incident reports and investigatory findings regarding alleged abuse and neglect at DYS facilities involving non-clients of the Plaintiff and the Defendant's refusal to provide the Plaintiff to broad access to all DYS incident reports and investigatory findings at Vacca, Chalkville, and Mount Meigs over a six-month time period is justified under state confidentiality laws as well as the PADD and the PAIMI Acts. In addition, federal statutes do not preempt state confidentiality laws with respect to records that the Plaintiff is not entitled to receive.  Finally, records of DYS internal investigations labeled as attorney work product are not accessible to the Plaintiff.

## ARGUMENT

### I. Plaintiff's Authority Under PADD and PAIMI Does Not Include the Right to Access All DYS Records

12.    The PADD and PAIMI Acts authorize the Plaintiff to:

    a.    Have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are

provided to such an individual if, the individual, or his legal guardian, conservator or other legal representative consents to have such access.[5]

b.      Have access to all records of individuals of any individual with a developmental disability who is a client of the system if such individual, or legal guardian, conservator, or other legal representative of such individual consents to access to the records.[6]

c.      Have access to all the records of individuals who are clients in the system who do not have a legal guardian, conservator, or other legal representative if there is a complaint received by the system about the individual with regard to the status or treatment of the individual or there is probable cause to believe that such individual has been subject to abuse or neglect.[7]

13.      The PADD and PAIMI Acts do not provide the Plaintiff with access to all of DYS records. The only records the Plaintiff's are entitled to review are the records that pertain to the Plaintiff's clients.  The Defendant has permitted the Plaintiff to access not only DYS facilities, but also children committed to  DYS  that are allegedly subject to abuse or neglect. The Defendant has also given the Plaintiff access to the records of children at DYS that the Plaintiff has given DYS a probable cause basis to believe that the children have been subject to abuse or neglect as required under the PADD and PAIMI Acts.

14.      The Defendant does not object to the Plaintiff reviewing records of children nor communicating with the children that fall under the PADD and PAIMI Acts who are currently in DYS custody.  However, the Defendant objects to the Plaintiff's demand for: (a) reports and

---

[5]42 U.S.C. § 10805 and 42 U.S.C. § 15043.

[6]42 U.S.C. § 10805 and 42 U.S.C. § 15043.

[7]42 U.S.C. § 10805 and 42 U.S.C. § 15043.

investigatory findings regarding alleged abuse and neglect at DYS facilities involving non-clients of the Plaintiff;  (b) all DYS incident reports and investigatory findings at Vacca, Chalkville, and Mount Meigs over a six-month time period; and (3) records where ADAP has failed or refused to abide by the settlement agreement under which ADAP has access.

15.    Plaintiff's argument that they are entitled to all DYS information whether or not the information may relate to non-clients and whether or not the Plaintiff has probable cause to believe that the non-client has suffered abuse or neglect is without merit.  The Plaintiff pointed out in their Motion for Summary Judgment that; the court *In Protection and Advocacy System, Inc.  v. Fruedenthal*, 412 F. Supp.2d, 1220 recommended *protocol* for access to incident reports and investigative findings of individuals who are not clients covered under the PADD and PAIMI Acts and where no probable cause was established for abuse or neglect.  The court in *Fruedentha*l did not state that the State Hospital or the State Training School was required to provide the information to the Wyoming P&A[8].  The Court in *Fruedentha*l held that:

> "The HIPAA Privacy Rule does not bar the State Hospital or State Training School from disclosing "protected health information" without the authorization of the individual to P & A so long as the disclosure is required by a P & A act and P & A meets all requirements under the act."[9]

Thus Plaintiff is not entitled to the incident reports and investigative findings of DYS involving individuals that are not the Plaintiff's clients as well as all incident reports and investigative findings for the Vacca, Chalkville, and Mount Meigs campuses.

16.    Alabama Code Title 12 -15-101 as well as Alabama Code Title 44-1-39 provides

---

[8]Id. At 1220.

[9]Id. at 1221.

7

protection for the records of juveniles. Assuming the confidentiality laws of Alabama as they apply to juveniles that are non-clients of the Plaintiff are not in conflict with the PADD and PAIMI Acts, Plaintiff's pre-emption argument does not apply to the records of juveniles that the PADD and PAIMI Act are not designed to protect.

### II. Plaintiff is Not Entitled to Defendant's Work Product Relating to Investigation Information Since Plaintiff Can Obtain the Information From Other Sources.

17.     ADAP's Motion for Summary Judgment seeks not the "records" contemplated by the PADD Act or the PAIMI Act and applicable regulations, but seeks the DYS General Counsel's confidential internal reports.  The issue is thus whether DYS General Counsel is prevented by the PADD Act or the PAIMI Act from functioning as a General Counsel normally functions, or whether DYS General Counsel will be forced to turn over any confidential internal reports it generates.[10]

18.     DYS has provided the Plaintiff with all records for children that qualify under PADD and PAIMA that are in DYS custody that the Plaintiff has given a probable cause basis for abuse or neglect involving such children.  The only information the DYS Legal Division is unwilling to provide the Plaintiff  is the Legal Division's own work product and privileged documents.  Included in the Legal Division's work product are investigative reports of DYS Special Investigator, Alan Staton.  Mr. Staton is used primarily by General Counsel for the purpose of following up on serious allegations that are likely to result in litigation.  In addition

---

[10]  Obviously, an order by this Court requiring DYS General Counsel to disclose to the Plaintiff its confidential internal reports regarding potential litigation will significantly change the role of General Counsel.  As a practical matter General Counsel will thereby be prevented from producing the usual internal reports to protect the agency in future litigation because such reports will no longer be confidential.

the DYS Legal Division relies on the Special Investigator to determine whether allegations are sufficiently credible to warrant a report to law enforcement pursuant to the requirements of Section 26-14-6.1, Code of Alabama, 1975.   The information the Plaintiff seeks can also be obtained from local law enforcement if the matter is forwarded to local law enforcement as well as DYS Incident Reports and DYS Critical Incident Reports. Incident Reports are required under DYS policy in DYS managed facilities for  all incidents involving restraint, physical force, medical emergencies, injuries, etc.. Such incidents must be immediately reported in writing by DYS staff.  (Doc. 24, 000150-000151, Policy 9.21).  The procedure for each facility requires facility administrators to review and sign all incident reports, whether or not a potentially serious matter.  Those reports are placed in student files.   In addition, under DYS Policy Critical Incident Reports are generated for every "critical incident," including sexual assaults, forced moves, serious disturbances, uses of four or five point restraint, student injuries, suicide attempts, and other serious events that threaten staff or students.  The policy requires an investigation of all staff and juvenile actions during the incident, including a review of the incident's impact on staff and juveniles, review of corrective actions taken and needed, and plans for improvement to avoid similar incidents.  (Doc. 24, 000152-000154, DYS Policy 8.12).  The procedures involve meetings of all involved individuals to review the reports and statements at which a Critical Incident Review report is generated, and reviewed by the campus administrator.  The procedure also involves a follow up meeting of all involved staff to identify problems and plans for improvement.[11]

---

[11]  The Defendant does, however, acknowledge that General Counsel occasionally receives reports of alleged abuse or neglect for which no law enforcement report, DYS Incident Report or DYS Critical Incident Report exists.  For example there are reports of incidents that

19.     The Defendant has provided the Plaintiff with access to Incident Reports and Critical Incident Reports for children that are clients of the Plaintiff.  In the alternative, the Plaintiff may also obtain local law enforcement reports for incidents involving abuse and neglect at DYS facilities, if such a report exists.  If this Court were to grant Plaintiff's request for the internal investigative reports that are completed by Mr. Staton in anticipation of litigation, Counsel for DYS will not have the ability to adequately represent its client because the mental impressions of Counsel for DYS will be subject to disclosure.

20.     Generally, a party may obtain documents and other tangible items that were prepared by or for opposing counsel in anticipation of litigation *if* the party seeking discovery can show that he/she has a substantial need for the document and is unable, without undue hardship, to obtain the documents or their substantial equivalent, by any other means. In the instant case, the Plaintiff can obtain the substantial equivalent of the investigative information by reviewing the Incident Report or the Critical Incident Report. In addition, the Plaintiff may obtain information about abuse or neglect incidents occurring at DYS facilities if local law enforcement has conducted an investigation. Thus, Plaintiff has not demonstrated a substantial need for the documents they demand from the Defendant because Plaintiff can obtain the substantial equivalent of the documents.

21.     Plaintiff has cited *Iowa Protection and Advocacy, Inc. V. Ramussen,* 206 F.R.D.

---

simply never occurred.  If the allegation is serious enough to likely result in litigation if founded, General Counsel will generate an internal confidential report in anticipation of litigation.  If the Plaintiff is successful in convincing this Court in this case to order disclosure of the Legal Division's internal reports in such cases, that order will prevent the Legal Division from investigating the allegations as currently investigated or from generating the reports as currently generated.

630, 642, and Plaintiff concedes in it's motion for summary judgment that the Protection and

Advocacy statutes as the court indicated in *Ramussen* do not explicitly overrule the work product

privilege[12]  The court in *Ramussen* further  held that "courts should scrutinize and give the most

careful consideration to any application of the work product doctrine which would have the effect

of impairing the effectiveness of such clearly mandated administrative investigations.[13]  The

Defendant suggests that if this Court were to give careful consideration of the work product

doctrine as applied to the documents that the Plaintiff seeks in this case this Court should find

that the Defendant's refusal to provide the Plaintiff with such documents does not effect the

Plaintiff's ability to conduct it's investigations. Thus, this Court should protect the Defendant's

work product as it relates to reports that the Plaintiff's can obtain a substantial equivalent.

## CONCLUSION

22.    The Defendant requests that this Court deny Plaintiff's Motion for Summary

Judgment. In addition, the Defendant requests that this Court deny Plaintiff's request for all

incident reports and investigative findings prepared by DYS and any outside agency charged with

investigating abuse and neglect regarding non-clients of the Plaintiff since November 2006

because PADD and PAIMI do not provide the Plaintiff with access to such reports and such

reports are protected under the work product doctrine. Finally, the Defendant has provided the

Plaintiff with access to all incident reports and investigative findings prepared by DYS with the

exception or work product regarding all of the Plaintiff's clients  including H.M., W.B., K.W.,

J.C., B.P., and S.B. Thus, the Defendant requests that this Court deny Plaintiff's request for the

---

[12]*Id*. at 642.

[13]*Id*. at 642.

records of all of its clients including H.M., W.B., K.W., J.C., B.P., and S.B. because the

Defendant has already provided the Plaintiff with this information or a substantial equivalent.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL
/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar number: 3985-R67T
General Counsel
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the18th day of January, 2008, I electronically filed the foregoing **MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James A. Tucker
Nancy E. Anderson
Alabama Disabilities
Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
General Counsel
Attorney for the Defendant

**IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **ALABAMA DISABILITIES** | ) | |
| **ADVOCACY PROGRAM** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-434-MHT |
| **J. WALTER WOOD, JR.**, in | ) | |
| his official capacity as | ) | |
| Executive Director of the | ) | |
| Alabama Department of | ) | |
| Youth Services, | ) | |
| | ) | |
| Defendant. | ) | |

AFFIDAVIT

BEFORE ME, the undersigned authority, a Notary Public in and for Montgomery County

Alabama, personally appeared T. Dudley Perry, Jr., who being known to me and being by me

first duly sworn, deposes and says as follows:

I am Dudley Perry, Jr., and I am over the age of twenty one (21). This affidavit is given

by me based upon my personal knowledge. I am General Counsel for the Alabama Department

of Youth Services (DYS). I have been employed with DYS for approximately 6 years.

DYS has provided ADAP with access to the following DYS students and/or their files:

A.G.,

T.S.,

B.M.,

E.R.P.,

1

J.P.,

L.F.,

B.H.,

K.J.,

A.G.,

S.W.,

C.B.,

S.W.,

H.M.,

A.G.,

K.J.,

B.Y.,

D.M.,

D.R.,

K.W.,

K.S.,

L.P.,

S.B.,

B.P.,

J.C., and

W.B.,

In addition, DYS has allowed access on numerous occasions to the Chalkville, Vacca and Mt.

Meigs campuses, and has not denied access. DYS has provided voluminous and copious documents including copying at DYS expense entire student files, DYS policies and procedures and other documentation requested by ADAP staff–even though in my opinion DYS was under no obligation to do so. DYS administrative officials have met with ADAP staff to discuss many issues and have never refused to meet with ADAP staff. DYS has facilitated private conferences between ADAP staff and numerous students, and has set up private conference calls between ADAP staff, DYS staff and DYS students. The undersigned believes that ADAP's statutory access authority is less broad than the access DYS has provided; for example DYS has on many occasions provided information in the context of "monitoring" that ADAP is not entitled to outside the context of a probable cause investigation.

Moreover, the undersigned has met on several occasions with ADAP representatives including James Tucker, for the purpose of establishing a protocol for facilitating ADAP's access. Those discussions are ongoing and the undersigned is hopeful they will be fruitful.

The relief sought in this case is substantially identical to relief sought in the first lawsuit filed against DYS in October 2005 (Case 2:050cv01030). That case was settled in December. ADAP has not consistently complied with the terms of the settlement agreement on which ADAP's access to DYS facilities and files is based. In that settlement agreement (Doc. No. 25, 000039-000041), DYS agreed to provide ADAP with access and ADAP agreed to share information with the DYS Legal Division. The agreement included:

> ADAP will have access to DYS operated facilities after providing notice to [the DYS Legal Division]. For purposes of investigations, [the DYS Legal Division] will receive notice at least 72 hours in advance. **Notice will include the names of the subject student, the grounds upon which ADAP believes the student is covered by the Acts, and the facts upon**

**which probable cause is based**.  [the DYS Legal Division] will also be given 7 days advance notice for ADAP's access for monitoring.  Such notice will include the names of the individuals who will have access, the facility involved, and the date and time you would like to be present. Access will be during regular business hours. (Emphasis added).

However, at the time this lawsuit was filed ADAP had failed notify the DYS legal division of the grounds upon which ADAP believed a single student was covered by the Acts and the facts upon which probable cause for even a single investigation was based.  Since this lawsuit was filed ADAP has complied with the agreement with regard to a few students.  The undersigned believes DYS has provided access to the records of every student for whom ADAP has complied with the terms of the settlement agreement.  The record clearly reveals that ADAP has <u>not</u> provided the required information in connection with the students ADAP referenced in its Motion for Summary Judgment.[1]

In an email on March 6, 2006, the undersigned discussed the problems implementing the information sharing relationship contemplated by the settlement agreement.  The undersigned noted that DYS shares information and ADAP does not.  In response, on March 6, Nancy Anderson, merely listed several questions she had about DYS.  Subsequently on June 12, 2006, Christy Johnson wrote the undersigned demanding copies of KW's records, citing the provisions of the PAIMI without reference to the terms of the settlement agreement between the parties.  She also wrote complaining that she had recently attempted to access SK's and KW's records.  She failed or refused to provide the information pursuant to the settlement agreement regarding either student.  The request was received by the DYS Legal Division after 7:30 p.m. on June 13.

---

[1] However DYS has not provided the internal reports generated by DYS General Counsel. The undersigned submits that those reports are the real substance of the Plaintiff's motion for summary judgment and are perhaps the only real area of disagreement between the parties.

4

Consistent with the practice of refusing to follow the terms of its agreement with DYS, no facts were given and no basis for coverage was ever given.  Two days later, on June 15, the undersigned offered to mail the documents the following morning.  Nevertheless, on June 22, 2006, Nancy Anderson wrote the undersigned complaining about ADAP's "ability to fully exercise its access authority," specifically mentioning SW and KW.  ADAP failed or refused to provide the required information regarding SW and KW, but DYS nevertheless forwarded to ADAP copies of both files on June 16, 2006 in an effort to get along.

On March 6, 2007, Ms. Mixson and Ms. Johnson planned a "monitoring visit" to Chalkville.  Access was provided.

On March 21, 2007, Ms. Mixson notified the undersigned by email that they intended to conduct a "monitoring visit" at Chalkville on March 27.  The email also stated "in addition to monitoring activities, Christy Johnson and I are requesting a *confidential visit* with residents J.C., S.B., and B.P.  Please provide ADAP with copies of any and all documents relating to these residents kept by DYS prior to our visit."  (Italics added.)

On March 21, the undersigned responded to Ms. Mixson's request for a "monitoring visit" and "confidential visits with [JC, SB and BP]" by email.  The undersigned stated "if you are conducting an investigation, please let me know the grounds on which ADAP believes the students are within ADAP's potential clientele, and the facts on which probable cause for an investigation is based."  On that day, the undersigned also authorized ADAP's access to the facility for "monitoring" purposes and communicated that authorization to the Chalkville campus, and gave instructions **not** to provide access to confidential files until ADAP complies with their agreement.

On march 22, 2007, Ms. Mixson emailed the following response:

> S.B.:
> ADAP has cause to believe Chalkville psychiatrist prescribed S.
> with psychotropic medication while at Chalkville.  ADAP has
> probable cause to believe S. has been improperly restrained and
> searched at Chalkville.
>
> B.P.:
> ADAP has cause to believe the B. Has bi-polar disorder.  ADAP
> has probable cause to believe that B. received improper mental
> health treatment while at Chalkville.
>
> J.C.:
> ADAP has cause to believe that J.C. has a physical disability.
> ADAP has probable cause to believe that J. received improper
> medical treatment.

The undersigned responded to Ms. Mixson's email stating: "Thank you for this information.  It is helpful.  However, it does not include any facts on which to base probable cause, and if I recall correctly the substance of our agreement is for me to know the factual basis of any abuse or neglect investigation." (Emphasis added.)  ADAP staff never responded.

In an effort to work through this problem with ADAP, the undersigned instructed the DYS Special Investigator to travel to Chalkville and attempt to determine the factual information ADAP was unwilling to provide.  The undersigned also contacted Nancy Anderson at ADAP and requested that she instruct Ms. Mixson and Ms. Johnson to postpone their visit to allow the Special Investigator an opportunity to discover the information ADAP was obligated but refused to provide.  Ms. Anderson agreed to wait and Mr. Staton traveled to Birmingham to attempt to uncover the allegations which ADAP refused to provide pursuant as required by the settlement agreement.  In the Complaint in this case ADAP merely alleged that postponement was an "accommodation" to DYS.

It was in the context of this "investigation" for which ADAP refused to provide DYS factual information as required by the settlement agreement, that on March 28, 2007, ADAP attempted to generally contact all Chalkville residents–without regard to whether they were clients, or even potential clients, of ADAP.  Nevertheless, ADAP was allowed to conduct their monitoring activities, distributing their documentation and generally announcing their availability to provide advocacy services for disabled students.

On April 10, ADAP was allowed to conduct general monitoring activity at Vacca.

ADAP has been allowed access to the Mt. Meigs Campus and access to any individuals on the Mt. Meigs campus who are covered by the Acts.  Mt. Meigs is a secure campus at which the most ungovernable youths are staffed.  Security of operations is of utmost importance.

On March 5, 2007, Ms. Johnson emailed a letter requesting an "interview" with DR to "determine if [D.] qualifies for our services..."  No statement of the basis on which DR is covered by the Acts nor any factual basis for probable cause was stated.  Neither was such information provided subsequently. Moreover, the request included **no request to view DR's file.**  Indeed such request would have been inconsistent with their requirement to make a determination whether an individual is covered by the Acts before initiating an investigation.

Nevertheless, in a spirit of cooperation and an effort to work with ADAP, on March 16, 2007, the DYS Legal Division notified campus personnel that ADAP was authorized to speak with DR and review his files.

Ms. Johnson met with DR on March 19, 2007.  The undersigned does not have information that ADAP asked Vacca personnel to allow them to see DR's file.

On April 4, DR was hospitalized.  On April 25, 2007, DYS Legal Division filed a motion

7

on behalf of DR for a mental examination pursuant to § 12-15-70, Code of Alabama 1975, as amended.  That motion was denied by DR's committing judge on May 3, 2007.  DR's committing judge thus takes that position that he is most appropriately placed as a juvenile delinquent and not as a mental health patient.

On May 21, 2007, Nancy Anderson emailed the undersigned and complained that DYS had not sent ADAP DR's record which ADAP had never requested from the DYS Legal Division. On June 6, 2007, ADAP filed this lawsuit.

On June 21, 2007, Ms. Anderson again complained to the undersigned that "in our complaint, we noted that we had not been provided copies of records for our client [DR]... Can you forward the youth's records (court records, treatment and progress notes, evaluations, educational records etc.) to us at this time.  The undersigned responded on June 22 as follows: "As usual, I will accommodate your request. Phyllis is gathering them. However, it appears that neither you, nor anyone from ADAP, has asked for them previously."

As stated above, the request from ADAP regarding DR was to visit him to determine whether he is within the scope of ADAP's representation.  No factual basis for representation or probable cause was given.

DYS has not given ADAP the Legal Division's work product and privileged internal. DYS attempts to conduct its business with transparency and all incident reports and other reports and findings are available.

Dated this 18th day of January, 2008.

Respectfully submitted,

8

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
General Counsel
Attorney for the Defendant

SWORN TO AND SUBSCRIBED BEFORE ME, this _____ day of January, 2008.


_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: _____

9