## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ALABAMA DISABILITIES ADVOCACY PROGRAM | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2:07-CV-434-MHT |
| J. WALTER WOOD, JR. in his official Capacity as Executive Director of the Alabama Department of Youth Services, | ) ) ) ) | |
| Defendant. | ) ) | |

### PLAINTIFF'S WITNESS AND EXHIBIT LIST

Pursuant to this Court's Uniform Scheduling Order (Doc. No. 37 ) and Fed.R.Civ.P.

26(a)(3), Plaintiff hereby submits its Witness and Exhibit List.

**WITNESSES:**

The Plaintiff expects to offer the following witnesses at trial:

Andrea J. Mixson
Alabama Disabilities Advocacy Program
P.O. Box 870395
Tuscaloosa, Alabama 35487
Phone: (205) 348-4928

Christy Johnson
Alabama Disabilities Advocacy Program
P.O. Box 870395
Tuscaloosa, Alabama 35487
Phone: (205) 348-4928

**EXHIBITS:**

The Plaintiff expects to offer the following documents at trial:

1. October 14, 2007 E-mail correspondence dated from A. Mixson to D. Perry 000159.

2. October 15, 2007 Read receipt- e-mail confirmation from D. Perry to A. Mixson 000160.

3. October 15, 2007 Read receipt, e-mail confirmation from P. Carney to A. Mixson 000161.

1

4. October 18, 2007 and October 14, 2007 e-mail correspondences from A. Mixson to D. Perry 000162-000163.

5. October 18, 2007 Read receipt, email confirmation from D. Perry to A. Mixson 000164.

6. October 19, 2007 Read receipt, email confirmation from P. Carney to A. Mixson 000165.

7. March 16, 2007 internal DYS memorandum from P. Carney to P. Henderson 000166.

8. July 19, 2007 letter J. Tucker to D. Perry 000167-000179.

9. June 25, 2007 email correspondence from C. Johnson to D. Perry 000180.

10. May 9, 2007 email correspondence from C. Johnson to D. Perry 000181-000182.

11. May 9, 2007 letter from C. Johnson to D. Perry 000183.

12. September 12, 2006 letter from N. Anderson to D. Perry 000184-000185.

13. January 16, 2007 letter from N. Anderson to D. Perry 000186-000187.

14. February 28, 2007 and February 20, 2007 email correspondences from N. Anderson to D. Perry 000188-000189.

15. Affidavit of Andrea Mixson 000190-000196.

16. Affidavit of Christy Johnson 000197-000204.

17. March 21, 2007 email correspondence between A. Mixson and D. Perry 000205-000206.

18. March 22, 2007 email correspondence from A. Mixson to D. Perry 000207.

19. March 26, 2007, March 23, 2007, and March 22, 2007 email correspondences from A. Mixson to D. Perry 000208-000209.

20. March 28, 2007 letter from N. Anderson to D. Perry and Mrs. Tate 000210-000213.

21. March 30, 2007 email from N. Anderson to D. Perry and March 27, 2007 email from C. Johnson to D. Perry 000214.

22. March 05, 2007 email from A. Mixson to D. Perry 000215.

23. April 6, 2007 email from A. Mixson to D. Perry 000216.

24. March 5, 2007 email from C. Johnson to D. Perry 000217.

25. April 20, 2007 letter from C. Johnson to D. Perry 000218-000219.

26. February 11, 2008 email from C. Johnson to T. Davis; January 22, 2008 email from N. Anderson to T. Davis; January 17, 2008 email from N. Anderson to T. Davis 000220-000221.

27. October 9, 2006 and October 4, 2006 email correspondences from C. Johnson to D. Perry 000222.

28. November 29, 2006 letter from C. Johnson to D. Perry 000223-000224.

29. October 17, 2006 letter from C. Johnson to P. McClure 000225.

30. November 1, 2006 letter from C. Johnson to D. Perry 000226-000227.

31. January 11, 2007 letter from C. Johnson to D. Perry 000228.

32. May 9, 2007 facsimile confirmation page from C. Johnson to D. Perry 000229.

33. June 26, 2007 letter from D. Perry to J. Tucker 000231.

34. November 1, 2006 letter from C. Johnson to D. Perry 000232-000233.

35. October 17, 2006 letter from C. Johnson to D. Perry 000234.

36. November 16, 2007 handwritten statement from S.L. 000235.

37. November 16, 2007 handwritten statement from C.L. 000236.

38. November 16, 2007 handwritten statement from B.Y. 000237.

39. August 27, 2007 letter from J. Tucker to T. Davis 000238-000239.

40. September 21, 2007 letter from P. Carney to J. Tucker 000240.

41. September 24, 2007 letter from J. Tucker to D. Perry 000241-000242.

42. September 24, 2007 letter from J. Tucker to D. Perry 000243-000244.

43. September 24, 2007 email from J. Tucker to D. Perry; September 24, 2007 email from A. Mixson to D. Perry; September 04, 2007 email from A. Mixson to D. Perry 000245-000247.

44. September 24, 2007 letter from J. Tucker to D. Perry 000248-000249.

45.  December 11, 2007 letter from J. Tucker to D. Perry 000250-000251.

46. September 24, 2007 letter from J. Tucker to D. Perry 000252-000253.

47. December 17, 2007 letter from P. Carney to J. Tucker 000254.

48. September 12, 2006 letter from C. Johnson to M. Dickerson 000255-000256.

49. November 2, 2006 letter from C. Johnson to M. Alexander 000257.

50. November 7, 2006 letter from C. Johnson to D. Perry 000258.


Respectfully Submitted this 17th day of March 2008,

/s/ James A. Tucker
James A. Tucker
Alabama Disabilities Advocacy Program
University of Alabama
Box 870395
Tuscaloosa, AL  35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2008, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notice of such filing to the following attorneys of

record for the defendants:

Mr. Dudley Perry Jr.
General Counsel
Alabama Department of Youth Services
PO Box 66
Mount Meigs, AL 36057-0066


Ms. Sancha E. Teele, Esq.
Alabama Department of Youth Services
PO Box 66
Mount Meigs, AL 36057-0066


/s/ James A. Tucker
James A. Tucker

**Index to Attachments**

Attachment One – Bates-stamped 000159-000166.

Attachment Two – Bates-stamped 000167-000179.

Attachment Three – Bates-stamped 000180-000189.

Attachment Four – Bates-stamped 000190-000209.

Attachment Five – Bates-stamped 000210-000234.

Attachment Six – Bates-stamped 000235-000258.

## Mixson, Andrea

| | |
|---|---|
| **From:** | Mixson, Andrea |
| **Sent:** | Sunday, October 14, 2007 9:40 PM |
| **To:** | dudley.perry@dys.alabama.gov |
| **Cc:** | Carney, Phyllis; Anderson, Nancy; Tucker, James |
| **Subject:** | Vacca and Chalkville Visits |



Dudley:

James Tucker wanted me to inform you that ADAP will be conducting monitoring visits at Vacca and Chalkville on Tuesday, October 23, 2007 starting at 2:30 p.m. We will have three people from ADAP at each site on Tuesday.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

Alabama Disabilities Advocacy Program (ADAP)

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

**00009**

**Mixson, Andrea**

| | |
|---|---|
| From: | Perry, Dudley [Dudley.Perry@dys.alabama.gov] |
| To: | Mixson, Andrea |
| Sent: | Monday, October 15, 2007 7:59 AM |
| Subject: | Read: Vacca and Chalkville Visits |

Your message

  To:        Dudley.Perry@dys.alabama.gov
  Subject:

was read on 10/15/2007 7:59 AM.

000010

1

**Mixson, Andrea**

| | |
|---|---|
| From: | Carney, Phyllis [Phyllis.Carney@dys.alabama.gov] |
| Sent: | Monday, October 15, 2007 7:37 AM |
| Subject: | Read: Vacca and Chalkville Visits |

Your message

To: Phyllis.Carney@dys.alabama.gov
Subject:

was read on 10/15/2007 7:37 AM.

000011

1

**Mixson, Andrea**

| | |
|---|---|
| **From:** | Mixson, Andrea |
| **Sent:** | Thursday, October 18, 2007 6:00 PM |
| **To:** | dudley.perry@dys.alabama.gov |
| **Cc:** | Carney, Phyllis; Anderson, Nancy; Tucker, James |
| **Subject:** | FW: Vacca and Chalkville Visits |

Dudley:

Just writing to confirm ADAP's Chalkville and Vacca monitoring visits scheduled for Tuesday, October 23, 2007 at 2:30p.m., Please see my October 14, 2007 email to you below.

Thank you for your assistance.

Sincerely,
Andrea

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed. Any review or
other use of this information by persons or entities other than the intended
recipient or any retransmission without the consent of the sender is prohibited.
The views or opinions expressed by the sender of this email are not necessarily
those of the institution.

---

**From:** Mixson, Andrea
**Sent:** Sun 10/14/2007 9:39 PM
**To:** dudley.perry@dys.alabama.gov
**Cc:** Carney, Phyllis; Anderson, Nancy; Tucker, James
**Subject:** Vacca and Chalkville Visits

Dudley:

James Tucker wanted me to inform you that ADAP will be conducting monitoring visits at Vacca and Chalkville on Tuesday, October 23, 2007 starting at 2:30 p.m. We will have three people from ADAP at each site on Tuesday.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness,

**000012**

10/31/2007

individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

Alabama Disabilities Advocacy Program (ADAP)

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

000013
10/31/2007

000163

**Mixson, Andrea**

| | |
|---|---|
| From: | Perry, Dudley [Dudley.Perry@dys.alabama.gov] |
| To: | Mixson, Andrea |
| Sent: | Thursday, October 18, 2007 6:14 PM |
| Subject: | Read: FW: Vacca and Chalkville Visits |

Your message

| | |
|---|---|
| To: | Dudley.Perry@dys.alabama.gov |
| Subject: | |

was read on 10/18/2007 6:14 PM.

**000014**

1

**Mixson, Andrea**

| | |
|---|---|
| From: | Carney, Phyllis [Phyllis.Carney@dys.alabama.gov] |
| Sent: | Friday, October 19, 2007 12:18 PM |
| Subject: | Read: Vacca and Chalkville Visits |

Your message

   To:      Phyllis.Carney@dys.alabama.gov
   Subject:

was read on 10/19/2007 12:18 PM.



STATE OF ALABAMA

DEPARTMENT [JYS] SERVICES

BOB RILEY
GOVERNOR

POST OFFICE BOX 66
MT. MEIGS, ALABAMA 36057

J. WALTER WOOD, JR.
Executive Director

March 16, 2007

TO:     Patricia Henderson
        Vacca Campus

FROM:   Phyllis Carney, Legal Assistant
        to T. Dudley Perry, Jr.
        Deputy Attorney General

RE:     Visit for D██ R███ from Ms. Christy Johnson of ADAP

    D██ sent a letter to ADAP requesting a visit. He reported allegations of verbal abuse and mistreatment by staff. Ms. Johnson emailed Mr. Perry on March 5th and stated that she had contacted Ms. Delbridge to schedule a potential client visit. Special Investigator Staton has spoken to Ms. Delbridge concerning the matter.

    ADAP has authorization to speak with D██ and review his files. If she receives any copies of the files, please make an additional copy and forward it to the Legal Office. Ms. Johnson is not authorized to visit or talk with any other students during this visit. Please provide a location for Ms. Johnson and D██ to speak.

pnc

cc: T. Dudley Perry, Jr.

EXHIBIT
B

2 o1

000042



July 19, 2007

**VIA FACSIMILE COPY**
*334-215-3872*
**and regular U. S. Mail**

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, AL 36057

RE: D████ R█████

Dear Mr. Perry:

In our previous correspondence and conversations with you regarding our client, D████ R█████, we expressed our grave concern that D████ needs immediate mental health treatment. As you are aware, D████ has been diagnosed with Bipolar Disorder, R/O Posttraumatic Stress Disorder, and Attention Deficit Disorder. As recently as April 2007, Dr. Samuel Rubin, psychiatrist at Children's Hospital, diagnosed D████ with Depression NOS with suicidal ideations and developing psychosis. Based on our interviews with D████, documents from D████'s DYS record, and recommendations from mental health professionals over several years, we believe there is compelling evidence that D████ needs immediate mental health treatment while in DYS custody.

D████'s DYS records indicate he experienced a series of traumatic events early in his life for which he did not receive appropriate mental health treatment. Specifically, Dr. Rubin reports that "D████ suffered severe emotional trauma at an early age for which he did not receive adequate treatment or intervention. He has no knowledge of his father. His mother had a severe alcohol problem and disappeared from his life for several years. At age 9 his adoptive parents died and he came into the custody of the state." *See* Exhibit A, April 17, 2007, letter to P. Henderson from Dr. Rubin. D████ has reported to DYS staff that "while in a group home in 2005 he jumped off his bed head first attempting to break his neck... and that while in a different group home in 2003 that he attempted to hang himself." *See* Exhibit B, July 25, 2006, Memorandum to J. Delbridge from P. Henderson.

Prior to D████'s DYS commitment, he was in the custody of Alabama DHR, during which time he received acute psychiatric treatment at UAB Hospital in December 2005 and January-February 2006, and at

---

ALABAMA DISABILITIES

**ADVOCACY PROGRAM**

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility



THE UNIVERSITY OF
ALABAMA
· FD 1831 ·

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

000043

Mt. View Psychiatric Hospital in August-September 2005 and February 2006. D███ has been hospitalized in the past "for Bipolar Disorder, suicidal behavior, poor anger management skill and low tolerance of frustration." *See* Exhibit C, June 19, 2006, Three Springs Madison Request for Restaff. In December 2005 a Gateway psychiatrist, Dr. Iona Shirley, stated that "patient reports suicidal ideas with intent. He wants to hang himself or cut himself until he does." At that time, Dr. Shirley recommended D███'s direct admission to the UAB Hospital psychiatric unit. *See* Exhibit D, December 8, 2005, Gateway General Note.

In June 2006, when D███ was in his first DYS placement, Three Springs Madison, he was admitted to the psychiatric unit of Decatur General Hospital due to auditory and visual hallucinations and self-mutilation. Child and adolescent psychiatrist, Dr. Albert Sprinkle, wrote to DYS staff, Angela Taylor, to recommend that D███ "be placed in a secured residential psychiatric facility." Dr. Sprinkle indicated that "this placement should include regular evaluations by a psychiatrist, medication management, behavioral modification, and daily therapy to address mood instability and psychosis." *See* Exhibit E, June 19, 2006, Letter from Dr. Sprinkle to A. Taylor.

In a July 25, 2006, memorandum to Vacca administrator, Joyce Delbridge, D███'s DYS case manager reported "that D███ self-inflicted a horizontal laceration on his left arm which required seven sutures on approximately 7-20-06." *See* Exhibit B. D███ reported to Vacca staff "that he experienced a command-type auditory hallucination on 7-20-06 ordering him to cut his wrist or kill himself." *Id.* According to Ms. Henderson's memorandum, "D███ stated he was unable to resist the command-type auditory hallucination. There was evidence of five additional horizontal lacerations on D███'s left arm which required sutures." *Id.*

On April 17, 2007, Dr. Rubin indicated that D███ needs significant mental health treatment. *See* Exhibit A. Dr. Rubin treated D███ for several weeks in April 2007 following D███'s overdose on prescription medications at the DYS Vacca facility. Dr. Rubin states:
- "D███ is at high risk to continue self injurious behaviors and attempts to commit suicide until he succeeds if he returns to a punitive environment."
- "D███'s current psychological testing indicates he may be developing schizophrenia."
- "There is a high risk for [D███'s] killing himself and a grim prognosis."

*Id.*

Based on ADAP's investigation regarding D███'s mental health status and related care, we understand that D███ is not receiving individual mental health therapy while at Mt. Meigs. Since our last correspondence to you on July 12, 2007, we have learned that Mt. Meigs psychiatrist, Dr. Majors, prescribed D███ with Wellbutrin in May 2007, and that the dosage has been increased recently.

Based on our investigation and our contact with our client, we recommend that:
1. DYS mental health professionals communicate with Children's Hospital psychiatrist, Dr. Rubin, regarding recommendations for D███'s mental health treatment,
2. D███ receive regular evaluations by a psychiatrist,
3. D███ receive medication management,

**000044**

2

**000168**

4.  D██████ receive regular (possibly as often as daily, but not less than weekly) therapy to address mood instability and psychosis.

To facilitate development of an appropriate individualized plan of care for D█████, we request that his case manager conduct an individualized team meeting to assess and plan for his care, and that ADAP be invited to the team meeting. We believe that one appropriate subject for discussion at such a meeting is the question of D█████'s most appropriate placement within the DYS system, including DYS facilities and its contract facilities.

We remain gravely concerned for D█████. D█████ has attempted suicide on several occasions and he remains at serious risk for suicide. To this point, it does not appear that DYS is treating D█████'s mental health status with the seriousness that it demands. **Simply put, DYS has failed to meet D█████'s medical needs and that failure, we believe, is not in DYS's interest either.**

We appreciate your forwarding D█████'s record to us on June 25, 2007.  Our review of those documents indicates that most were created prior to D█████'s transfer to Mt. Meigs on or about May 9, 2007. Please forward all of D█████'s DYS record from May 9, 2007, to the present, including, but not limited to, psychiatric and psychological evaluations, treatment plans, and incident reports.

Thank you for your continued attention to this matter. If you have any questions, please call.

Sincerely,

James A. Tucker
Attorney

Cc: Mr. Tim Davis
      Andrea Mixson, Esq.

Encls.

000045

3

000169

Apr. 17. 2007  2:25PM                                    Nor 0881   P. 2



CHILDREN'S
HEALTH SYSTEM°



April 17, 2007

Patricia Henderson
8950 Roebuck Blvd
Birmingham, AL 35206
FAX: 836-9993

Children are the
center of our lives.

RE: D█ R█████        DOB: April 1, 1991

Dear Ms. Henderson:

C h i l d r e n ' s

B e h a v i o r a l

H e a l t h

D█ was admitted to Children's Behavioral Health inpatient unit
on April 1, 2007 due to suicide attempt by overdose of his
medication. He has reported there had been one previous attempt of
suicide by cutting his wrists while he was at VACCA campus, that
until now he had not reported to anyone. There have been 7
previous suicide attempts. He has been attacked numerous times at
the VACCA campus and his nose was broken the last time.

1600 7th Avenue So.

Suite Number 500

Birmingham, AL 35233

Phone: (205) 939-9193

Fax: (205) 939-9949

He is currently taking Seroquel 25 mg BID and Lexapro 30 mg
every morning. His current diagnosis includes Depression NOS with
suicidal ideations and possible psychosis. These medications and
diagnoses may change prior to discharge.

D█ is at high risk to continue self injurious behaviors and
attempts to commit suicide until he succeeds if he returns to a
punitive environment. He is convinced he will be killed at VACCA
and intends to kill himself before that happens.

D█ suffered severe emotional trauma at an early age in his life
for which he did not receive adequate treatment or intervention. He
has no knowledge of his father. His mother had a severe alcohol
problem and disappeared from his life for several years. At age 9 his
adoptive parents died and he came into the custody of the state.
Furthermore, D█'s current psychological testing indicates he may
be developing schizophrenia. D█'s case should be presented to
the court system for appeal due to D█'s increasing mental illness.
Testing also shows that so far he continues to have good intelligence
and functions in school, and therefore with enough intensive
treatment could become a productive individual.

003227

000046

I recommend that D▮▮▮▮ be placed in a residential facility that will focus on his mental health needs. Continued placement at VACCA will be detrimental to his development into a functioning adult. There is a high risk for him killing himself and a grim prognosis. With treatment his prognosis is guarded to fair.

Thank you for your assistance in helping D▮▮▮▮ achieve his highest potential. Please contact me if I can be of any further assistance.

Sincerely,

Samuel Rubin, MD
Attending Psychiatrist

003228

000047

*State of Alabama*
*Department of Youth Services*
*Vacca Campus*
*8950 Roebuck Boulevard*
*Birmingham, Alabama 35206*
*Telephone (205) 833-2361*



TO:     Ms. Joycelyn Delbridge, Campus Administrator
        Dr. John Williamson, Psychiatrist
        Ms. Yolanda Byrdsong, Treatment Coordinator
        Mr. Carl Berry, Youth Services Specialist
        Ms. Shirley Horn, Youth Services Specialist
        Ms. Lawanda Davidson, ASA II
        Mrs. Tameka Harris, ASA II
        Hill Hall Unit Manager
        Weakley Hall Unit Manager
        Underwood Hall Unit Manager
        Smith Hall Unit Manager
        Bailey Hall Unit Manager
        Mr. Arthur Tigner, McNeel School
        Ms. Carolyn Turner, McNeel School
        Mr. Roderick Holloway, Physical Education Teacher
        Food Service
        Security
        Medical
        Social Records

THROUGH:  Dr. David Sandefer, Clinical Psychologist

FROM:   Mrs. Patricia Henderson, Case Manager

DATE:   7-25-06

RE:     D████ R████
        Constant Self-Injury Watch

D████ R████ is placed on Constant Self-Injury Watch. D████ arrived at the Vacca Campus on 7-25-06 from the Intensive Treatment Unit at Mt. Meigs. D████ self-inflicted a horizontal laceration on his left arm which required seven sutures on approximately 7-20-06. D████ reported that he experienced a command-type auditory hallucination on 7-20-06 ordering him to cut his wrist or kill himself. D████ stated he was unable to resist the command-type auditory hallucination. There was evidence of five additional horizontal lacerations on D████'s left arm which required sutures. D████ stated he last experienced a command-type auditory hallucination ordering him to cut his

000048                                                    003260


**000172**

wrist or kill himself yesterday (7-24-06). There is evidence of one past vertical laceration on his right arm which required sutures. D▓▓▓ punctured his leg with a nail approximately eight weeks ago. D▓▓▓ stated that while in a group home in 2005 he jumped off his bed head first attempting to break his neck. D▓▓▓ stated that while in a different group home in 2003 that he attempted to hang himself. D▓▓▓ has a four year commitment to DYS because he attempted to stab a police officer (stabbing instrument did not pierce police officer's body armor).

The following precautions are effective immediately:

a) This memorandum will be hand-delivered by Mrs. Patricia Henderson to the student's Unit Manager and Principal (if school is in session) so the information will not be delayed; other memorandums may be placed in staff mailboxes.
b) Student will be under continuous and uninterrupted observation and his activities documented. This constant observation will be documented per 15 minute notations on the monitoring form. All completed monitoring forms are to be returned to Mrs. Patricia Henderson.
c) Student will not be permitted to attend school.
d) Student will not be permitted to participate in recreational activities consistent to his Privilege Level.
e) Student will be searched thoroughly for any objects which may cause self harm upon initiation of precautions and searched randomly thereafter.
f) Student's dormitory room will be kept free of potentially dangerous objects.
g) Sharp items, such as nail clippers, etc., will not be used by this student.
h) Student is not allowed shoestrings or belts.
i) The student's meals will be served on paper plates with plastic utensils. Utensils must be accounted for at the end of meals.
j) Student will sleep under direct observation of staff. Student is not permitted to cover his head and neck area at anytime during bedtime.
k) The student is not allowed to go into a room alone without being observed by staff.
l) Mrs. Patricia Henderson will require student to sign a "No Self-Injury Behavior Contract."
m) Mrs. Patricia Henderson is required to provide 5 (daily during workdays) documented counseling sessions per week for a student on Constant Self-Injury Watch. The documentation for each session should include:
    1) the results of a brief mental status examination,
    2) evaluation of current self-injurious ideation/gesture/plan and self-injurious potentiality,
    3) counseling to promote a decrease of self-injurious ideation/gestures.
n) During the mid part of each week, Mrs. Patricia Henderson is responsible to present the student, completed monitoring forms, and documented counseling sessions to either the Psychologist or Psychiatrist for a determination to continue, decrease/increase level, or discontinue self-injury watch. Note, the Psychologist or Psychiatrist can change the level of self-injury watch whenever clinically indicated. If the Psychiatrist or Psychologist changes the level, the Case Manager will prepare and distribute a memorandum informing the staff of the student's updated list of

000049                     003261

**000173**

precautions.

o) If the Psychiatrist is not on-site. Mrs. Patricia Henderson will submit the Psychiatrist's copy of the above memorandum to the Nurse.   The Nurse will inform the Psychiatrist that the student was placed on Constant Self-Injury Watch so the Psychiatrist can make the determination whether there is a present need for a psychiatric assessment for medication.

p) Only the Psychologist or Psychiatrist can discontinue or decrease the level of a self-injurious watch.   The Case Manager is responsible for presenting the completed monitoring forms and daily counseling session notes to the Psychologist and/or Psychiatrist to assist in their clinical decision to continue, decrease/increase level, or discontinue watch.

q) If a self-injury results in any change in level of consciousness, EMS (Emergency Medical Services) should be called immediately and student should be transported for evaluation in a hospital emergency room.

r) Student will be assigned to a modified Safe Room in either Weakley or Underwood Hall.

s) At bedtime the student will be issued only a safety smock and safety blanket. Unit Managers were provided a copy of the Instructions for the safety smock and these instructions must be explicitly followed. No other materials of any type are allowed in student's room at night unless authorized by the Psychologist or Psychiatrist.

t) At bedtime the student and his room will be searched thoroughly for any objects which may cause self harm. Student will sleep inside the modified Safe Room with the door locked.

003262

000050

3

000174

Department of Youth Services

Request for Restaff



| | |
|---|---|
| Facility: | Three Springs School of Madison |
| Date of Arrival: | 05/09/06 |

In the matter of D█████ R█████

Date of Request: 06/19/06

DOB: 04/01/91     County: Calhoun     Risk Score: 5

**Reason for Restaff Request: Elopement from facility on May 30, 2006; Threatening behavior; Refusal of treatment; Refusal of Medication; Self-harm; Command Hallucinations; Acute care hospitalization.**

D█████ R█████ is a 15 year old male committed to DYS for Assault 2nd degree. His commitment is until he reaches age majority of 19 due to his history of assault, runaway, and unsuccessful DHR placements. He is guilty of using a knife to stab a police officer. He has a long standing history with DHR, acute care treatment both at UAB and Mt. View for Bipolar Disorder, suicidal behavior, poor anger management skill and low tolerance for frustration. He has scars on his wrists, arms, and legs from multiple incidents of self-injurious behavior. Since he has been in DYS custody, he has failed placement by running away, verbalizations of threats to assault, verbal attacks against others, and self-injurious behavior. R█████ was only at the Madison program approximately 3 weeks before he eloped and began to show signs and symptoms of psychosis. After returning to the facility, he refused his medication, had been self-injurious by placing a nail in his leg, and he also reported command hallucinations telling him to harm himself and others. He was evaluated by the program's psychiatrist and acute care hospitalization was immediately recommended by the psychiatrist based on his disclosure and altered mental status.

On 06/05/06, R█████ was admitted to Decatur General West hospital for stabilization of his psychotic symptoms and physical threat towards others.

The following interventions have been used with no evidence of significant improvement noted thereafter:

➢ Intervention: Evaluation by psychiatrist with recommendation to Decatur General West for acute care hospitalization.
  Student Response: R█████ was accepted and transported to DGW for treatment of psychosis.

➢ Intervention: Crisis Intervention as a response to elopement and need for medical treatment.
  Student Response: D. R█████ was minimally responsive. He has no motivation due to history of no family involvement. He continued to speak negatively, showing an unwillingness to work program.

003123

000051

> Intervention: D. R████ met with DYS service monitor to help gain some resolution or decision regarding his needs.
> Student Response: R████ was extremely hostile and disrespectful towards service monitor. He was unwilling to cooperate with any interventions or treatment alternatives. He continued to talk about his psychotic episodes and thoughts of harming others. Based on his past history of assault, the likelihood of R████ acting on these thoughts increased daily.

Prior Placements: (indicate number of times in each applicable placement)

| | | | |
|---|---|---|---|
| _____ Autauga HIT | _____ Thomasville HIT | _____ Chalkville | _____ Vacca |
| _____ Mt. Meigs | _____ Montgomery G.H. | _____ Camp Cobia | _____ Reach |
| _____ J & M Manor | _____ Troy Group Home | _____ Laurel Oaks | _____ Southern Oaks |
| _____ Big Brothers | _____ 3 Springs Tuskegee | _____ GEMS | _____ About Face |
| _____ 3 Springs Choices | _____ Camp 180 | _____ North Alabama Group Home | |
| _____ Alabama Youth Home (Westover) | | _____ Alabama Youth Home (Wetumpka) | |
| _____ Mobile Group Home | | _____ WAYS Group Home | |
| _____ Teen University | | _____ Heritage House | |
| _____ New Horizons | | _____ STEPS | |
| _____ Tennessee Valley | | __1 ea_ Other : Mt. View, UAB for psychiatric issues | |

Treatment Recommendations:

It is recommended that D. R████ be restaffed to Mt. Meigs Intensive Treatment Unit where he will be in a more restricted environment and have more daily access to a psychiatrist based on his current mental health needs, self-injurious behavior, runaway history, and strong potential to harm others. Mr. R████ has a long standing history of running away from placements and assault with a weapon which is thought to be of a higher risk requiring a more restricted environment than current placement.

003124

**D. R█████ Restaff Continued**

This Request for Restaff is an accurate and true representation of    D████ R█████'s    participation in our program.  It is the recommendation of the Treatment Team or Program Administration that re-staff is warranted.

_____          6/19/06
Program Director/Manager                       Date

_____          6/19/06
Treatment Staff                                Date

_____          6/19/06
Treatment Staff                                Date

I have been involved in the Re-Staff process:

Unable to sign                               _____
Student                                        Date

003125

000053
PAGE 04          THREE SPRINGS          2568938393          23:44    06/15/2006

# GATEWAY
# GENERAL NOTE

Client Name: R_____, D_____ G.                                        ID: 1003666

Staff  Ioana Shirley, MD, C/A Psychiatrist  5134              Date of Service  12/08/2005

Service Code  NB MD ASSESSMENT AND TX               Time of Service  12:00 pm
( 9156 )
                                                    Duration of Service  0:40
Reporting Unit  CAMPUS RESIDENTIAL ( 2520 )

Type of Service                    Oriented To
FACE TO FACE                       PERSON
                                   PLACE
                                   SITUATION
                                   TIME



Appropriate Mental Status          Inappropriate Mental Status
ATTENTION                          APPEARANCE
PERCEPTIONS                        MOTOR ACTIVITY
                                   SPEECH
                                   MOOD
                                   AFFECT
                                   THINKING
                                   INSIGHT

Individuals Involved
Patient reports suicidal ideas with intent. He wants to hang himself or to cut himself until he dies. He does admit to on
and off thoughts that "he should not do this", but he "does not trust himself". He does not want to be here ( at
Gateway), but he understands that -if he was not as depressed he would better deal with His conflicts. He is withdrawn,
angry and has little support. Denies any HI, psychotic symptoms etc.

Mental Status Comment if client present:
Psychomotor retardation Sad, anxious, depression, poor eye contact Low vol. And rate of speech. SIH

Summary
In the context of the patient's adjustment to a new environment, the patient's depression became severe.

Plans
Discussed case with the staff at Gateway. The patient's therapist and caseworker.
I recommend hospital admission for suicide prevention, and in order to readdress the patient's depressive symptoms,
I called UAB-Psych and requested direct admission. Paperwork to be faxed for doctor's review. I will be available for
doctor/doctor case discussion.

_____ ( I N Shirley MD ).              12/08/ 05
Reviewer Signature                                 Date

86/19/2006  11:87   2563064867          DONNA MITCHELL                    PAGE  82/82

# BEHAVIORAL
# MEDICINE CENTER



6/19/06

Angela Taylor
Department of Youth Services
25 West 11ᵗʰ Street Box 13
Anniston, AL 36201

RE: D███ R█████ (DOB: 4-1-91)

Dear Ms. Taylor:

D████ R█████ was admitted to Decatur General West on 6-5-06. He was admitted due to auditory and visual hallucinations and self-mutilation. His current diagnoses include Bipolar Disorder, R/O Posttraumatic Stress Disorder, and Attention Deficit Hyperactivity Disorder. His current medications include Seroquel 500mg at bedtime, Lexapro 30mg at bedtime, Adderall XR 15mg each morning and Zonegran 50 mg twice daily.

Based on my evaluation, it is my recommendation that D████ be placed in a secured residential psychiatric facility. This placement should include regular evaluations by a psychiatrist, medication management, behavioral modification, and daily therapy to address mood instability and psychosis. At this time, residential placement is the least restrictive environment available to meet his needs.

Thank you for your consideration in this matter.

Respectfully,

Albert L. Sprinkle, M.D.
Child/Adolescent Psychiatrist

# Decatur General
# WEST

003560

2205 Bel Aire Road SW • P.O. Box 2240
Decatur, Alabama 35609-2240
(205) 306-4000 • 1-800-937-3879

000055

**Johnson, Christy**

| | |
|---|---|
| From: | Johnson, Christy |
| Sent: | Monday, June 25, 2007 1:14 PM |
| To: | 'dudley.perry@dys.alabama.gov'; 'Phyllis.Carney@dys.alabama.gov' |
| Cc: | Anderson, Nancy; Mixson, Andrea |
| Importance: | High |
| Attachments: | S35C-107062509531.pdf |



S35C-10706250953
1.pdf (369 KB)...

Dudley,

ADAP sent you notification via facsimile, email and U.S. mail on May 9, 2007 (see attached), informing you of our intent to conduct an investigation on May 10 at Vacca; however, we were not allowed access at that time. Andrea Mixson and I plan to conduct an investigation at Vacca this week, either Wednesday, June 27 or Friday, June 29 beginning at 9:00 a.m.

Because W██████ has been transferred to Three Springs, I was unsure where his DYS records are kept. If you will, please let me know where we can access his entire DYS record, including his educational records. If you will email or call me with this information, this will help us determine how best to schedule this visit.

We are requesting copies of the following documentation regarding W██████ B██████ including, but not limited to, incident reports, medical records, disciplinary hearing reports, individual records of confinement/restriction, student disciplinary rule violation investigations and DYS internal investigative reports from April 22, 2007 to the present.

In addition to reviewing documentation, we plan to conduct interviews with residents and staff who were directly involved or witness to the incident in question. We will provide Vacca with a list of names upon our arrival at the facility. Please contact me at (205) 348-4928 as soon as possible should you have any questions.

Sincerely,
Christy

Christy Johnson
Senior Case Advocate
Alabama Disabilities Advocacy Program
Box B70395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(205)348-3909 fax

*************************************************
This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

000056

1

**Johnson, Christy**

From:        Johnson, Christy
Sent:        Wednesday, May 09, 2007 2:46 PM
To:          dudley.perry@dys.alabama.gov
Cc:          phyllis.carney@dys.alabama.gov; Tucker, James
Subject:     letter

Importance:      High

Attachments:     S35C-107050914220.pdf


S35C-10705091422
0.pdf (365 KB)...      Mr. Perry, please find attached a letter that has also been sent to you by facsimile and U.S. mail.

Christy Johnson
Senior Case Advocate
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(205)348-3909 fax

*****************************************************

This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited.  The views or opinions expressed by the sender of this email are not necessarily those of the institution.

**Johnson, Christy**

From:           Johnson, Christy
Sent:           Wednesday, May 09, 2007 2:46 PM
To:             dudley.perry@dys.alabama.gov
Cc:             phyllis.carney@dys.alabama.gov; Tucker, James
Subject:        letter

Importance:     High

Attachments:    S35C-107050914220.pdf



S35C-10705091422
0.pdf (365 KB)...
            Mr. Perry, please find attached a letter that has also been sent to you by
facsimile and U.S. mail.

Christy Johnson
Senior Case Advocate
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(205)348-3909 fax

***********************************************************

This email is intended only for the person to whom it is addressed.  Any review or other
use of this information by persons or entities other than the intended recipient or any
retransmission without the consent of the sender is prohibited.   The views or opinions
expressed by the sender of this email are not necessarily those of the institution.

000057

1





ALABAMA DISABILITIES

**ADAP**

ADVOCACY PROGRAM

**VIA FACSIMILE, EMAIL & U.S. MAIL**

May 9, 2007

Mr. Dudley Perry, Esq.
Deputy Attorney General
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental
Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF

**ALABAMA**

FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-
0395
(205) 348-4928
(800) 826-1675
FAX (205) 348-3909
adap@adap.ua.edu
www.ADAP.net

ADAP has probable cause to believe that our client, W███ B███, was subject to verbal and physical abuse by Vacca staff. ADAP is conducting an investigation into this matter. Pursuant to its federal access authority under 42 C.F.R. § 51.42, ADAP is allowed reasonable, unaccompanied access to facilities and community settings to investigate potential abuse or neglect. This access includes the right to speak with any Vacca resident or staff member who may have knowledge of the incident being investigated. Please notify Vacca staff that we will arrive on campus, Thursday, May 10, 2007 at 9:00 a.m.

Pursuant to 42 C.F.R. § 51.41, ADAP is requesting copies of the following documentation regarding W███ B███ including, but not limited to, incident reports, medical records, disciplinary hearing reports, individual records of confinement/restriction, student disciplinary rule violation investigations, and DYS internal investigative reports from April 22, 2007 to the present.

Please contact me at (205) 348-4928 as soon as possible should you have any questions.

Sincerely,

Christy Johnson
Senior Case Advocate

Cc: Mr. Walter Wood (via facsimile and U.S. mail)
Ms. Joyce Delbridge (via facsimile and U.S. mail)
Mr. James Tucker, Esq.

000058

MHY-16-2001 Case 2:07-cv-0043    EF-SRW    Document 1    Filed 05/1    Page 1 of 2



EXHIBIT
**35**

Alabama Disabilities
Advocacy Program

**BY EMAIL AND U.S. POST**

September 12, 2006

THE UNIVERSITY OF
**ALABAMA**
F O U N D E D   1 8 3 1

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
PO Box 66
Mt. Meigs, AL 36057

Protection & Advocacy for
Persons with Developmental
Disabilities

Re: ADAP Monitoring Visit, Mt. Meigs

Dear Dudley,

Protection & Advocacy for
Individuals with Mental Illness

To date, I haven't heard back from you regarding your request that we
contact you about the plans ADAP was developing to come to Mt.
Meigs for a monitoring visit and the tentative dates we had pinpointed
(see attached email). So that there are no further delays, Christy and I
have set Wednesday, September 27th as the day that we will come to
facility to monitor it.

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Given that it will be our first monitoring visit, it would make sense for
someone to give us a tour of the facility — much like what was done for
us at Chalkville last winter.

Protection & Advocacy for
Beneficiaries of Social Security

As we have discussed previously, ADAP's monitoring authority allows
us:

Protection & Advocacy for
Voting Accessibility

"unaccompanied access to facilities including all area which are used
by residents, are accessible to residents, and to programs and their
residents at reasonable times, which at a minimum shall include normal
working hours and visiting hours. ... This access is for the purpose of:

1. Providing information and training on, and referral to programs
   addressing the needs of individuals with mental illness, and
   information and training about individual rights and the
   protection and advocacy services available from the P&A
   system, including the name, address, and telephone number of
   the P&A system.

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
www.ADAP.net

2. Monitoring compliance with respect to the rights and safety of
   residents; and

3. Viewing and photographing all areas of the facility which are
   used by residents or are accessible to residents.

42 CFR 51.42. See also 45 CFR 1386.22 (F– i).

Distributed by the Governor in
The University of Alabama in accordance
with Public Law 100-146 and 99-319.
ADAP is The Protection and Advocacy
System for Alabama on behalf of persons
with disabilities.

**000106**

Please contact me when you receive this letter so we can confirm the date and discuss the logistics of our visit. At that time, I also would like to discuss some issues that have come to our attention regarding treatment services provided to four of our clients at Mt. Meigs: ██████ M████, D████ M████, K████ W████, and S████ W████.

With Best Regards,

Nancy Anderson
Senior Staff Attorney

000107

Alabama Disabilities
Advocacy Program

EXHIBIT
B6

January 16, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
PO Box 66
Mt. Meigs, AL 36057

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

Re: ~~William Bennett~~ & ~~Leona Perry~~

Protection & Advocacy for
Persons with Developmental
Disabilities

Dear Dudley,

I am writing to clarify ADAP's access authority to DYS records and to
facility staff.

Protection & Advocacy for
Individuals with Mental
Illness

Protection & Advocacy of
Individual Rights

ADAP staff members have made repeated inquiries of DYS staff for
verbal information and written records for ADAP clients W~~illiam
Bennett~~ and L~~eona Perry~~.

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

In W~~illiam~~'s case, Senior Case Advocate Christy Johnson has been
requesting information from his DYS records since October 17, 2006.
(See attached letter.) She has received no response from either Ms.
McClure, ~~William~~'s case manager, or your office.

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

Please note that ADAP's access authority provides that the agency shall
be provided records related to its investigations "not later than 3
business days after the system makes a written request for the records
involved." 42 U.S.C. 15043 Sec.143(a)(2)(I)(i).

In L~~eona~~'s case, Senior Case Advocate Christa Hackney has been
attempting to speak with DYS case manager Marguerite Crane since
mid-December regarding the girl's transfer back to Alabama from
Youth Villages on December 7, 2006. Ms. Hackney is also seeking
discharge and updated treatment records for L~~eona~~.

**ADAP**

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-
0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
www.ADAP.net

Multiple voice messages were left for Ms. Crane during the latter part
of December. None were returned. It wasn't until January 4, 2007 that
Ms. Hackney was able to get a hold of Ms. Crane. At that point Ms.
Crane told Ms. Hackney that any information she sought would have to
come from the DYS legal department.

Designated by the Governor:
The University of Alabama in
accordance with Public Laws 98-
346 and 99-319.
ADAP is The Protection and Advocacy
System for Alabama on behalf of
persons with disabilities.

Ms. Alesia Allen confirmed this statement in an email to Ms. Hackney
in which she stated that Ms. Crane would not be her "point of contact."
Ms. Alesia Allen recently has been corresponding with Ms. Hackney

000108

2

regarding dates for a meeting for you, she and Ms. Blackley to discuss L_____'s case.

ADAP's access authority provides us the ability "to interview any ... [facility] employee, or other person ... who might be reasonably believed ... to have knowledge of the incident [or abuse or neglect] under investigation[.]" 45 C.F.R. Sec. 1386.22(f) and 42 C.F.R. Sec. 51.42(b) (emphasis added). So, while we welcome the opportunity to discuss L_____'s case with you and Ms. Allen now, we had the authority to speak with Ms. Crain under this access provision at the time we contacted her.

Furthermore, at this point, whether we speak with Ms. Crain or you and Ms. Allen, these discussions are going to happen almost a month after we (again) voiced our concerns about the sufficiency of L_____'s treatment.

The delays we've experienced in these cases are not unusual. Such delays frustrate our ability to act upon our statutory mandate to protect the rights of persons with disabilities. As noted by the court in Robbins v. Budke, such delays prevent us from "evaluating and acting on possible incidents of abuse and neglect in a timely manner" and "may prevent the P&A from acting within prescribed deadlines or may cause a violation of rights to go unaddressed until it is too late to remedy." 739 F. Supp. at 1488 (1990).

If you do not envision providing our office with the requested records and employee contact by the close of this week, please promptly provide a written statement of the reasons why our access to records and staff on behalf of both youth has been denied. See 45 C.F.R. Sec. 1386.22 (i) and 42 C.F.R. Sec. 51.43.

With Best Regards,

Nancy Anderson
Attorney

cc: James Tucker, Director of Litigation

**000109**

Mixson, Andrea

From:    Anderson, Nancy
Sent:    Wednesday, February 28, 2007 11:57 AM
To:      Dudley Perry
Cc:      Phyllis.carney@dys.alabama.gov
Subject: RE: monitoring visit

EXHIBIT C

Dudley,

I'm just confirming our visit tomorrow.

Nancy

From: Anderson, Nancy
Sent: Tue 2/20/2007 4:34 PM
To: Dudley Perry
Subject: monitoring visit

Dear Dudley,

ADAP plans to do a monitoring of Chalkville next Thursday, March 1, 2007.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

ADAP staff members Christie Johnson and Andrea Mixson will plan on arriving at 2 PM.

Please contact me with any questions or concerns.

Thanks,

Nancy

Nancy Anderson
Attorney
Alabama Disabilities Advocacy Program
University of Alabama
526 Martha Parham West
Box 870395

4/6/2007

000110

Tuscaloosa, AL. 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
*********************

This email is intended only for the person to whom
it is addressed. Any review or other use of this
information by persons or entities other than
the intended recipient or any retransmission
without the consent of the sender is prohibited.
The views or opinions expressed by the sender
of this email are not necessarily those of the
institution.

4/6/2007

**000111**



EXHIBIT
D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ALABAMA DISABILITIES ADVOCACY )
PROGRAM )
)
Plaintiff, )
)
v. )    Civil Action No.
)
J. WALTER WOOD, JR. in his official )
Capacity as Executive Director of the )
Alabama Department of Youth Services, )
)
Defendant. )

AFFIDAVIT OF ANDREA MIXSON

State of Alabama    ]
County of Tuscaloosa ]

Andrea Mixson, being duly sworn, deposes and states as follows:

1.   My name is Andrea Mixson. I am over the age of nineteen. This
     Affidavit is given on the basis of my personal knowledge.

2.   I am employed as a staff attorney with the Alabama Disabilities
     Advocacy Program ("ADAP").

3.   On March 28, 2007, I, along with ADAP senior case advocate, Christy
     Johnson, arrived at the Alabama Department of Youth Services
     ("DYS") Chalkville facility around 1:00 p.m. for a monitoring visit,
     arranged through DYS Deputy Attorney General Mr. Dudley Perry's
     office. In a March 21, 2007 email and in a telephone call on March 22,
     2007, I explained to Mr. Perry that ADAP planned to communicate
     privately with residents in the Cherokee unit about their treatment and

000112

explain and distribute information about ADAP. I also explained to Mr.

Perry that ADAP planned to speak privately with, and obtain the

records of, Chalkville residents, J.C, B.P, and S.B., whom ADAP met

on its March 6, 2007 visit and who wished to discuss further with

ADAP concerns they had about inappropriate treatment.

4.    On March 22, 2007, Mr. Perry stated to ADAP Staff Attorney Nancy

Anderson and me that he wanted a DYS internal investigator to look

into the concerns of J.C., B.P. and S.B. prior to ADAP's second visit.

Mr. Perry asked that I postpone ADAP's March 27, 2007 monitoring

visit to Chalkville till later that week to give his investigator time to

look into J.C., B.P. and S.B.'s concerns.

5.    On March 22, 2007, I emailed Mr. Perry stating that Ms. Johnson and I

would arrive for our monitoring visit on March 28, 2007 at 1:00 p.m.

6.    When Ms. Johnson and I arrived at Chalkville on March 28, 2007

around 1:00 p.m., the security guard at the entrance told us that Ms.

Yolanda Byrdsong, the director of Chalkville, was not at Chalkville that

day. The security guard directed Ms. Johnson and me to the

administration office and stated that I would need to speak with Ms.

Tate instead regarding our monitoring visit.

7.    Upon meeting Ms. Tate, I explained to Ms. Tate that Ms. Johnson and I

were planning to speak with residents whom we did not have an

opportunity to meet during our previous monitoring visit to Chalkville

on March 6, 2007. These residents live in the Cherokee Unit at

000113

Challeville. Ms. Tate stated that Ms. Byrdsong instructed her to tell us that we were not permitted to speak with any residents other than J.C., B.P. and S.B. Ms. Tate stated that ADAP only had authority to speak with staff and to tour the Cherokee Unit.

8.      Ms. Johnson and I explained to Ms. Tate that ADAP has federal access authority to speak with any and all residents at Challeville and that ADAP's access included communicating with those residents who we did not have chance to speak with during our last visit. I stated to Ms. Tate that, in fact, the complaints made to ADAP by J.C., B.P., and S.B. came as a result of conversations Ms. Johnson and I had with these residents as part of our March 6, 2007 monitoring visit.

9.      Following our interview with J.C., B.P. and S.B., Ms. Johnson and I again stated to Ms. Tate that ADAP has federal access authority to speak to any resident on the Challeville campus. I stated that ADAP planned to exercise its federal access authority to speak with any resident of Challeville and to distribute information about ADAP's services. Ms. Tate stated she received instruction from Mr. Perry to deny ADAP the opportunity to speak to any resident, except those who have a disability or who are already ADAP's clients. Ms. Tate stated that not all residents have a disability and allowing ADAP to speak with residents who did not have a disability would be a breach of those residents' confidentiality. Ms. Tate stated that ADAP was only allowed to speak with staff, make a general announcement about ADAP services

000114

to residents at the Cherokee Unit, and to distribute brochures to those residents.

10.     Ms. Johnson and I, accompanied by Ms. Tate, gave Cherokee Unit residents a copy of our brochure and made a general announcement to the residents about the purpose of ADAP, stating that we were interested in speaking with any resident who had concerns about inappropriate treatment while at Chalkville. While I was making the announcement to the Cherokee Unit residents, Ms. Tate interjected and stated that only residents with disabilities would be able to receive assistance from ADAP. Ms. Johnson explained that any resident may contact ADAP if they have concerns about inappropriate treatment at Chalkville.   After my announcement, Ms. Tate stated that she did not understand why ADAP was not permitted to speak to all residents at the facility. I stated to Ms. Tate that DYS officials allowed ADAP to speak privately with all Chalkville residents on March 6, 2007.

11.     On April 10, 2007, Ms. Johnson and I arrived on the Vacca Campus for a monitoring visit.  We met the Vacca Director, Ms. Joyce Delbridge, who stated that Mr. Perry prohibited us from communicating privately with any resident unless they were currently considered our clients.  Ms. Delbridge also stated to us that Mr. Perry prohibited us from distributing any ADAP brochures to any resident of Vacca.

12.     Ms. Delbridge then stated that a Vacca guard, Mr. O'Connor, would be accompanying us on "a tour" of the Vacca campus and facilities.

**000115**

Another individual, who was there at Vacca as part of a job application process, was present as Ms. Johnson and I walked around the campus accompanied by Mr. O'Connor.

13.   When our tour of the facilities was completed, Ms. Delbridge, Ms. Johnson and I met for a discussion. Mr. O'Connor, the security guard, sat at the table with Ms. Johnson, Ms. Delbridge and me.

14.   During the conference with Ms. Delbridge, Ms. Johnson asked Ms. Delbridge for a copy of ADAP client D.R.'s record which Ms. Johnson stated she had requested prior to this visit. Ms. Delbridge stated that she could not provide a copy of D.R.'s DYS record until D.R. was able to sign an authorization for release of information and was released from the hospital.

15.   On April 17, 2007, Ms. Johnson and I arrived on the DYS Mount Meigs campus around 9:00 a.m.

16.   We walked to the gated entrance of Mt. Meigs and stated to the guard on duty, Mr. Hanna, that we had a prearranged monitoring visit scheduled through Mr. Perry's office. Mr. Hanna stated that he did not have any notification from Mr. Perry that ADAP had planned a monitoring visit to Mt. Meigs and could not allow us to enter the Mt. Meigs campus. Mr. Hanna called Mr. Booker, Administrator of Institutional Services, to find out if ADAP had been granted access for a monitoring visit. Upon finishing the phone call with Mr. Booker, Mr. Hanna directed Ms. Johnson and me to the Mt. Meigs administrative

000116

building for further clarification on our permission to conduct monitoring activities.

17.    Ms. Johnson and I walked to the office of Mr. Dudley Perry. Ms. Phyllis Carney, Mr. Perry's assistant, stated that Mr. Perry was not in the office today. I explained to Ms. Carney that I had sent Mr. Perry emails informing him of our visit. Ms. Carney stated that ADAP should have emailed her a copy of the emails sent to Mr. Perry. Ms. Carney stated that she had received instructions from Mr. Perry that ADAP has the "access you have always have." When I asked Ms. Carney to describe that access, Ms. Carney stated that ADAP was only permitted a tour of the facility and could not speak with any residents, unless they were current ADAP clients, and we could not distribute ADAP contact information. I stated to Ms. Carney that ADAP had federal authority to communicate privately with any Mt. Meigs resident and to distribute ADAP contact and service information to any resident at the facility. I provided Ms. Carney a letter from Nancy Anderson sent to Mr. Perry on March 28, 2007 reminding Mr. Perry of ADAP's access authority. Ms. Carney made a copy of this letter.

18.    After Ms. Carney spoke with Mr. Perry on the phone, Ms. Carney stated that Mr. Perry instructed her that Ms. Johnson and I were only permitted to walk around the campus and into the buildings and could not speak with any Mt. Meigs resident unless they were currently ADAP's clients.

**000117**

Ms. Carney also stated that Mr. Perry instructed her that a Mt. Meigs
employee must accompany Ms. Johnson and me throughout our visit.

19.    Ms. Johnson and I myself walked back to the security gate, where a Mt.
Meigs staff member, Ms. Katherine Spillers, accompanied us through a
tour of the Mt. Meigs buildings.

20.    FURTHER AFFIANT SAYETH NOT.

Andrea Mixson

Sworn to and subscribed before me on this the 10th day of May, 2007.

Notary Public

My Commission expires:    2/27/2010

000118



EXHIBIT
E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ALABAMA DISABILITIES ADVOCACY )
PROGRAM                         )
                                )
            Plaintiff,          )
                                )
    v.                          )        Civil Action No.
                                )
J. WALTER WOOD, JR. in his official )
Capacity as Executive Director of the )
Alabama Department of Youth Services, )
                                )
            Defendant.          )

AFFIDAVIT OF CHRISTY JOHNSON

State of Alabama     ]
County of Tuscaloosa ]

1.  My name is Christy Johnson. I am over the age of nineteen. This Affidavit is
    given on the basis of my personal knowledge.

2.  I am employed as a senior case advocate with the Alabama Disabilities Advocacy
    Program, ("ADAP").

3.  On March 28, 2007, I, along with ADAP attorney, Andrea Mixson, arrived at the
    Alabama Department of Youth Services ("DYS") Chalkville facility at
    approximately 1:00 p.m. to meet with residents on the Cherokee unit to explain
    ADAP's services and provide contact information. In addition, ADAP scheduled
    with Dudley Perry, Deputy Attorney General for DYS, to review the records and
    interview three residents whom ADAP had probable cause to believe received
    improper medical treatment at Chalkville.

**000119**

4. When Ms. Mixson and I arrived at Chalkville, the security guard at the entrance told us that Ms. Yolanda Byrdsong, the Campus Administrator of Chalkville, was attending a training off campus and not available. We were directed to the administration office and told to speak with Ms. Tate.

5. Upon meeting Ms. Tate, Andrea and I explained the purpose of the monitoring visit. Andrea told Ms. Tate that we planned to meet with residents on the Cherokee unit, a unit we did not have the chance to monitor on March 6, 2007. Ms. Tate told us that Ms. Byrdsong instructed her to tell us not to speak with any resident at Chalkville unless they have a disability or unless the individual is one of the three girls for which arrangements were made to visit through Mr. Perry. Ms. Tate told us that we would only be allowed to talk with staff on the unit, pass out ADAP brochures and make a general announcement to residents as a group.

6. Ms. Mixson and I explained to Ms. Tate that ADAP's federal access authority allows us to speak with any resident at Chalkville, including the three residents for which arrangements were made to visit through Mr. Perry.

7. I contacted Nancy Anderson, ADAP senior staff attorney to notify her that our access to residents was denied, and to request her assistance with resolving this issue with Mr. Perry. In response, Mrs. Anderson faxed a letter to Ms. Tate and to Mr. Perry which outlines ADAP's access authority and monitoring intent. Mrs. Anderson also contacted Mr. Perry by phone, but was unable to reach him.

8. Upon completion of our interviews with J.C., B.P. and S.B., Ms. Mixson and I met with Ms. Tate again and asked if she received the faxed letter from Mrs. Anderson. Ms. Mixson again explained our access authority which allows ADAP

**000120**

to talk with any resident at the Chalkville campus. Ms. Mixson notified Ms. Tate of our intent to exercise this authority to speak with residents on the Cherokee unit and to pass out information about our program. Ms. Tate said that she spoke with Mr. Perry on the phone and he told her not to allow us to talk with residents unless they have a disability. Ms. Tate said that Mr. Perry told her that allowing ADAP to talk with other residents would be a breach of a resident's confidentiality. Ms. Tate stated that ADAP was only allowed to speak with staff, make a general announcement about ADAP services to a group of residents, and to distribute brochures to residents.

9. ADAP distributed brochures and made a general announcement about ADAP's services and contact information to the residents living on the Cherokee unit. During the announcement, Ms. Tate interrupted Ms. Mixson and told residents that they must be disabled for ADAP to help them. I provided clarification to residents and informed them that anyone may contact us if they feel they have been abused or neglected and that we would schedule a time to meet with them in private to determine if they qualify for our services.

10. While exiting the Cherokee unit, a resident walked toward me and started to ask how she could contact ADAP. Ms. Tate stepped in between me and the resident and told the resident that she was not allowed to talk with me. After Ms. Tate walked away, I provided the resident a brochure and showed her the contact phone number and address.

11. While walking towards the front gate, Ms. Tate stated that she did not understand why ADAP was not allowed to speak with all residents, as we have been for the

**000121**

Chalkville campus in the past. Ms. Mixson and I told Ms. Tate that we made a recent visit on March 6, 2007 and were allowed to visit with residents.

12. On March 5, 2007, I contacted Vacca staff, Patricia Henderson, case manager, Joyce Delbridge, Campus Administrator, and sent an email to Dudley Perry to request a visit with D.R. Dudley Perry was issued a statement of probable cause based on a letter ADAP received from D.R. in which he reported an allegation of verbal abuse and mistreatment by staff. After repeated attempts to arrange a visit, I conducted an interview with D.R. at Vacca on March 19. I subsequently contacted the case manager and scheduled a follow up visit to take place April 4. On the morning of April 4, I received a phone call from Ms. Henderson reporting that D.R. had been hospitalized for elevated blood levels and a suspected self-administered medication overdose. I conducted a review of D.R.'s record at Vacca on the afternoon of April 4, and discussed obtaining a copy of D.R.'s record with Joyce Delbridge. Ms. Delbridge agreed to provide ADAP a copy of the DYS record on April 10, when ADAP returned to conduct a monitoring visit. On April 10, Ms. Delbridge denied ADAP a copy of D.R.'s record and indicated that DYS must first obtain written authorization from D.R.

13. On April 10, 2007, I, along with ADAP attorney, Andrea Mixson, arrived at the Vacca facility around 8:30 a.m., to complete a walk-through of all buildings, talk with residents and provide them with information about ADAP and our services. ADAP scheduled this monitoring visit with Mr. Perry on March 30, 2007.

14. When Ms. Mixson and I arrived at the Vacca facility, the security guard at the entrance told us to go to the administration building to meet with Joyce Delbridge.

000122

Campus Administrator. Before we reached the administration building, Ms. Delbridge met us outside and introduced us to a security guard, Mr. O'Connor. Ms. Delbridge said that Mr. O'Connor would be giving us a tour of campus. I asked Ms. Delbridge if we could meet with her first, and she said that she could not meet with us because she had to attend a staff meeting. I told Ms. Delbridge that we would like to meet with her when we completed our monitoring.

15. Ms. Delbridge told us that Dudley Perry instructed her to tell us not to talk with any residents except our existing clients, and not to pass out any business cards or ADAP brochures. Ms. Delbridge also told us not to disrupt classes or programming, but that we could observe.

16. I explained ADAP's federal access authority to Ms. Delbridge, and told her that it allows us to talk with all residents and distribute information about ADAP's program. Ms. Delbridge told us that Dudley Perry instructed her to tell us that we could not talk with residents or pass out any information, denying our access authority. A female, Kiyoshi Torrence, accompanied Ms. Mixson and me on the tour. Ms. Torrence indicated that she was not a DYS employee, but was in the job application process.

17. I explained to the security guard, Mr. O'Connor that this was not a tour, but that ADAP was conducting a monitoring visit. Mr. O'Connor said that he would show us some residential units and the school, and would try to answer any questions that we had.

18. Mr. O'Connor escorted me, Ms. Mixson and Ms. Torrence to three residential units, Bailey Hall, Smith Hall, and Hill Hall, the medical building, the school and

**000123**

the dining hall. We were not allowed to talk with residents, distribute business cards or ADAP brochures.

19. Upon completion of the tour, Ms. Mixson and I met with Joyce Delbridge, accompanied by Mr. O'Conner, in the Administration Building. During this interview, I requested a copy of D.R.'s record as previously agreed upon. Ms. Delbridge informed me that D.R. was still at Children's Hospital and that DYS would not release a copy of his record to ADAP without his written consent.

20. Following the April 10, 2007 monitoring visit, I made a number of attempts to contact Vacca staff regarding D.R.'s placement and to obtain a copy of his DYS record. On May 15, 2007, I contacted Ms. Henderson, case manager, and was told that D.R. was discharged from the hospital and placed at Mt. Meigs, Intensive Treatment Unit on Tuesday, May 8. ADAP has not been provided a copy of D.R.'s record as requested six weeks ago.

21. On April 17, 2007, I, along with ADAP attorney, Andrea Mixson arrived at the Mt. Meigs facility for a prearranged monitoring visit of the facility.

22. When Ms. Mixson and I arrived at Mt. Meigs, the security guard at the entrance told us that he had not received a memorandum from Dudley Perry about our visit and he was unaware that we were coming. The security guard informed us that Mr. Perry was not on campus that day and that he would have to contact Mr. Booker, Administrator of Institutional Services, to determine if ADAP was allowed access into the facility.

000124

23. After the security guard contacted Mr. Booker, we were instructed to go to the campus administration building located outside of the secured campus to discuss our access to the facility.

24. Ms. Mixson and I went to the administration building and spoke with Phyllis Carney, Mr. Perry's legal assistant. Ms. Carney contacted Mr. Perry and instructed us to meet Katherine Spillers at the front gate to take a tour of the campus. Ms. Carney said that Mr. Perry instructed her to tell us that we were not allowed to pass out brochures or business cards and that we were not allowed to talk with any residents other than existing clients.

25. Ms. Mixson explained to Ms. Carney that ADAP has federal access authority to speak with any resident at the facility and to distribute information. Ms. Mixson provided Ms. Carney with a copy of Nancy Anderson's letter from March 28, 2007 to Mr. Perry, which explains ADAP's federal access authority. Ms. Carney made a copy of the letter for her file.

26. Ms. Mixson went on to explain that ADAP arranged this visit with Mr. Perry a month ago. Ms. Carney asked if ADAP sent her a copy of the email and indicated that Mr. Perry does not always check his emails and suggested that he may not be aware of the visit. Ms. Mixson informed Ms. Carney that a second notice was sent to Mr. Perry and went on to explain that notifying Mr. Perry of the visit was sufficient.

27. Ms. Mixson and I met Ms. Spiller at the front gate and were provided a monitoring tour of campus. We were not allowed to speak with any resident or distribute information.

000125

28. FURTHER AFFIANT SAYETH NOT.

*Christy Johnson*
Christy Johnson

Sworn to and subscribed before me on this the 16th day of May, 2007.

*Janet R. Owens*
Notary Public

My Commission expires:     2/27/2010

000126



-----Original Message-----
From: Perry, Dudley [mailto:Dudley.Perry@dys.alabama.gov]
Sent: Wednesday, March 21, 2007 3:36 PM
To: Mixson, Andrea
Cc: Anderson, Nancy; Cerney, Phyllis; Baldwin, Sandra; Allen, Alesia
Subject: RE: Monitoring @Chalkville 3/27/07

Dear Andrea,

We will communicate with Chalkville and arrange for your visit next
week.  I will ask them to coordinate a time for your monitoring visit
and visit with the girls you named.

If you are conducting an investigation, please let me know the grounds
on which ADAS believes the students are within ADAP's potential
clientele, and the facts on which probable cause for an investigation
is based.

Thank you,
Dudley

-----Original Message-----
From: Mixson, Andrea [mailto:amixson@adap.ua.edu]
Sent: Wednesday, March 21, 2007 1:01 PM
To: Perry, Dudley
Cc: Anderson, Nancy; Johnson, Christy; Tucker, James
Subject: Monitoring @Chalkville 3/27/07

Dear Dudley:

ADAP is planning another monitoring visit of Chalkville. ADAP staff
members, Christy Johnson and myself, plan to arrive at Chalkville next
Tuesday, March 27, 2007 at 1:00 p.m. In addition to monitoring
activities, Christy Johnson and I are requesting a confidential visit
with residents ████ ████, S███████ ████████, and ████████ ████████.
Please provide ADAP with copies of any and all documents relating to
these residents kept by DYS prior to our visit.

As we have discussed in the past, our enabling statutes provide for
reasonable unaccompanied access to facilities including all areas which
are used by residents, are accessible to residents, and to programs and
their residents at reasonable times, which at a minimum shall include
normal working hours and visiting hours.

This access is for the purposes of 1) providing information and
training on programs addressing the needs of individuals with mental
illness, individual rights, and the protection and advocacy services
available from ADAP; 2) monitoring compliance with respect to the
rights and safety of residents; and 3) viewing and photographing all
areas of the facility which are used by residents or are accessible to
residents.

Please contact me with any questions or concerns.

000127

000205

Thank you,

Andrea Mixson

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP) University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-318-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed.
Any review or other use of this information by persons or entities
other than the intended recipient or any retransmission without the
consent of the sender is prohibited.  The views or opinions expressed
by the sender of this email are not necessarily those of the
institution.

000128

Mixson, Andrea

| | |
|---|---|
| **From:** | Mixson, Andrea |
| **Sent:** | Thursday, March 22, 2007 11:53 AM |
| **To:** | Anderson, Nancy |
| **Cc:** | Johnson, Christy; Mixson, Andrea |
| **Subject:** | Chalkville Visit |

EXHIBIT 4

Dudley:

As you requested in our phone conversation today with Nancy Anderson, ADAP will accommodate your request to reschedule our March 27, 2007 visit to Chalkville. As such, ADAP plans to visit Chalkville on Wednesday, March 28, 2007 at 1:00 P.M. I hope this time is agreeable and I would appreciate your confirmation.

Sincerely,

Andrea Mixson

-----Original Message-----
From: Mixson, Andrea
Sent: Thursday, March 22, 2007 10:03 AM
To: dudley.perry@dys.alabama.gov
Cc: Anderson, Nancy; Mixson, Andrea; Johnson, Christy
Subject: Chalkville

Dudley:

As you requested, please see below information establishing these Chalkville residents as ADAP clients and the basis for probable cause for an ADAP investigation.

S███████ B███████:
ADAP has cause to believe Chalkville psychiatrist prescribed S███████ with psychotropic medication while at Chalkville. ADAP has probable cause to believe S███████ has been improperly restrained and searched at Chalkville.

B███████ P███████:
ADAP has cause to believe that B███████ has bi-polar disorder.
ADAP has probable cause to believe that B███████ received improper mental health treatment while at Chalkville.

J███████ C███████:
ADAP has cause to believe that J███████ C███████ has a physical disability.
ADAP has probable cause to believe that J███████ received improper medical treatment.

As always, please let me know if you have any further questions or concerns.

Sincerely,

Andrea

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP) University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions

**000129**

Mixson, Andrea

From: Mixson, Andrea
Sent: Monday, March 26, 2007 12:09 PM
To: dudley.perry@dys.alabama.gov
Subject: Confirmation Chalkville



Dudley:

Per our telephone discussion today, ADAP will be visiting Chalkville on Wednesday, March 28, 2007 at 1:00 p.m.

Thank you,

Andrea

-----Original Message-----
From: Mixson, Andrea
Sent: Friday, March 23, 2007 11:31 AM
To: dudley.perry@dys.alabama.gov
Subject: RE: Chalkville Visit

Dudley:

Just wanted to confirm that ADAP will be visiting Chalkville on Wednesday, March 28, 2007 at 1:00 p.m. Please see email below.

Thank you,

Andrea

-----Original Message-----
From: Mixson, Andrea
Sent: Thursday, March 22, 2007 11:55 AM
To: Anderson, Nancy
Cc: Johnson, Christy; Mixson, Andrea
Subject: Chalkville Visit

Dudley:

As you requested in our phone conversation today with Nancy Anderson, ADAP will accommodate your request to reschedule our March 27, 2007 visit to Chalkville. As such, ADAP plans to visit Chalkville on Wednesday, March 28, 2007 at 1:00 p.m. I hope this time is agreeable and I would appreciate your confirmation.

Sincerely,

Andrea Mixson

-----Original Message-----
From: Mixson, Andrea
Sent: Thursday, March 22, 2007 10:03 AM
To: dudley.perry@dys.alabama.gov
Cc: Anderson, Nancy; Mixson, Andrea; Johnson, Christy
Subject: Chalkville

Dudley:

As you requested, please see below information establishing these Chalkville residents as ADAP clients and the basis for probable cause for an ADAP investigation.

Sa███ B███y:

1

ADAP has cause to believe Chalkville psychiatrist prescribed ▨▨▨▨ with psychotropic medication while at Chalkville. ADAP has probable cause to believe ▨▨▨▨ has been improperly restrained and searched at Chalkville.

▨▨▨▨ ▨▨▨▨:
ADAP has cause to believe that B▨▨▨▨ has bi-polar disorder.
ADAP has probable cause to believe that B▨▨▨▨ received improper mental health treatment while at Chalkville.

J▨▨▨▨ C▨▨▨▨:
ADAP has cause to believe that J▨▨▨▨ C▨▨▨▨ has a physical disability.
ADAP has probable cause to believe that J▨▨▨▨ received improper medical treatment.

As always, please let me know if you have any further questions or concerns.

Sincerely,

Andrea

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP) University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)

This email is intended only for the person to whom it is addressed.  Any review or other use of this information by persons or entities other than the intended recipients or any retransmission without the consent of the sender is prohibited.  The views or opinions expressed by the sender of this email are not necessarily those of the institution.

2

000131

MAR-28-2007 14:27 FROM:ADAP                    2055483909              TO:3342543214        P:001/004

**Alabama
Disabilities
Advocacy
Program**



ADVOCACY PROGRAM

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
www.ADAP.net

If you do not receive legible copies of all pages, please call 205/348-4928. Manual answer 8:00 a.m. to 4:45 p.m.; voice mail other times.

NOTE: Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this facsimile message is confidential information intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or have not sure whether it is privileged, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service at our expense.

Thank You.



THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

# Fax Cover Letter

Date: March 28, 2007

Sent by: Nancy Anderson

Total pages including cover page: 4

Fax to:

Dudley Perry, Deputy Attorney General, DYS  (334) 215-3874

Mrs. Tate, Chalkville, 205.680.8543

Comments:

PLEASE DELIVER IMMEDIATELY.

TIME SENSITIVE.

DATE OF LETTER IS CORRECTED.

EXHIBIT
**I**

000132



March 28, 2007

Mrs. Tate
Chalkville Campus
8449 Old Springville Road
Pinson, AL 35126

RE: The Alabama Disabilities Advocacy Program (ADAP) monitoring authority

Dear Mrs. Tate:

It is my understanding that you have a question regarding the scope of ADAP's monitoring authority in relation to the visit that is being made today by ADAP representatives Christy Johnson and Andrea Mixson.

ADAP arranged for today's monitoring visit to Chalkville with DYS Deputy General Counsel Dudley Perry over a week ago. We even agreed to delay our visit by a couple of days in order to accommodate Mr. Perry. Mr. Perry is very aware of the scope of our access authority and understands what it is Ms. Johnson and Ms. Mixson seek to accomplish today.

For your benefit I am providing a summary of ADAP's access authority under federal law (as found in 42 CFR 51.42):

- Persons with disabilities may not be aware of their state's P&A or be able to contact the P&A on their own. To ensure that persons with disabilities have access to the agency's protection and advocacy services, federal law provides P&As with the right to unaccompanied access to all residents of a facility at reasonable times (including, at a minimum, normal working hours and visiting hours) to provide information, training and referrals to facility residents.

- P&As have broad authority to conduct on-site monitoring of health and safety conditions in both institutional and community settings.

- Access to facility residents and staff to discuss issues relating to rights protections and treatment may not be restricted except in the most limited circumstances and notice to a facility is generally not required prior to meeting with residents or staff.

**Protection & Advocacy for Persons with Developmental Disabilities**

**Protection & Advocacy for Individuals with Mental Illness**

**Protection & Advocacy of Individual Rights**

**Protection & Advocacy for Assistive Technology**

**Protection & Advocacy for Individuals with Traumatic Brain Injury**

**Protection & Advocacy for Beneficiaries of Social Security**

**Protection & Advocacy for Voting Accessibility**

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
FAX (205) 348-3909
adap@adap.ua.edu
www.ADAP.net

000133

* P&A staff have a right to have unaccompanied access to residents, which includes the opportunity to meet and communicate privately with them, both formally and informally, by telephone, mail and in person. The right of informal access applies to all residents of a facility, including those who may eventually be found not to meet the P&A eligibility criteria. The P&A is the final arbiter of what individuals served by a facility are, or are not, P&A clients and a facility may not require, as a condition of granting access to records or facilities, that the P&A make a definitive showing that particular individuals have a disability.

* Permission of a parent or guardian of a resident is not necessary for P&A staff to meet informally with any resident. However, the P&A staff must honor a resident's request to terminate an interview. A request to terminate an interview should not mean, however, that the P&A never again approaches the individual. Most advocates have worked with clients who will not talk with them one day, but welcome a respectful approach on the next.

I trust that with this information you will allow Ms. Johnson and Ms. Mixson to continue with their monitoring visits. If you have any further questions, I invite you to direct them to me or to Mr. Perry.

With very best regards,

Nancy Anderson
Attorney

cc: Dudley Perry

000134

Sec. 51.42 Access to facilities and residents.

(a) Access to facilities and residents shall be extended to all authorized agents of a P&A system.
(b) A P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. Such access shall be afforded, upon request, by the P&A system when:

1. An incident is reported or a complaint is made to the P&A system;
2. The P&A system determines there is probable cause to believe that an incident has or may have occurred; or
3. The P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness.

(c) In addition to access as prescribed in paragraph (b) of this section, a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a residents' request to terminate an interview.
This access is for the purpose of:

1. Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.
2. Monitoring compliance with respect to the rights and safety of residents; and
3. Viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

(d) Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have legal guardians or conservators.

000135

Mixson, Andrea

| | |
|---|---|
| From: | Anderson, Nancy |
| Sent: | Friday, March 30, 2007 6:54 PM |
| To: | Dudley Perry |
| Subject: | FW: Vacca Monitoring |

**EXHIBIT**

**J**

Dudley,

I am confirming our monitoring at Vacca on Tuesday, 4/10 at 8 AM, as outlined by Christy Johnson in her original email to you (dated 3/27).

Nancy

-----Original Message-----
From: Johnson, Christy
Sent: Tuesday, March 27, 2007 9:02 AM
To: 'Dudley.perry@ds.alabama.gov'
Cc: Mixson, Andrea; Anderson, Nancy
Subject: Vacca Monitoring

Dear Dudley:

ADAP is planning a monitoring visit of Vacca. ADAP staff members, Andrea Mixon and myself, plan to arrive at Vacca Tuesday, April 10, 2007 at 8:00 a.m.

As we have discussed in the past, our enabling statutes provide for reasonable, unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Christy Johnson
Senior Case Advocate
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(205) 348-3909  Fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

Johnson, Christy

EXHIBIT
K 1

**From:**        Mixson, Andrea
**Sent:**        Monday, March 05, 2007 5:16 PM
**To:**          dudley.perry@dys.alabama.gov
**Cc:**          Anderson, Nancy; Tucker, James; Johnson, Christy; Mixson, Andrea
**Subject:**     Monitoring Visit Mt. Meigs

Dear Dudley:

ADAP plans to do a monitoring of Mt. Meigs on Tuesday April 17, 2007.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Christy Johnson, ADAP staff member, and myself will plan on arriving at 2 PM, at Mt. Meigs.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

1

**000137**

Johnson, Christy

From:           Mixson, Andrea
Sent:           Friday, April 06, 2007 2:43 PM
To:             dudley.perry@dys.alabama.gov
Cc:             Johnson, Christy; Anderson, Nancy
Subject:        ADAP Monitoring Visit to Mt. Meigs



Dudley,

ADAP will be conducting a monitoring visit at Mount Meigs on Tuesday, April 17, 2007 starting at 9:00 a.m. Three people from ADAP will be participating in this site visit.

As we have discussed in the past, our enabling statutes provide for reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.

This access is for the purposes of 1) providing information and training on programs addressing the needs of individuals with mental illness, individual rights, and the protection and advocacy services available from ADAP; 2) monitoring compliance with respect to the rights and safety of residents; and 3) viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

Please contact me with any questions or concerns.

Sincerely,

Andrea Mixson

Alabama Disabilities Advocacy Program (ADAP) University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

1



-----Original Message-----
From: Johnson, Christy
Sent: Monday, March 05, 2007 2:59 PM
To: 'dudley.perry@dys.alabama.gov'
Cc: 'joyce.delbridge@dys.alabama.gov'; 'phyllis.carney@dys.alabama.gov'
Subject: Vacca Interview

Dudley, I contacted Joyce Delbridge, Campus Administrator at Vacca, to request her assistance with scheduling a potential client visit. Mrs. Delbridge referred me to Patricia Henderson, case manager, to make these arrangements.

█████ recently sent ADAP a letter requesting a visit. He reported allegations of verbal abuse and mistreatment by staff. He reports exhibiting previous suicidal ideations and attempts. The purpose of the visit is to determine if █████ qualifies for our services and to determine if we can provide him with individual case assistance. Please contact me if you have any questions or concerns. Thank you!

Christy

Christy Johnson
Senior Case Advocate
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(205) 348-3909 fax

*************************************************

This email is intended only for the person to whom it is addressed. Any review or other use of this information by persons or entities other than the intended recipient or any retransmission without the consent of the sender is prohibited. The views or opinions expressed by the sender of this email are not necessarily those of the institution.

000139

000217



April 20, 2007



Alabama Department of Youth Services
Mr. Dudley Perry, Deputy Attorney General
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

ADAP sent you a letter on November 29, 2006 on behalf of three clients, W_____ D____ B_____, H____ M____, and K_____ W____. Please find a copy of this letter enclosed for your review. To date, ADAP has not received copies of incident reports and investigative findings as requested. Please forward those reports to us by May 4, 2007.

We are also requesting copies of incident reports and investigative findings prepared by DYS regarding concerns we raised on behalf of J____ C____, E_____ P_____, and S_____ B_____, residents at Chalkville. Again, please forward these reports to us by May 4, 2007.

In addition, ADAP is requesting copies of all investigative reports prepared by any agency charged with investigating abuse or neglect, or injury occurring at Vacca, Chalkville and Mt. Meigs within the last 6 months. Please forward these reports to us by May 4, 2007.

We are requesting these reports under our access authority as described at 42 C.F.R. § 51.41 (c), granting ADAP access to:

(2) Reports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:
(i) Abuse, neglect, or injury occurring at the facility;
(ii) The steps taken to investigate the incidents;
(iii) Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or
(iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

**000144**

If you intend to delay or deny ADAP's access to these records, please note that 42 C.F.R. § 51.43 requires you to provide ADAP with a prompt written statement of the reasons for the delay or denial. Please provide us this statement by April 26, 2007.

As we have discussed with you in the past, ADAP is responsible for maintaining the confidentiality of any records received by our office to the same extent as required of you under Federal or State laws. 42 C.F.R. § 51.45.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

Enclosure

**000145**

## Johnson, Christy

| | |
|---|---|
| **From:** | Johnson, Christy |
| **Sent:** | Monday, February 11, 2008 2:15 PM |
| **To:** | 'tim.davis@dys.alabama.gov' |
| **Cc:** | Anderson, Nancy; 'charmian.neighbors@dys.alabama.gov'; Tucker, James; 'dudley.perry@dys.alabama.gov' |

**Subject:** FW: TB and ADAP

Tim,

I am writing to follow up regarding the information you provided related to T███ B████. You pointed out in your memorandum that the "release and review process" conducted by Mr. Booker does not generate specific reports and only indicates that the student was reviewed. Is there some documentation in the student's record or perhaps elsewhere that indicates the review committee's decision? If so, will you please send us that information?

When we spoke before Christmas, you indicated that T███ would be evaluated by the DYS psychiatrist or psychologist for the purpose of making recommendations for treatment. We received copies of the individual therapy progress notes, but we did not receive a copy of the psychological or psychiatric evaluation. If you would, please send to ADAP a copy of this report.

Please contact me or Nancy Anderson by phone, 205-348-4928 if you have any questions.

Christy

---

**From:** Anderson, Nancy
**Sent:** Tuesday, January 22, 2008 3:49 PM
**To:** tim.davis@dys.alabama.gov
**Cc:** Johnson, Christy; charmian.neighbors@dys.alabama.gov; Tucker, James; Perry, Dudley
**Subject:** RE: TB and ADAP

Tim,

Just following up again...

When we spoke in December, you were going to provide us with the following information related to T███ B████:

1. His current IEP
2. DYS "release and review process" reports done for T███
3. Any psychological or psychiatric evaluations done for T███, including the recent evaluation that was done by the DYS psychiatrist in November.
4. Any medical evaluations for T███ on file with DYS
5. Psycho-educational testing results for T███, to include IQ results

Also, you were going to provide us the names of the psychologist & psychiatrist for each DYS facility.

Please contact me by phone at 205.348.4928 or via email at nanderso@adap.ua.edu at your earliest opportunity.

Nancy

---

-----Original Message-----
From: Anderson, Nancy
Sent: Thursday, January 17, 2008 5:03 PM
To: 'tim.davis@dys.alabama.gov'
Cc: Johnson, Christy; 'charmian.neighbors@dys.alabama.gov'
Subject: TB and ADAP

Tim,

I'm writing to follow up on the results of the evaluation done by the DYS psychiatrist regarding ADAP client T▆▆ B▆▆▆▆.

When we spoke before Christmas, you indicated that you would soon be receiving his report and recommendations for treatment.

Please contact me by phone at 205.348.4928 or via email at nanderso@adap.ua.edu at your earliest opportunity.

Thank you.

Nancy

**Johnson, Christy**

| | |
|---|---|
| **From:** | Johnson, Christy |
| **Sent:** | Monday, October 09, 2006 11:22 AM |
| **To:** | 'Perry, Dudley' |
| **Cc:** | Anderson, Nancy |
| **Subject:** | FW: WDB |

| **Importance:** | High |

| **Attachments:** | 750.pdf |


750.pdf (111 KB)

Dudley,

I sent you an email last Wednesday to request your assistance with setting up a visit at the Vacca Campus this Wednesday, Oct 11th (see below).  To date, I have not heard from you.  If you will, please let me know who my staff contact person will be at this facility and if there is a specific time that I need to meet with W████████.

Thank you,
Christy

-----Original Message-----
From: Johnson, Christy
Sent: Wednesday, October 04, 2006 4:03 PM
To: 'Perry, Dudley'
Cc: Anderson, Nancy
Subject: WDB

Dudley,

I am requesting your assistance in facilitating a visit with a resident at the Vacca Campus, W█████ D████ B███████, DOB ██████████.  Please find attached a copy of an Authorization to Obtain and Release Information form signed by his mother, S████ F███████.  ADAP was contacted by Ms. F███████ requesting our assistance on behalf of her son.  Based on information provided by Ms. F███████, we believe H████ qualifies as a client under our PAIMI program.  It is not my intention to meet with W████ as part of an investigation, but to communicate with him privately, in part to determine if he may qualify under one of ADAP's programs and to determine if we can provide him with any assistance.

I am available on Wednesday, October 11th.  If you will please let me know a time during which I can meet with W██████ at the Vacca Campus that won't interfere with his programming I would appreciate it.  Thank you and I look forward to hearing from you soon.

Christy

Christy Johnson, Senior Case Advocate
ADAP
Box 870395
University of Alabama
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
FAX (205) 348-3909
cjohnson@adap.ua.edu
http://www.adap.net



Alabama Disabilities
Advocacy Program

November 29, 2006

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
www.ADAP.net

Designated by the Governor to
The University of Alabama in accordance
with Public Laws 100 - 146 and 99 - 319.
ADAP is The Protection and Advocacy
System for Alabama on behalf of persons
with disabilities.

Department of Youth Services
Dudley Perry, Deputy Attorney General
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

I am requesting information on behalf of three ADAP clients, W█████
D███ B█████, H███ M████ and K█████ W█████.

W█████ B█████ – ADAP conducted an initial interview with W█████
B█████ and his case manager, Pearline McClure, at the Vacca facility.
ADAP subsequently sent Ms. McClure a letter of request for
information, (see attached), and a follow up letter to you when we did
not receive a response (see attached). It is my understanding that Ms.
McClure turned over this request for information to the DYS legal
division. ADAP originally requested specific documentation related to
W█████ mental health treatment. However, since our initial
interview, W█████ reported to ADAP an allegation of abuse by a staff
member named Mr. Farley. W█████ reported that Mr. Farley punched
him in the chest, knocking him back into his room one evening during
the week of November 6. W█████ did not report this incident to staff
because he was afraid of retaliation and indicated that this staff member
has physically abused other residents, but DYS refuses to address his
behavior. ADAP is requesting copies of W█████ DYS record,
including copies of any incident reports and investigative findings that
involve W█████.

H███ M████ – ADAP sent you a letter dated November 7, 2006,
requesting that DYS conduct an internal investigation regarding an
allegation of medical neglect involving H███ M████ on November 5,
2006. If you would please advise ADAP of the status of this
investigation in writing.

K█████ W█████ - In a letter dated June 13, 2006, (see attached), ADAP
requested copies of investigative findings related to an allegation of
medical neglect involving K█████ W█████. It was reported to ADAP
that K█████ was denied access to appropriate medical care following
an ACL surgery in September of 2005. A second ACL surgery was
subsequently required. As part of ADAP's preliminary investigation,
we requested copies of any investigative findings related to this
allegation of neglect. To date, we have not received these reports.

—

As you are aware, the PAIMI Act § 51.41 grants the P&A access to records. Access to records shall be extended promptly to all authorized agents of the P&A system. Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the Act shall include, but not be limited to:

1. Information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment. This includes records stored or maintained in locations other than the facility or program as long as the system has obtained appropriate consent consistent with section 105(a)(4) of the Act. The system shall request of facilities that in requesting records from service providers or other facilities on residents that they indicate in the release form the records may be subject to review by a system.

2. Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:

(i) Abuse, neglect, or injury occurring at the facility;
(ii) The steps taken to investigate the incidents;
(iii) Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or
(iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

3. Discharge planning records.

4. Reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities, except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees.

If you will please promptly respond in writing to this request for information and provide requested documentation. If you have any questions, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

**000224**



Alabama Disabilities
Advocacy Program (ADAP)

October 17, 2006

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

Department of Youth Services,
Vacca Campus
Ms. Pearline McClure
8950 Roebuck Blvd.
Birmingham, Alabama 35206

Dear Ms. McClure:

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

I write as a follow up to my visit at the Vacca Campus last Friday, October
13, 2006. As we discussed, the purpose of this visit was to conduct a
preliminary interview with W█████ B█████, a resident in this program. I
provided you a copy of ADAP's brochure and explained that we are the
federally funded protection and advocacy program for people with
disabilities in Alabama. ADAP has agreed to provide W█████ with case
advocacy assistance in an attempt to address the concerns that have been
brought to our attention.

To better understand W█████ treatment and programming, I will need to
review specific documentation from W█████ DYS record. If you will
please mail a copy of the following documentation to the address indicated
below: psychological evaluation, psychiatric evaluation, DYS
treatment/service plan and medication records.

ADAP
Attn: Christy Johnson
Box 870395
Tuscaloosa, Alabama 35487-0395

If you have any questions or concerns, please don't hesitate to contact me
at (205) 348-4928. Thank you for your assistance.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

Designated by the Governor
to the University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities.

ALABAMA DISABILITIES
AD
AP
ADVOCACY PROGRAM

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
fax (205) 348-3909
www.ADAP.net



Alabama Disabilities
Advocacy Program (ADAP)    November 1, 2006

THE UNIVERSITY OF

# ALABAMA

FOUNDED 1831

Mr. Dudley Perry, Deputy Attorney General
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

S███ F██████, mother of W████ D██ B██████, a resident at the
Vacca campus, contacted ADAP. Ms. F██████ originally expressed
concerns about W████s prescribed mental health care. The
F██████ evacuated to Alabama because of the Katrina catastrophe
and subsequently made a permanent move to our state after losing their
home. Upon W████ admission to the DYS system, Ms. F██████
participated in the service planning process in order to provide historical
information about the trauma W████ has suffered. However, she feels
that her concern that W████ may suffer from PTSD was not taken
seriously and she is fearful that W████ will not receive appropriate
mental health care while he completes his program at Vacca.

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

ADAP conducted a preliminary interview with W████ on October 13,
and agreed to provide him with individual case advocacy services. On the
date of ADAP's visit, bruising below his eye and on his lower cheek was
noted. W████ indicated that he was punched in the eye by another
resident which resulted in a broken nose and bleeding from his eye.
According to W████, he saw a staff member, perhaps a nurse or doctor,
who looked at his nose and said, "there is nothing wrong with it". W████
indicated that he re-set his nose by popping it back into place later that day
and received no additional treatment from staff.

As part of the review process, ADAP met with Ms. Pearline McClure,
W████ case manager, to discuss concerns raised by Ms. F██████.
During this visit, Ms. McClure was unable to answer specific questions
related to W████ treatment, as she did not have access to his DYS
record. As a follow up to the initial interview, ADAP sent a letter of
request for information to Ms. McClure (please see attached letter) and we
have not yet received this information.

Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities.



Since the initial consult with Ms. F██████, we have learned that
W████ also suffered a broken toe while playing football. Again, it
appears that he was denied access to an outside medical consult and only
after Ms. F██████s repeated requests did DYS send him to Children's
Hospital for x-rays on October 19. A nurse by the name of Ms. Jones told
Ms. F██████ that DYS has "a 10-day window" in which to administer

500 Martha Parham West
Box 870395
Tuscaloosa Alabama 35487-0395
(205) 348-4928
(800) 826-1675
fx (205) 348-3909
www.ADAP.ne

treatment or to render a diagnosis. The x-ray results revealed that W████ suffered a broken toe and a deviated septum (related back to the incident in which W█████ was punched in the eye and reported to staff that his nose was broken).

ADAP is requesting copies of all DYS medical reports, policy/procedure documents related to receiving medical care and emergency medical treatment and any investigative findings related to the above stated incidents. In the event that an investigation has not been completed, ADAP is requesting that DYS conduct such an investigation. If you have any questions, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

Alabama Disabilities
Advocacy Program

January 11, 2007

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

Dudley Perry, Deputy Attorney General
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057

RE: W█████ B█████

Dear Dudley:

As you are aware, ADAP was contacted by S███ F████████, legal guardian
for W████ D███ B████, a resident at the Vacca Campus. In response to
this request for assistance, ADAP conducted interviews with W████ at the
Vacca Campus and subsequently requested information from his DYS record.

A letter was sent to Pearline McClure, W████'s Case Manager on October
17, 2006 requesting copies of information from his DYS record; Ms. McClure
never responded to this request for information. On November 1, 2006, a
letter was sent to you, in which I indicated that a request for documentation
was made of Ms. McClure and that we had received no response from her, (a
copy of the letter to Ms. McClure was provided to you). I received no
response from you regarding this request. On November 29, 2006, a second
letter was sent to you requesting DYS documentation and copies of
investigative reports, (copies of the previously mailed letters were included as
a reference). I received no response from you regarding this request for
information.

To date, I have not received any information as requested. I understand that
you are consulting with Nancy Anderson regarding ADAP's authority to
access copies of DYS investigative reports; however, this request for
information is an unrelated issue, and as you are aware, we have the right to
access W████ DYS record.

Given the repeated requests and time that has passed, I am asking that you
promptly provide copies of W████ DYS record to ADAP. If you have
questions or concerns, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Christy Johnson
Senior Case Advocate

cc: Nancy Anderson

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
FAX (205) 348-3909
www.ADAP.net

Designated by the Governor to
The University of Alabama in accordance
with Public Laws 100 - 146 and 99 - 319.
ADAP is The Protection and Advocacy
System for Alabama on behalf of persons
with disabilities.

MESSAGE CONFIRMATION                    MAY-09-2007 01:27PM WED

FAX NUMBER : 2053483909
NAME      : ADAP

| NAME/NUMBER | : | 913342153872 |
| PAGE | : | 002 |
| START TIME | : | MAY-09-2007 01:26PM WED |
| ELAPSED TIME | : | 00'55" |
| MODE | : | G3 STD |
| RESULTS | : | [ O.K ] |

---

**Alabama Disabilities
Advocacy Program**



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
www.ADAP.net

If you do not receive legible
copies of all pages,
please call 205/348-4928.
Manned answer 8:00 a.m. to 4:45 p.m.;
voice mail other times.

NOTE: Unless otherwise indicated or
obvious from the nature of the
transmittal, the information contained
in this facsimile message is confidential
information intended only for use of
the individual or entity named above.
If the reader of this message is not the
intended recipient, or the employee or
agent responsible to deliver it to the
intended recipient, you are hereby
notified that any dissemination,
distribution or copying of this
communication is strictly prohibited.
If you have received this
communication in error or are not sure
whether it is privileged, please
immediately notify us by telephone,
and return the original message to us at
the above address via the U.S. Postal
Service at our expense.

Thank You

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

**Fax Cover Letter**

Date: _5/9/07_

Sent by: _CHRISTY JOHNSON_

Total pages including cover page: _2_

Deliver to: _DUDLEY PERRY_

Fax Number: _(334) 215-3872_

From: _CHRISTY JOHNSON_

Comments:



STATE OF ALABAMA

DEPARTMENT **DYS** SERVICES

**BOB RILEY**
GOVERNOR

POST OFFICE BOX 66
MT. MEIGS, ALABAMA 36057

**J. WALTER WOOD, JR.**
EXECUTIVE DIRECTOR

June 26, 2007

James Tucker
Alabama Disabilities Advocacy Program
500 Martha Paraham West
Box 860395
Tuscaloosa, AL 35487-0395

Dear James:

Christy Johnson has written and requested certain documents in connection with an investigation of alleged abuse at Vacca. However, she has refused to provide notice of the factual basis for probable cause. As you know, this was an important element of our settlement agreement.

I will instruct our staff to provide access and records, but I do have to insist on compliance with ADAP's obligation to provide notice of factual basis for probable cause before hand.

Sincerely,

T. Dudley Perry, Jr.
Deputy Attorney General

/pic

cc:   Christy Johnson

000231



Alabama Disabilities
Advocacy Program (ADAP)

November 1, 2006

THE UNIVERSITY OF
ALABAMA
FOUNDED 1831

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928

Mr. Dudley Perry, Deputy Attorney General
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

S███ F███████, mother of W██ D███ B██████, a resident at the Vacca campus, contacted ADAP. Ms. F███████ originally expressed concerns about W██████s prescribed mental health care. The F███████'s evacuated to Alabama because of the Katrina catastrophe and subsequently made a permanent move to our state after losing their home. Upon W██████s admission to the DYS system, Ms. F██████ participated in the service planning process in order to provide historical information about the trauma W█████ has suffered. However, she feels that her concern that W█████ may suffer from PTSD was not taken seriously and she is fearful that W█████ will not receive appropriate mental health care while he completes his program at Vacca.

ADAP conducted a preliminary interview with W█████ on October 13, and agreed to provide him with individual case advocacy services. On the date of ADAP's visit, bruising below his eye and on his lower cheek was noted. W█████ indicated that he was punched in the eye by another resident which resulted in a broken nose and bleeding from his eye. According to W█████, he saw a staff member, perhaps a nurse or doctor, who looked at his nose and said, "there is nothing wrong with it". W█████ indicated that he re-set his nose by popping it back into place later that day and received no additional treatment from staff.

As part of the review process, ADAP met with Ms. Pearline McClure, W█████ case manager, to discuss concerns raised by Ms. F██████. During this visit, Ms. McClure was unable to answer specific questions related to W█████ treatment, as she did not have access to his DYS record. As a follow up to the initial interview, ADAP sent a letter of request for information to Ms. McClure (please see attached letter) and we have not yet received this information.

Since the initial consult with Ms. F██████, we have learned that W█████ also suffered a broken toe while playing football. Again, it appears that he was denied access to an outside medical consult and only after Ms. F██████ repeated requests did DYS send him to Children's Hospital for x-rays on October 19. A nurse by the name of Ms. Jones told Ms. F██████ that DYS has "a 10-day window" in which to administer

treatment or to render a diagnosis.  The x-ray results revealed that W██████ suffered a broken toe and a deviated septum (related back to the incident in which W█████ was punched in the eye and reported to staff that his nose was broken).

ADAP is requesting copies of all DYS medical reports, policy/procedure documents related to receiving medical care and emergency medical treatment and any investigative findings related to the above stated incidents.  In the event that an investigation has not been completed, ADAP is requesting that DYS conduct such an investigation.  If you have any questions, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Senior Case Advocate



Alabama Disabilities
Advocacy Program (ADAP)

October 17, 2006

THE UNIVERSITY OF
# ALABAMA
F O U N D E D   1 8 3 1

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

Department of Youth Services,
Vacca Campus
Ms. Pearline McClure
8950 Roebuck Blvd.
Birmingham, Alabama 35206

Dear Ms. McClure:

I write as a follow up to my visit at the Vacca Campus last Friday, October 13, 2006.  As we discussed, the purpose of this visit was to conduct a preliminary interview with W████ B████, a resident in this program.  I provided you a copy of ADAP's brochure and explained that we are the federally funded protection and advocacy program for people with disabilities in Alabama.  ADAP has agreed to provide W████ with case advocacy assistance in an attempt to address the concerns that have been brought to our attention.

To better understand W████ treatment and programming, I will need to review specific documentation from W████ DYS record.  If you will please mail a copy of the following documentation to the address indicated below: psychological evaluation, psychiatric evaluation, DYS treatment/service plan and medication records.

ADAP
Attn: Christy Johnson
Box 870395
Tuscaloosa, Alabama 35487-0395

If you have any questions or concerns, please don't hesitate to contact me at (205) 348-4928.  Thank you for your assistance.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319.  ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities.

ALABAMA DISABILITIES
ADAP
ADVOCACY PROGRAM

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
Fax (205) 348-3909
www.adap.net

Case 2:07-cv-00434-M    SRW    Document 45-2    Filed 01   /2008

EXHIBIT

A

Dear ADAP

To whom their may concern, There was a man who
come out here to chatkhville to talk to me. He was
asking me very strange questions like if I were being
sexually abused or physically abused in any way.
He was also audio taping what I was saying.
I felt like I was being forced to tell him what was
going on.

11-16-07

EXHIBIT

**B**

Dear ADHP,

I was just writing you to
let you know that prior to me going some
man came out here + he was questioning
me. As he Questioned me he put it on
vidiotape. I didn't know if it was
something he suppose to do so that
is why I'm contacting you.

R [ ]
1-16-07

P.S- He was ask me about
the Ms. Burrell situation.

There was a man who out here (to
Chalkville campus) who was tring
to interview me. While he started
asking me questions I told him I
did not want to answer any of
his questions. Then he turned of
the camra and recorder.

B██████ ██ ██
11-18-07

EXHIBIT
C





ALABAMA DISABILITIES

**ADAP**

ADVOCACY PROGRAM

August 27, 2007
**VIA FACSIMILE & U.S. MAIL**
**(334) 215-3877**

Mr. Tim Davis
Deputy Director for Programs and Client Services
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, AL 36057

RE: B██████ Y██████

Dear Mr. Davis:

ADAP has probable cause to believe that our client, B████ Y█████, a Chalkville resident, suffered physical abuse from DYS staff following a report of self-harm on August 18, 2007. B█████ is a sixteen year old girl who is diagnosed with Bi-Polar and has a history of being sexually molested. ADAP first interviewed B█████ Y█████ in our August 13, 2007 monitoring visit. At that time, B█████ stated to Andrea Mixson and Christy Johnson that she was required to wait several weeks before she could participate in the DOVE program, a treatment program addressing sexual abuse. I indicated to Mr. Perry in an August 17, 2007 email that ADAP was interested in pursuing an investigation into why this treatment was delayed.

While on an August 23, 2007 monitoring visit to Chalkville, Andrea Mixson and Christy Johnson found B█████ in a barren and dirty cell that contained only a green sleeveless Velcro jacket and a green blanket. B█████ stated to Ms. Mixson and Ms. Johnson that she was required to strip naked at night and wear a sleeveless weighted jacket while she slept on a blanket. When asked why she was required to do this, B█████ stated that Chalkville staff told her that she was being punished for making an alleged false report of self harm and causing Chalkville staff "to take their time" to drive B█████ to UAB for a medical evaluation on Saturday, August 18, 2007. B█████ stated that she and another Chalkville resident were taken to the emergency room at UAB after they both stated they overdosed on medication. B█████ was released from UAB Hospital later that day. B█████ stated to ADAP that no DYS psychiatrist conducted an evaluation of B█████ until Thursday, August 23, 2007, five days after her return to Chalkville. B█████ stated that, since her return from the hospital on August 18, 2007, DYS staff have not been monitoring her for self harm. ADAP reviewed B█████'s record at Chalkville on August 23, 2007 and found neither documentation concerning B█████'s evaluation

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Letter to Mr. Tim Davis
Re: B████ Y████
August 27, 2007
Page 2

at UAB Hospital on August 18, 2007 nor any other information regarding the incident.

Based on our initial investigation, ADAP believes that DYS officials and/or staff have abused and/or neglected B████ Y████ by forcing her to strip naked every night and sleep in a sleeveless Velcro jacket on a dirty hard floor. Furthermore, such treatment by DYS constitutes retaliation against B████ for making a report of self-harm, i.e., for seeking medical treatment. Taken in whole, these events indicate that B████ is being punished for seeking treatment rather than being provided needed treatment.

ADAP also has reason to conclude DYS has failed to provide B████ with a timely service plan and appropriate mental health treatment. During ADAP's review of B████'s file on August 23, 2007, ADAP found that B████ was admitted to Chalkville on July 10, 2007 for running away from the Lee County Youth Development Center. However, documentation in B████'s file indicates that more than a month elapsed after her admission to Chalkville before DYS created a service plan for B████. In fact, the service plan was apparently created on August 21, 2007-- four days after B████ reported that she had overdosed on medication.

ADAP requests that your office provide B████ with necessary treatment, not unwarranted punishment. We request that you conduct an immediate investigation into these matters and immediately provide B████ with appropriate bedding, including a mattress, and appropriate medical treatment including mental health treatment. ADAP also requests that DYS provide, within 3 days, the following documentation including, but not limited to:
- all medical documentation from UAB Hospital concerning this incident,
- all DYS incident reports and investigative reports concerning this incident, and
- all other DYS documents regarding this incident.

You indicated in our August 10, 2007 mental health meeting at Vacca, that your office is committed to prevent abuse and neglect and to complete timely and appropriate service plans for those in DYS custody. I trust that your office will immediately and thoroughly investigate this matter and provide ADAP with your findings as soon as possible.

Sincerely,

James A. Tucker
Attorney

Cc: B████ Y████
    Dudley Perry, Esq.

STATE OF ALABAMA



DEPARTMENT OF YOUTH SERVICES

BOB RILEY
GOVERNOR

POST OFFICE BOX 66
MT. MEIGS, ALABAMA 36057

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

September 21, 2007



James Tucker
Alabama Disabilities Advocacy Program
500 Martha Parham West
Box 860395
Tuscaloosa, AL 35487-0395

RE: *ADAP v. Wood*, CV 2:07-cv-434-MEF

Dear Mr. Tucker:

As per your request on August 27, 2007, the following information is provided.

Documents relating to B█████ Y█████ (Bates #s █████ through █████).

The documentation Ms. Mixson requested on September 4, 2007 by way of e-mail can not be processed until DYS is provided with the grounds upon which ADAP believes the students are covered by the Acts, and the facts upon which probable cause is based.

If you have any questions concerning this matter, please do not hesitate to contact me or Mr. Perry.

Sincerely,

Phyllis I. Carney
Legal Assistant to
T. Dudley Perry, Jr.
Deputy Attorney General
Department of Youth Services

/pic

Enclosure



**ALABAMA DISABILITIES**



**ADVOCACY PROGRAM**

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility



THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

**VIA FACSIMILE AND U.S. MAIL**

September 24, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, Alabama 36057

**RE: C̶̶ L̶̶̶**

Dear Dudley:

It has come to my attention that several of ADAP's Chalkville clients are having their mail censored by Chalkville staff in violation of their liberty interests under the Fourteenth Amendment to meaningful access to the courts. In addition, Chalkville staff is violating Chalkville Mail Policy 30.3 and 30.6.

ADAP client C̶̶ L̶̶̶ reports that she attempted to send a letter to ADAP describing her concerns about being the victim of staff abuse. However, C̶̶ believes that Chalkville staff read the letter and refused to mail it. ADAP has not received any letters from C̶̶ L̶̶̶.

The U.S. Supreme Court has ruled that incarcerated adults have a constitutional right to access Courts that is "adequate, effective and meaningful." *Bounds v. Smith,* 430 U.S. 817, 822 (1977). The constitutional right to access courts is applicable to incarcerated juveniles in state custody. *See John L. v. Adams,* 969 F.2d 228, 233 (6th Cir. Tenn. 1992); *Morgan v. Sproat,* 432 F. Supp. 1130 at 1158 (D.C. Miss. 1977).

According to Chalkville Campus Policy 30.4, students are granted "the right to communicate or correspond with persons or organizations subject only to the limitations necessary to maintain order and security." Chalkville Campus Policy 30.3 states "it is the policy of Chalkville Campus to allow students to send sealed letters to 1) Courts, 2) Counsel, 3) Chalkville Staff, 4) Central Office Staff, and 5) Student Advocate Staff and that "incoming letters from the people listed above may be opened and inspected for contraband, but only in the presence of the student." All other "incoming and outgoing mail of students may be screened in unusual circumstances, or where there is probable cause, and that all incoming and outgoing letters and packages will be inspected for contraband or money." *See Chalkville Policy 30.6.* DYS

policy also states that there must be "convincing evidence to justify the reading of mail" and that grounds for reading mail include "security, and mail/letters or packages which are pornographic, contain satanic material, are racist, written in code and are drug or gang related." *See Chalkville Policy 30.6.*

The type of mail censorship Ms. L████████ has reported constitutes an egregious violation of her right to communicate confidentially with legal counsel. ADAP is asking for an immediate investigation into this incident and a written report of DYS' findings. ADAP is requesting all copies of "Mail In," "Letter In" and "Mail Out" logs concerning C██████ during her time at Chalkville. In addition, ADAP is requesting that your office forward to us all letters sent to the attention of ADAP that were not mailed, censored, or returned to a resident for editing.

Thank you for your time on Friday. I look forward to hearing from you regarding this matter.

Sincerely,

James A. Tucker
Attorney

Cc: C██████ L████████
       Andrea J. Mixson, Esq.



**ALABAMA DISABILITIES**

**ADVOCACY PROGRAM**

**VIA FACSIMILE AND U.S. MAIL**

September 24, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, Alabama 36057

**RE: B▆▆▆▆ Y▆▆▆▆**

Dear Dudley:

Protection & Advocacy for Persons with Developmental Disabilities

Protection & Advocacy for Individuals with Mental Illness

Protection & Advocacy of Individual Rights

Protection & Advocacy for Assistive Technology

Protection & Advocacy for Individuals with Traumatic Brain Injury

Protection & Advocacy for Beneficiaries of Social Security

Protection & Advocacy for Voting Accessibility



**ALABAMA**

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

It has come to my attention that several of ADAP's Chalkville clients are having their mail censored by Chalkville staff in violation of their liberty interests under the Fourteenth Amendment to free speech and meaningful access to the courts. In addition, Chalkville staff are violating Chalkville Mail Policy 30.3 and 30.6 by ordering B▆▆▆ to rewrite mail written about conditions at the facility.

ADAP client B▆▆ Y▆▆▆ reported to Andrea Mixson recently that Chalkville staff refused to send letters she wrote to her probation officer, Carlie Roley, and her Baldwin County Juvenile Court Judge that describe concerns she has about unsafe conditions at Chalkville. B▆▆▆ also reports that Chalkville staff required B▆▆▆ to edit a letter to her father where she described her concerns about personal safety and living conditions at the Chalkville facility. In addition, B▆▆ reports that a letter from ADAP was opened prior to B▆▆▆s receiving it.

The U.S. Supreme Court has ruled that incarcerated adults have a constitutional right to access Courts that is "adequate, effective and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). The constitutional right to access courts is applicable to incarcerated juveniles in state custody. *See John L. v. Adams*, 969 F.2d 228, 233 (6th Cir. Tenn. 1992); *Morgan v. Sproat*, 432 F. Supp. 1130 at 1158 (D.C. Miss. 1977). The U.S. Supreme Court has also held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). In B▆▆▆'s case, no legitimate security interest exists for requiring B▆▆ to edit her letter to her probation officer and her father about conditions at the Chalkville facility.

According to Chalkville Campus Policy 30.4, students are granted "the right to communicate or correspond with persons or organizations subject only to the limitations necessary to maintain order and security." Chalkville Campus Policy 30.3 states "it is the policy of Chalkville Campus to allow students to send sealed letters to 1) Courts, 2) Counsel, 3) Chalkville Staff, 4) Central Office Staff, and 5) Student Advocate Staff and that "incoming letters from the people listed above may be opened and inspected for contraband, but only in the presence of the student." All other "incoming and outgoing mail of students may be screened in unusual circumstances, or where there is probable cause, and that all incoming and outgoing letters and packages will be inspected for contraband or money." *See Chalkville Policy 30.6.* DYS policy also states that there must be "convincing evidence to justify the reading of mail" and that grounds for reading mail include "security, and mail/letters or packages which are pornographic, contain satanic material, are racist, written in code and are drug or gang related." *See Chalkville Policy 30.6.*

This type of mail censorship on the part of Chalkville staff constitutes a blatant violation of B████'s right to access court officials. Furthermore, the letter B████ wrote to her father describing Chalkville conditions is not a threat to the security of Chalkville campus and is a violation of her right to privacy. ADAP requests an immediate investigation into these incidents and a written report of DYS's findings. ADAP is requesting all copies of "Mail or Letter in" and "Mail Out" logs concerning B████ during her time at Chalkville. All of our client's previous and future correspondence to legal counsel and court officials should be sent to these individuals, postage paid by DYS, immediately.

Thank you for your time on Friday. I look forward to hearing from you regarding this matter.

Sincerely,

James A. Tucker
Attorney

Cc: B████ Y████
         Andrea J. Mixson, Esq.

## Mixson, Andrea

**From:** Tucker, James
**Sent:** Monday, September 24, 2007 4:32 PM
**To:** Mixson, Andrea; 'Perry, Dudley'
**Cc:** Tucker, James
**Subject:** RE: Client Meetings

Dudley,

See also, my letters faxed to you today.
These appear to be the 3 cases I mentioned last Fri. where there were improprieties re- mail privileges.
We appreciate your attention to our concerns & look forward to hearing from you.
James

**From:** Mixson, Andrea
**Sent:** Monday, September 24, 2007 2:55 PM
**To:** Perry, Dudley
**Cc:** Tucker, James; Anderson, Nancy
**Subject:** Client Meetings

Dudley:
 Please see below the email I sent to you on September 4, 2007 stating probable cause for an ADAP investigation and each client's disability. I am requesting a confidential visit with ADAP clients B████ Y████, S████ L██████, and C██████ L██████ on September 26, 2007 at 3:00PM at Chalkville. In addition, I am requesting all DYS records for ADAP clients S████ L██████, C██████ L██████, and B████ Y████. Please see below for details.

Thank you,
Andrea J. Mixson.

```
Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
```

This email is intended only for the person to whom it is addressed.  Any review or
other use of this information by persons or entities other than the intended
recipient or any retransmission without the consent of the sender is prohibited.
The views or opinions expressed by the sender of this email are not necessarily
those of the institution.

**From:** Mixson, Andrea
**Sent:** Tuesday, September 04, 2007 4:31 PM
**To:** Perry, Dudley

**Cc:** Tucker, James; Anderson, Nancy; Johnson, Christy
**Subject:** DYS Matters 9/4/2007

Dudley:

I have discussed the following matters with James recently and he suggested that I email you with probable cause statements. I am also including some dates for visits with some of our clients at Mt. Meigs and Chalkville and a date for our next Vacca monitoring visit.

ADAP has probable cause to believe that Chalkville resident, C̶̶̶ L̶̶̶̶, (DOB 8/14/92), was recently subjected to verbal and physical abuse by a Chalkville staff member. C̶̶̶ is a resident who suffers from depression. ADAP is requesting all DYS records regarding C̶̶̶ L̶̶̶̶ including, but not limited to: 1) all records from C̶̶̶'s DYS master file, treatment file, cottage file, and medical file and 2) all incident reports and investigatory findings regarding staff assault and abuse against C̶̶̶. ADAP requests that your office immediately and thoroughly investigate this matter and provide ADAP with your findings as soon as possible.

ADAP has probable cause to believe that Chalkville resident, S̶̶̶ L̶̶̶̶, (DOB: 9/16/1989), suffered physical abuse from DYS staff following a report of self-harm on August 18, 2007. ADAP understands that S̶̶̶ suffers from depression. ADAP is requesting all DYS records regarding S̶̶̶ L̶̶̶̶, including, but not limited to: 1) all records from S̶̶̶'s DYS master file, treatment file, cottage file, and medical file and 2) all DYS documents regarding this incident. ADAP requests that your office immediately and thoroughly investigate this matter and provide ADAP with your findings as soon as possible.

**ADAP requests confidential client visits with the following Chalkville residents on Tuesday, September 11, 2007 at 2:30PM:**



Per James' 8/27/07 email to you, ADAP has planned a monitoring visit to the **Vacca campus on Thursday, September 6, 2007 at 2:00PM.**

**ADAP requests confidential client visits with the following Mt. Meigs residents on Friday, September 7, 2007 at 3:00PM:**



Thank you for your assistance.

**000246**

Sincerely,

Andrea J. Mixson

Andrea J. Mixson, Staff Attorney
Alabama Disabilities Advocacy Program (ADAP)
University of Alabama
526 Martha Parham West
Box 870395
Tuscaloosa, AL  35487-0395
205-348-4928
205-348-3909 (fax)
1-800-826-1675 (toll-free)
This email is intended only for the person to whom it is addressed.  Any review or
other use of this information by persons or entities other than the intended
recipient or any retransmission without the consent of the sender is prohibited.
The views or opinions expressed by the sender of this email are not necessarily
those of the institution.



**EXHIBIT E**

ALABAMA DISABILITIES



ADVOCACY PROGRAM

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

VIA FACSIMILE AND U.S. MAIL

September 24, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, Alabama 36057

RE: S▓▓▓ L▓▓▓

Dear Dudley:

It has come to my attention that our Chalkville client S▓▓▓ L▓▓▓ had a letter written to her probation officer read out loud in front of other girls by a Chalkville staff member. Such an action by DYS staff violates S▓▓▓'s liberty interests under the Fourteenth Amendment to meaningful access to the courts and her fundamental right to privacy.

S▓▓▓ L▓▓▓ reports that Chalkville staff read out loud and in front of other residents, a letter S▓▓▓ wrote to her probation officer describing very personal information concerning her status as rape victim and the contraction of a disease. S▓▓▓ states that Chalkville staff prohibited her from writing a complaint about this incident.

The U.S. Supreme Court has ruled that incarcerated adults have a constitutional right to access Courts that is "adequate, effective and meaningful." *Bounds v. Smith,* 430 U.S. 817, 822 (1977). The fundamental right to access courts is applicable to incarcerated juveniles in state custody. See *John L. v. Adams,* 969 F.2d 228, 233 (6th Cir. Tenn. 1992); *Morgan v. Sproat,* 432 F. Supp. 1130 at 1158 (D.C. Miss. 1977). The U.S. Supreme Court has also held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Turner v. Safley,* 482 U.S. 78, 89 (1987). In S▓▓▓'s case, her right to privacy as well as her access to the courts was violated when a Chalkville staff member read out loud her letter to her probation officer.

According to Chalkville Campus Policy 30.4, students are granted "the right to communicate or correspond with persons or organizations subject only to the limitations necessary to maintain order and security." Chalkville Campus Policy 30.3 states "it is the policy of Chalkville Campus to allow students to send sealed letters to 1) Courts,

2) Counsel, 3) Chalkville Staff, 4) Central Office Staff, and 5) Student Advocate Staff and that "incoming letters from the people listed above may be opened and inspected for contraband, but only in the presence of the student." All other "incoming and outgoing mail of students may be screened in unusual circumstances, or where there is probable cause, and that all incoming and outgoing letters and packages will be inspected for contraband or money." *See Chalkville Policy 30.6.* DYS policy also states that there must be "convincing evidence to justify the reading of mail" and that grounds for reading mail include "security, and mail/letters or packages which are pornographic, contain satanic material, are racist, written in code and are drug or gang related." *See Chalkville Policy 30.6*

Chalkville staff's unlawful behavior of reading our client's mail aloud constitutes verbal abuse and is an egregious violation of S▓▓▓▓'s fundamental right to privacy. ADAP is asking for an immediate investigation into this incident and a written report of DYS' findings. ADAP is requesting all copies of "Mail or Letter in" and "Mail Out" logs concerning S▓▓▓▓ during her time at Chalkville. In addition, ADAP is requesting that your office forward to us all letters sent to the attention of ADAP which were not mailed, or that were censored or returned to a resident for editing.

Thank you for your time on Friday. I look forward to hearing from you regarding this matter.

Sincerely,

James A. Tucker
Attorney

Cc: S▓▓▓▓ L▓▓▓▓
      Andrea J. Mixson, Esq.

2

**ALABAMA DISABILITIES**

# AD AP

**ADVOCACY PROGRAM**



VIA FACSIMILE AND U.S. MAIL

December 11, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, Alabama 36057

RE: S████ L████

Dear Dudley:

It has come to my attention that Chalkville staff forced ADAP client S█████ L█████, to remove her bra and sleep in a smock in a Chalkville time out room on November 11, 2007. S█████ was placed in 24 hour time out without any indication that she had injured or threatened to injure herself. S█████ states that she did not injury any staff or peer prior to being placed in 24 hour time out on November 11, 2007. She also reports that on November 11th, Chalkville staff, Mr. Renfroe, grabbed her neck in a choke hold while restraining her on a table prior to S█████ being placed in 24 hour time out.

DYS (Chalkville) policy and procedure 19.3(K)(4) states that 24 hour timeout (Time-Out IV) is to be "used only in cases of AWOL/Escape; Assault-Physical and Sexual; Safety Violations and Possession of Weapons, or continued violation of T.O. III offenses." It appears that S█████ had not engaged in any of these behaviors prior to her placement in 24 hour time out. Chalkville policy 17.5 states that students shall be "furnished with items necessary for the health and comfort of the student, including clothing, mattress, and blanket." Chalkville policy 19.3 states that "under no circumstances will a student be stripped of all clothing. Students are required to wear jumpsuits/gymsuits while in the "time-out room." Chalkville policy 18.5 states that:

> "It is the policy of Chalkville campus that students in its care will be treated with respect and dignity. They will not be subject to corporal or unusual punishment, disease, property damage, harassment, humiliation, mental or physical abuse or punitive interference with the daily functions of living, such as eating or sleeping."

It appears that S█████ had not injured or threatened to injure herself when she was placed in a smock and forced to remove her bra on the evening of November 11, 2007. This action on the part of DYS staff appears to be chiefly, if not wholly, punitive rather than a measure to protect Ms. L█████ from self harm.

---

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental
Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility

THE UNIVERSITY OF

**ALABAMA**

F O U N D E D   1 8 3 1

500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205)348-4928
(800)826-1675
FAX (205)348-3909
adap@adap.ua.edu
www.ADAP.net

Mr. Dudley Perry
December 11, 2007
Page 2

ADAP has made prior requests to your office for S████'s records following reports that staff at Chalkville physically abused S█████ and that her legal mail was being intercepted and read out loud by Chalkville staff. On September 4, 2007, Ms. Mixson emailed you asserting probable cause to believe that Chalkville staff had physically abused S█████ and stating the basis ADAP believed that S█████ qualified for ADAP's services. *See* attached Exhibit A. In response, Ms. Phyllis Carney wrote me on September 21, 2007 stating: "The documentation Ms. Mixson requested on September 4, 2007 by way of e-mail can not be processed until DYS is provided with the grounds upon which ADAP believes the students are covered by the Acts, and the facts upon which probable cause is based." *See* attached Exhbit B. On September 24, 2007, ADAP requested all investigative reports and records regarding Ms. L█████'s legal mail being read out loud and intercepted by Chalkville staff. *See* attached Exhibit C.

As of this date, ADAP has not received the records we requested in our September 4 and September 21 correspondence regarding Ms. L█████. In addition to Ms. L█████'s complete file, ADAP also requests an immediate investigation into the November 11, 2007 incident and all records associated with DYS internal investigation into the matter.

Thank you for your attention to this matter. I look forward to your reply.

Sincerely,

James A. Tucker
Attorney

Enc.

c: S█████ L█████
   Andrea J. Mixson, Esq.

ALABAMA DISABILITIES



ADVOCACY PROGRAM

**VIA FACSIMILE AND U.S. MAIL**

September 24, 2007

Mr. Dudley Perry
Deputy Attorney General
Alabama Department of Youth Services
P.O. Box 66
Mt. Meigs, Alabama 36057

RE: S██████ L███████

Protection & Advocacy for
Persons with Developmental
Disabilities

Protection & Advocacy for
Individuals with Mental Illness

Protection & Advocacy of
Individual Rights

Protection & Advocacy for
Assistive Technology

Protection & Advocacy for
Individuals with
Traumatic Brain Injury

Protection & Advocacy for
Beneficiaries of Social Security

Protection & Advocacy for
Voting Accessibility



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
FAX (205) 348-3909
adap@adap.ua.edu
www.ADAP.net

Dear Dudley:

It has come to my attention that our Chalkville client S██████ L███████ had a letter written to her probation officer read out loud in front of other girls by a Chalkville staff member. Such an action by DYS staff violates S██████'s liberty interests under the Fourteenth Amendment to meaningful access to the courts and her fundamental right to privacy.

S██████ L███████ reports that Chalkville staff read out loud and in front of other residents, a letter S██████ wrote to her probation officer describing very personal information concerning her status as rape victim and the contraction of a disease. S██████ states that Chalkville staff prohibited her from writing a complaint about this incident.

The U.S. Supreme Court has ruled that incarcerated adults have a constitutional right to access Courts that is "adequate, effective and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). The fundamental right to access courts is applicable to incarcerated juveniles in state custody. *See John L. v. Adams*, 969 F.2d 228, 233 (6th Cir. Tenn. 1992); *Morgan v. Sproat*, 432 F. Supp. 1130 at 1158 (D.C. Miss. 1977). The U.S. Supreme Court has also held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). In Shameca's case, her right to privacy as well as her access to the courts was violated when a Chalkville staff member read **out loud** her letter to her probation officer.

According to Chalkville Campus Policy 30.4, students are granted "the right to communicate or correspond with persons or organizations subject only to the limitations necessary to maintain order and security." Chalkville Campus Policy 30.3 states "it is the policy of Chalkville Campus to allow students to send sealed letters to 1) Courts,

000252

2) Counsel, 3) Chalkville Staff, 4) Central Office Staff, and 5) Student Advocate Staff and that "incoming letters from the people listed above may be opened and inspected for contraband, but only in the presence of the student." All other "incoming and outgoing mail of students may be screened in unusual circumstances, or where there is probable cause, and that all incoming and outgoing letters and packages will be inspected for contraband or money." *See Chalkville Policy 30.6.* DYS policy also states that there must be "convincing evidence to justify the reading of mail" and that grounds for reading mail include "security, and mail/letters or packages which are pornographic, contain satanic material, are racist, written in code and are drug or gang related." *See Chalkville Policy 30.6*

Chalkville staff's unlawful behavior of reading our client's mail aloud constitutes verbal abuse and is an egregious violation of S█████'s fundamental right to privacy. ADAP is asking for an immediate investigation into this incident and a written report of DYS' findings. ADAP is requesting all copies of "Mail or Letter in" and "Mail Out" logs concerning S█████ during her time at Chalkville. In addition, ADAP is requesting that your office forward to us all letters sent to the attention of ADAP which were not mailed, or that were censored or returned to a resident for editing.

Thank you for your time on Friday. I look forward to hearing from you regarding this matter.

Sincerely,

James A. Tucker
Attorney

Cc: S█████ L█████
    Andrea J. Mixson, Esq.

STATE OF ALABAMA

DEPARTMENT OF YOUTH SERVICES

| BOB RILEY | POST OFFICE BOX 66 | J. WALTER WOOD, JR. |
|-----------|--------------------|---------------------|
| GOVERNOR  | MT. MEIGS, ALABAMA 36057 | EXECUTIVE DIRECTOR |

December 17, 2007

James A. Tucker
Alabama Disabilities Advocacy Program
500 Martha Paraham West
Box 860395
Tuscaloosa, AL 35487-0395

RE: *ADAP v. Wood,* CV 2:07-cv-434-MEF
S█████. L█████

Dear Mr. Tucker:

As per your request on December 13, 2007 the following  information is provided.

Documents relating to S█████ L█████ (Bates #s 4084  through 4551).

If you have any questions concerning this matter, please do not hesitate to contact me or Mr. Perry.

Sincerely,

Phyllis I. Carney
Legal Assistant to
T. Dudley Perry, Jr.
General Counsel
Department of Youth Services

/pic

Enclosure

 **FILE COPY**

Alabama Disabilities
Advocacy Program (ADAP)

September 12, 2006

THE UNIVERSITY OF
# ALABAMA
FOUNDED 1831

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

*Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities*



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
fax (205) 348-3909
ttin ADAP.net

Department of Youth Services
Mt. Meigs Complex
Marie Dickerson, Case Manager
Post Office Box 66
Mt. Meigs, Alabama 36057

RE: H██████ M██████

Dear Ms. Dickerson:

The Alabama Disabilities Program, ADAP was contacted by K███████ M█████, parent of H████ M█████, a resident at Mt. Meigs requesting our assistance. H████ qualifies for ADAP's services and we have agreed to provide him with assistance in an effort to address concerns that have been brought to our attention. Dudley Perry, DYS attorney recently facilitated a visit with H████ at Mt. Meigs. I am writing as a follow up to our initial interview to obtain some additional information. The primary areas of concern at this time are, 1) access to medical care, and 2) access to mental health treatment.

1) Medical care – according to documentation from The Bridge, Inc. and Indian Rivers Mental Health Center, H████ carries a diagnosis of arthritis, for which he is supposed to be receiving treatment. According to written correspondence dated 6/12/06 provided by The Bridge, Inc., a recommendation was made that H████ continue to receive follow-up with his physician for his arthritis. The DYS service plan that was completed upon H████'s admission does not include medical concerns as an identified problem area. Please provide me with information about how H████ medical condition is being addressed, including physician appointments, medications, and any programming restrictions that will prevent him from aggravating his condition.

2) Mental health treatment – according to the DYS service plan, H████ is currently taking psychotropic medications and will be afforded the opportunity to meet with a Senior Psychologist and Psychiatrist for evaluation, monitoring and medication management. During our interview, H████ described experiencing frequent chest pains. Documentation from The Bridge, Inc. suggests that H████ has experienced heart problems that may be related to panic attacks. A recommendation was made that H████ receive follow-up treatment to address anxiety symptoms. Please provide me with documentation about any mental health assessments, medical assessments, and any treatment that H████ has received for his complaints of chest pain.

—

**000255**

During our interview, H█████ mentioned a "sick call" protocol that residents are required to utilize in order to receive medical attention. If you will, please provide me with a copy of this protocol. In addition to this information, please explain your understanding of procedural guidelines for providing medical treatment to residents at Mt. Meigs.

Thank you for your attention regarding these matters. If you have any questions about this letter or if you need clarification about any requested information, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

Cc: Nancy Anderson
    Dudley Perry

 

Alabama Disabilities
Advocacy Program (ADAP)

November 2, 2006

Department of Youth Services
Mt. Meigs Campus
Ms. Melissa Alexander, Case Manager
Post Office Box 66
Mt. Meigs, Alabama 36057

THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

RE: H████ M████

Dear Ms. Alexander:

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

The Alabama Disabilities Program, ADAP was contacted by K████ M████, parent of H████ M████, a resident at Mt. Meigs requesting our assistance. H████ qualifies for ADAP's services and we have agreed to provide him with assistance in an effort to address concerns that have been brought to our attention. Dudley Perry, DYS attorney facilitated visits with H████ at Mt. Meigs and I have reviewed portions of his DYS record. I am writing to obtain some additional information. The primary area of concern at this time is H████ access to medical care.

According to documentation from The Bridge, Inc. and Indian Rivers Mental Health Center, H████ carries a diagnosis of arthritis, for which he is supposed to be receiving treatment. According to written correspondence dated 6/12/06 provided by The Bridge, Inc., a recommendation was made that H████ continue to receive follow-up with his physician for his arthritis. The DYS service plan that was completed upon H████ admission does not identify medical concerns as a problem area. Please provide me with information about how H████ medical condition is being addressed, including physician appointments, medications, and any programming restrictions that will prevent him from aggravating his condition.

During our interview, H████ mentioned a "sick call" protocol that residents are required to utilize in order to receive medical attention. If you will, please provide me with a copy of this protocol.

Thank you for your attention regarding these matters. If you have any questions about this letter or if you need clarification about any requested information, please contact me at (205) 348-4928.

Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities.

Sincerely Yours,

Christy Johnson
Christy Johnson
Senior Case Advocate



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
(205) 348-3909
www.ADAP.net



Alabama Disabilities
Advocacy Program (ADAP)

VIA FACSIMILE

November 7, 2006



THE UNIVERSITY OF
**ALABAMA**
FOUNDED 1831

Protection and Advocacy for
Persons with Developmental
Disabilities

Protection and Advocacy for
Individuals with Mental Illness

Protection and Advocacy of
Individual Rights

Protection and Advocacy for
Assistive Technology

Protection and Advocacy for
Individuals with
Traumatic Brain Injury

Protection and Advocacy for
Beneficiaries of Social Security

Protection and Advocacy for
Voting Accessibility

*Designated by the Governor
to The University of Alabama
in accordance with Public Laws
100-146 and 99-319. ADAP is
the protection and advocacy
system for Alabama on behalf
of persons with disabilities.*



500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
(205) 348-4928
(800) 826-1675
fax (205) 348-3909
www.ADAP.net

Mr. Dudley Perry, Deputy Attorney General
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057

Dear Mr. Perry:

ADAP received a phone call today from K████ M███, parent of
H███ M███, a resident at Mt. Meigs. According to Ms. M███, H███
broke his wrist while playing football on Sunday, November 5. Staff on
Holloway Hall attempted to contact medical personnel, but was unable to
locate anyone. Therefore, H███ did not receive appropriate emergency
medication attention until the following day, Monday, November 6. Test
results revealed that H███ broke his wrist and the severity of the injury
almost required surgery. H████ wrist was placed in a cast.

ADAP is requesting copies of all DYS medical reports, policy/procedure
documents related to receiving medical care and emergency medical
treatment and any investigative findings related to the above stated
incident. In the event that an investigation has not been completed, ADAP
is requesting that DYS conduct such an investigation. If you have any
questions, please contact me at (205) 348-4928.

Sincerely Yours,

Christy Johnson
Senior Case Advocate

cc: Nancy Anderson
    K████ M███

**000258**