IN THE DISTRICT COURT OF UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **ALABAMA DISABILITIES ADVOCACY PROGRAM**   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>**J. WALTER WOOD, JR.**, in   )<br>his official capacity as   )<br>Executive Director of the   )<br>Alabama Department of   )<br>Youth Services,   )<br>)<br>Defendant.   ) | CIVIL ACTION NO.<br>2:07-CV-434-MHT |

**ANSWER TO PLAINTIFF'S CORRECTED AMENDED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF**

In response to the specific paragraphs of the Plaintiff's Corrected Amended Complaint for Injunctive and Declaratory Relief, Defendant J. Walter Wood states as follows:

**PRELIMINARY STATEMENT**

1. ADAP is a nonprofit organization authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Alabama–not juvenile delinquents. This complaint is similar to a complaint previously filed and settled. The settlement agreement is in force and effect. DYS has complied with its terms but ADAP has failed or refused. All other material allegations of paragraph 1 are denied.

2. All material allegations of paragraph 2 are denied.

3. J. Walter Wood is the Executive Director of DYS. All other material allegations of paragraph 3 are denied.

4. DYS denies that ADAP is entitled to any relief. DYS denies all other material allegations in paragraph 4

1

## JURISDICTION

5. Admitted.

6. Admitted.

## PARTIES

7. ADAP is a nonprofit authorized to protect and advocate for the civil rights of persons with disabilities in Alabama–not juvenile delinquents. All material allegations otherwise are denied.

8. Admitted.

## STATEMENT OF FACTS

### ADAP's Access authority

9. Denied as written to apply to DYS.

10. Denied as written to apply to DYS.

11. Denied as written to apply to DYS.

12. Denied as written to apply to DYS.

13. Denied as written to apply to DYS.

14. Denied as written to apply to DYS.

15. Denied as written to apply to DYS.

16. Denied as written to apply to DYS.

17. Denied as written to apply to DYS.

18. Denied as written to apply to DYS.

19. Denied as written to apply to DYS.

20. Denied as written to apply to DYS.

21. Denied as written to apply to DYS.

22. Denied as written to apply to DYS.

23. Denied as written to apply to DYS.

24. Denied as written to apply to DYS.

### Defendant repeatedly has denied ADAP's lawful access to DYS residents, facilities, records and staff

(DYS denies the facts alleged in the heading.)

*Chalkville*

25. Admitted.

26. Admitted.

27–37. The material allegations of paragraphs 27 through 37 are denied. On March 6, 2007, Ms. Mixson and Ms. Johnson planned a "monitoring visit" to Chalkville. During that visit, Ms. Mixson and/or Ms. Johnson apparently solicited complaints from three students S.B., B.P. and J.C. In violation of the terms of the agreement between the parties, neither Ms. Mixson nor Ms. Johnson notified DYS legal of the factual basis on which S.B., B.P. or J.C. were covered by the Acts nor the factual basis on which probable cause was based.

In an obvious effort to skirt their good faith obligation to communicate with DYS, Ms. Mixson and Ms. Johnson planned another "monitoring" visit during which they actually intended to conduct an investigation into the allegations of S.B., B.P. and J.C., without providing DYS notice as required by the terms of the settlement agreement. (See Paragraph 28 of Complaint and Affidavits of Mixson and Johnson attached to the Complaint as Exhibits D and E).

On March 21, 2007, Ms. Mixson notified the DYS Legal Division by email that they intended to conduct a "monitoring visit" at Chalkville on March 27. The email also stated "in addition to monitoring activities, Christy Johnson and I are requesting a *confidential visit* with residents J.C., S.B., and B.P. Please provide ADAP with copies of any and all documents relating to these residents kept by DYS prior to our visit." (Italics added.) Ms. Mixson and Ms. Johnson continued to conceal the information they were obligated to share with DYS regarding the basis on which they believed the students were covered by the acts and the factual basis to investigate their allegations.

On March 21, the undersigned responded to Ms. Mixson's request for a "monitoring visit" and "confidential visits with [JC, SB and BP]" by email. The undersigned stated "if you are conducting an investigation, please let me know the grounds on which ADAP believes the students are within ADAP's potential clientele, and the facts on which probable cause for an investigation is based." On that day, the undersigned also authorized ADAP's access to the facility for "monitoring" purposes and communicated that authorization to the Chalkville campus, and gave instructions **not** to provide access to confidential files until ADAP complies

with their agreement.

    On March 22, 2007, Ms. Mixson emailed the following response:

> S.B.:
>
> ADAP has cause to believe Chalkville psychiatrist prescribed S. with psychotropic medication while at Chalkville. ADAP has probable cause to believe S. has been improperly restrained and searched at Chalkville.
>
> B.P.:
>
> ADAP has cause to believe the B. Has bi-polar disorder. ADAP has probable cause to believe that B. received improper mental health treatment while at Chalkville.
>
> J.C.:
>
> ADAP has cause to believe that J.C. has a physical disability. ADAP has probable cause to believe that J. received improper medical treatment.

    The undersigned responded to Ms. Mixson's email stating: "Thank you for this information. It is helpful. However, <u>it does not include any facts on which to base probable cause</u>, and if I recall correctly the substance of our agreement is for me to know the factual basis of any abuse or neglect investigation." (Emphasis added.) ADAP staff never responded.

    In an effort to work through this problem with ADAP, the undersigned instructed the DYS Special Investigator to travel to Chalkville and attempt to determine the factual information ADAP was unwilling to provide although they were obligated to do so. The undersigned also contacted Nancy Anderson at ADAP and requested that she instruct Ms. Mixson and Ms. Johnson to postpone their visit to allow the Special Investigator an opportunity to discover the information ADAP was obligated but refused to provide. Ms. Anderson reluctantly agreed to wait. As an example of ADAP's deceptive tactics, ADAP now represents in the Complaint in this case that postponement was an "accommodation" to DYS.

    It was in the context of this "investigation" for which ADAP refused to provide DYS any

information, that on March 28, 2007, ADAP attempted to generally contact all Chalkville residents. While at Chalkville, ADAP staff made representations to various DYS staff about their "access authority," never once making reference to their settlement agreement with DYS or the fact that ADAP was attempting to conduct an investigation in violation of that agreement. Nevertheless, ADAP was allowed to conduct their monitoring activities, distributing their documentation and generally announcing their availability to provide advocacy services for disabled students.

    38. The material allegations of paragraph 38 cannot be admitted nor denied as stated. The undersigned communicated with James Tucker that ADAP's staff was conducting investigations under the guise of monitoring activities. The undersigned further advised James Tucker that DYS would not permit ADAP to conduct investigations during monitoring activities, however ADAP could communicate with DYS residents during a scheduled investigation.

    39. DYS has utilized its Special Investigator to investigate allegations of abuse and neglect at DYS facilities that are reported by DYS residents. The investigations by the Special Investigator are necessary to determine whether the allegations of abuse or neglect are credible to warrant reports to local law enforcement as well as appropriate agency action. The purpose of the investigation by the DYS Special Investigator is not instruct DYS residents how to respond to the interview between ADAP and DYS residents, nor to find out what information DYS residents have reported to ADAP. All other material allegations in paragraph 39 are denied.

### *Vacca*

  40 – 42. The material allegations of paragraphs 40 through 42 cannot be admitted nor denied as stated. Apparently Ms. Anderson emailed the undersigned on March 27 and March 30 but the undersigned did not see the emails. In any event, on April 10, ADAP was allowed to conduct general monitoring activity at Vacca. All other material allegations of paragraphs 40 through 42 are denied.

  43. The material allegations of paragraph 43 cannot be admitted nor denied as stated. The undersigned communicated with James Tucker that ADAP's staff was conducting investigations under the guise of monitoring activities. The undersigned further advised James Tucker that DYS would not permit ADAP to conduct investigations during monitoring activities, however ADAP

could communicate with DYS residents during a scheduled investigation.

### *Mt. Meigs*

44 – 47.  The material allegations of paragraphs 44 through 47 cannot be admitted nor denied as stated.  ADAP was allowed access to the Mt. Meigs Campus and access to any individuals on the Mt. Meigs campus who are covered by the Acts.  Mt. Meigs is a secure campus at which the most ungovernable youths are staffed.  Security of operations is of utmost importance.  All other material allegations of paragraphs 44 through 47 are denied.

### **Request for D.R.'s Record**

48– 52.  The material allegations of paragraphs 48 through 50 cannot be admitted nor denied as stated.  The following are the relevant facts relating to DR:

On March 5, 2007, Ms. Johnson emailed a letter requesting an "interview" with DR to "determine if [D.] qualifies for our services..."  As usual, no statement of the basis on which DR is covered by the Acts nor any factual basis for probable cause was stated.  Neither was such information ever provided subsequently. Moreover, the request included **no request to view DR's file.**  Indeed such request would have been inconsistent with their requirement to make a determination whether an individual is covered by the Acts before initiating an investigation. Nevertheless, in a spirit of cooperation and an effort to work with ADAP, on March 16, 2007, the DYS Legal Division notified campus personnel that <u>ADAP was authorized to speak with DR and review his files</u>.  (See Exhibit B).

Ms. Johnson met with DR on March 19, 2007.  It is unclear whether ADAP asked Vacca personnel to allow them to see DR's file.

On April 4, DR was hospitalized.  On April 25, 2007, DYS Legal Division filed a motion on behalf of DR for a mental examination pursuant to § 12-15-70, Code of Alabama 1975, as amended.  That motion was denied by DR's committing judge on May 3, 2007.  DR's committing judge thus takes that position that he is most appropriately placed as a juvenile delinquent and not as a mental health patient.

On May 21, 2007, Nancy Anderson emailed the undersigned and complained that DYS

had not sent ADAP DR's record[1]. On June 6, 2007, ADAP filed this lawsuit.

On June 21, 2007, Ms. Anderson again complained to the undersigned that "in our complaint, we noted that we had not been provided copies of records for our client [DR]... Can you forward the youth's records (court records, treatment and progress notes, evaluations, educational records etc.) to us at this time. The undersigned responded on June 22 as follows: "As usual, I will accommodate your request. Phyllis is gathering them. However, it appears that neither you, nor anyone from ADAP, has asked for them previously."

As stated above, the request from ADAP regarding DR was to visit him to determine whether he is within the scope of ADAP's representation. No factual basis for representation or probable cause was given as required. Contrary to ADAP's frivolous and misleading accusations, the DR case is not a situation where ADAP has been denied access–even though they were NOT entitled under the terms of the agreement between the parties. Rather it appears to be an intentional manipulation on the part of ADAP staff to fabricate an *appearance* of denial of access, while altogether failing and/or refusing to follow the terms of the settlement agreement under which ADAP was granted access in the first place.

### *Request for C.L.'s Record*

53. DYS has provided ADAP with all records for children that qualify under PADD and PAIMA that are in DYS custody that ADAP has given a probable cause basis for abuse or neglect involving such children. The only information the DYS Legal Division is unwilling to provide the Plaintiff is the Legal Division's own work product and privileged documents. DYS has not provided ADAP with the investigative reports conducted by the DYS Special Investigator for ADAP client C.L. DYS believes that the investigative reports by the Special Investigator are work product. The information contained in the Special Investigator's reports can also be obtained from local law enforcement if the matter is forwarded to local law

---

[1] Not only had ADAP never requested the file from the DYS Legal Division, DYS is under no legal obligation to do ADAP's work and copy and mail such records. DYS has accommodated ADAP's unreasonable and arbitrary requests for records on many occasions and has copied thousands of pages of files at DYS expense in a spirit of cooperation, but is under no legal obligation to do so.

enforcement as well as DYS Incident Reports and DYS Critical Incident Reports**.** All other material allegations in paragraph 53 are denied.

### *Requests for Incident Reports and Investigative Findings*

54 – 56. The allegations of paragraphs 54 through 56 cannot be admitted nor denied as written. ADAP has failed or refused throughout the relationship between the parties to provide the basic information they agreed to provide in settlement of previous litigation substantially identical to this case. ADAP is not entitled to ANY documents due to ADAP's failure or refusal to comply with it's agreement. Nevertheless, as stated above, DYS has provided essentially unlimited access. The only information the DYS Legal Division is unwilling to provide ADAP is the Legal Division's own work product and privileged documents. DYS attempts to conduct its business with transparency and all incident reports and other reports and findings are available for ADAP to inspect as soon as ADAP begins to comply with the terms of its settlement agreement with DYS.

57. DYS has provided ADAP with all records for children that qualify under PADD and PAIMA that are in DYS custody that ADAP has given a probable cause basis for abuse or neglect involving such children. The only information the DYS Legal Division is unwilling to provide ADAP is the Legal Division's own work product and privileged documents. DYS has not provided ADAP with the investigative reports conducted by the DYS Special Investigator for ADAP client S.L. DYS believes that the investigative reports by the Special Investigator are work product. The information contained in the Special Investigator's reports can also be obtained from local law enforcement if the matter is forwarded to local law enforcement as well as DYS Incident Reports and DYS Critical Incident Reports**.** All other material allegations in paragraph 57 are denied.

58. DYS has provided ADAP with all records for children that qualify under PADD and PAIMA that are in DYS custody that ADAP has given a probable cause basis for abuse or neglect involving such children. The only information the DYS Legal Division is unwilling to provide ADAP is the Legal Division's own work product and privileged documents. DYS has not provided ADAP with the investigative reports conducted by the DYS Special

Investigator for ADAP client B.Y.  DYS believes that the investigative reports by the Special Investigator are work product. In addition, ADAP has not provided DYS with the basis for probable cause for abuse or neglect for B.Y. at Chalkville. Neither the September 4, 2007 nor the September 24, 2007 emails from ADAP to DYS indicate the basis for probable cause for abuse or neglect. The information contained in the Special Investigator's reports can also be obtained from local law enforcement if the matter is forwarded to local law enforcement as well as DYS Incident Reports and DYS Critical Incident Reports**.** All other material allegations in paragraph 58 are denied.

59. DYS denies that ADAP has been harmed, irreparably or otherwise, and denies that ADAP is entitled to any relief whatsoever.

## CAUSE OF ACTION

60. The allegations of Paragraph 60 are denied.

## PRAYER FOR RELIEF

61.  The allegations of Paragraph 61 are denied.


WHEREFORE, DYS requests an injunction against ADAP enforcing the terms of the settlement agreement between the parties.  In addition, DYS requests fees and expenses in connection with defending this frivolous litigation.


Respectfully submitted,


/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar number: 3985-R67T
General Counsel
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872

E-Mail: dudley.perry@dys.alabama.gov

s/Sancha E. Teele
Sancha E. Teele
Assistant Attorney General
Bar Number: 0103-H71T
Attorney for the Defendant
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, AL 36057
Telephone: 334-215-3803
Fax: (334) 215-3872
E-Mail: sancha.teele@dys.alabama.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of March, 2008, I electronically filed the foregoing **ANSWER TO PLAINTIFF'S CORRECTED AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James A. Tucker
Nancy E. Anderson
Alabama Disabilities
Advocacy Program
Box 870395
Tuscaloosa, AL 35487

/s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
General Counsel
Attorney for the Defendant